UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHERINE GORDON, JAMES SCHAFFER, TERESA THOMPSON, PAMELA MIKA, JENNIFER PFENTNER AND DIANA GALDON, *on behalf of themselves and all other employees similarly situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>KALEIDA HEALTH, JAMES R. KASKIE, DAVID R. WHIPPLE, MFHS MANAGED CARE, INC., KALEIDA PROPERTIES, INC., FAMILY PHARMACEUTICALS, WESTLINK CORPORATION, COMMUNITY MEDICAL PC, GENERAL PHYSICIANS PC, MILLARD FILLMORE AMBULATORY SURGERY CENTER, VISITING NURSING ASSOCIATION OF WESTERN NEW YORK, INC., VNA HOME CARE SERVICES, INC., VNA OF WNY, INC., GENERAL HOMECARE, INC., WATERFRONT HEALTH CARE CENTER, INC., KALEIDA HEALTH FOUNDATION, THE WOMEN AND CHILDREN'S HOSPITAL OF BUFFALO FOUNDATION, KALEIDA IPA, LLC, KALEIDA MCO, LLC, GRACE MANOR HEALTH CARE FACILITY, INC. AND SCHENK PHYSICAL THERAPY, PC,<br><br>*Defendants.* | **Civil Action**<br>**No. 08-CV-0378** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
EXPEDITED NOTICE TO AFFECTED EMPLOYEES**

                                                       **DOLIN, THOMAS & SOLOMON LLP**
                                                       *Attorneys for Plaintiffs*
                                                       693 East Avenue
                                                       Rochester, New York 14607
                                                       (585) 272-0540

Of Counsel:   J. Nelson Thomas

## PRELIMINARY STATEMENT

Plaintiffs seek Court authorization to send notice of this Fair Labor Standards Act ("FLSA") action to affected employees.[1] In particular, plaintiffs seek to send notice to current and former hourly employees of defendants whose pay was subject to an automatic deduction even when the employees should have been paid for their compensable work time.

Specifically, plaintiffs seek an Order:

1. requiring the issuance of an expedited notice as set forth in Exhibit A to the Affirmation of J. Nelson Thomas ("Thomas Aff.") to all current and former hourly employees of the defendants whose pay was subject to an automatic deduction even when the employees performed compensable work;

2. requiring defendants to provide to plaintiffs' counsel a list both electronically (in an Excel spreadsheet) and with each item of the employee's name, current of last known address, phone number, social security number, location of employment, dates of employment, date of birth and e-mail address designated as a separate field and by hard copy, of all individuals who meet the above class description, including their current or last known address, phone number, e-mail address, social security number, location of employment, dates of employment and date of birth within 15 days of the issuance of the order;

3. requiring defendants to post notices and opt-in forms in a conspicuous place (such as break rooms or other such locations) at defendants' locations where employees can see such notices during the pendency of the lawsuit;

4. requiring defendants to e-mail such notices and opt-in forms to employees;

5. requiring defendants to publicize such notice five times in defendants' employee newsletter or other employee communications; and

6. granting such other relief as this Court deems just and proper.

---

[1] Through this motion, plaintiffs only seek certification pursuant to the FLSA. Plaintiffs will seek class certification pursuant to Rule 23 in accordance with the Local Rules or this Court's Order through a subsequent motion.

# FACTS

Catherine Gordon, James Schaffer, Teresa Thompson, Pamela Mika Jennifer Pfentner and Diana Galdon (referred to herein as "Named Plaintiffs") along with 389 other current and former employees have filed this action against Kaleida Health, MFHS Managed Care, Inc., Kaleida Properties, Inc., Family Pharmaceuticals, Westlink Corporation, Community Medical PC, General Physicians PC, Millard Fillmore Ambulatory Surgery Center, Visiting Nursing Association of Western New York, Inc., VNA Home Care Services, Inc., VNA Of Wny, Inc., General Homecare, Inc., Waterfront Health Care Center, Inc., Kaleida Health Foundation, The Women and Children's Hospital of Buffalo Foundation, Kaleida IPA, LLC, Kaleida MCO, LLC, Schenk Physical Therapy, PC, Grace Manor Health Care Facility, James R. Kaskie and David R. Whipple (the "defendants" or "Kaleida") as a collective action under the FLSA, 29 U.S.C. §216(b) and as a class action for violations of the New York State Labor Law ("Labor Law") for failure to pay wages and overtime.

The complaint seeks to recover on behalf of those hourly employees denied compensation including overtime by operation of the defendants' Break Deduction Policy.

Defendants' maintain a policy which automatically deducts time from employees paychecks for a meal break (the "Break Deduction Policy"). Thus, employees automatically lose one-half hour of compensable time each work day because of the Break Deduction Policy, even when the employees are performing compensable work for the defendants.

Plaintiffs have universally testified to being subject to the Break Deduction Policy. (Affirmation of Catherine Gordon, sworn to May 21, 2008 ("Gordon Aff.") ¶ 3; Affirmation of Pamela Mika, sworn to May 21, 2008 ("Mika Aff.") ¶ 3; Affirmation of Jennifer L. Pfentner, sworn to May 21, 2008 ("Pfentner Aff.") ¶ 3; Affirmation of James Schaffer, sworn

to May 21, 2008 ("Schaffer Aff.") ¶ 3; Affirmation of Teresa A. Thompson, sworn to April 24, 2008. ("Thompson Aff.") ¶ 3; Affirmation of Diana D. Galdon, sworn to April, 2008 ("Galdon Aff.") ¶ 3; Affirmation of Matthew Panasiewicz, sworn to April 28, 2008 ("Panasiewicz Aff.") ¶ 3; Affirmation of Marleen Marzullo, sworn to May 21, 2008 ("Marzullo Aff.") ¶ 3)  For example, plaintiff Gordon testified that she was subject to the Break Deduction Policy along with all hourly employees of defendants since 1996.  (Gordon Aff. ¶¶ 2, 6)  Plaintiffs Mika, Pfentner, Schaffer, Thompson, Galdon, Panasiewicz and Marzullo testified that because the meal break deduction was an automatic computer process all hourly employees were subject to the policy. (Mika Aff. ¶ 6, Pfentner Aff. ¶ 6, Schaffer Aff. ¶ 6, Thompson Aff. ¶6, Galdon Aff. ¶6, Panasiewicz Aff. ¶6, Marzullo Aff. ¶6)

Plaintiffs also universally testified that all hourly employees were subject to the Break Deduction Policy. (Mika Aff. ¶ 6, Pfentner Aff. ¶ 6, Schaffer Aff. ¶ 6, Thompson Aff. ¶6, Gordon Aff. ¶6, Galdon Aff. ¶6, Panasiewicz Aff. ¶6, Marzullo Aff. ¶6)  Because of patient care and employer demands it was common for plaintiffs and all hourly employees to not receive a 30 minute uninterrupted meal period during their shifts. (Mika Aff. ¶ 5, Pfentner Aff. ¶ 5, Schaffer Aff. ¶ 5, Thompson Aff. ¶5, Gordon Aff. ¶5, Galdon Aff. ¶5, Panasiewicz Aff. ¶5, Marzullo Aff. ¶5)  The reason plaintiffs are rarely able to take a full uninterrupted 30 minute meal period was because the defendants' hospitals and nursing homes are so chronically understaffed, they were required to continue their work duties. (Mika Aff. ¶ 7, Pfentner Aff. ¶ 7, Schaffer Aff. ¶ 7, Thompson Aff. ¶7, Gordon Aff. ¶7, Galdon Aff. ¶7, Panasiewicz Aff. ¶7, Marzullo Aff. ¶7)  Therefore, based on plaintiffs' observations it was an everyday occurrence that lunches were interrupted by work and the employees did not receive a full, uninterrupted 30 minute meal break. (Mika Aff. ¶ 7, Pfentner Aff. ¶ 7, Schaffer

Aff. ¶ 7, Thompson Aff. ¶7, Gordon Aff. ¶7, Galdon Aff. ¶7, Panasiewicz Aff. ¶7, Marzullo Aff. ¶7)

Defendants and their management knew and expected that the employees continued to work through some or all of their meal breaks to take care of patients.  Defendants expected that employees take care of patients first, and uninterrupted meal breaks were a secondary concern. (Mika Aff. ¶ 5, Pfentner Aff. ¶ 5, Schaffer Aff. ¶ 5, Thompson Aff. ¶5, Gordon Aff. ¶5, Galdon Aff. ¶5, Panasiewicz Aff. ¶5, Marzullo Aff. ¶5)  Defendants saw the work being done and employees' meal breaks being interrupted.  (Mika Aff. ¶ 9, Pfentner Aff. ¶ 9, Schaffer Aff. ¶ 9, Thompson Aff. ¶9, Gordon Aff. ¶9, Galdon Aff. ¶9, Panasiewicz Aff. ¶9, Marzullo Aff. ¶9)

Defendants overriding concern was with cutting labor costs and staying within their budgets even though their hospitals and nursing homes were understaffed.  They didn't seem concerned about employees missing meal periods and not getting paid for that time.  (Mika Aff. ¶ 10, Pfentner Aff. ¶ 10, Schaffer Aff. ¶ 10, Thompson Aff. ¶10, Gordon Aff. ¶10, Galdon Aff. ¶10, Panasiewicz Aff. ¶10, Marzullo Aff. ¶10)  Additionally, since defendants' hospitals and nursing homes were repeatedly understaffed, employees put the patients' needs first and ahead of eating their meals.  (Mika Aff. ¶ 8, Pfentner Aff. ¶ 8, Schaffer Aff. ¶ 8, Thompson Aff. ¶8, Gordon Aff. ¶8, Galdon Aff. ¶8, Panasiewicz Aff. ¶8, Marzullo Aff. ¶8)  Yet, the defendants continued to deduct time from their employees paychecks.  Defendants did not seem concerned that employees were working during meal periods and not getting paid for the time. (Mika Aff. ¶ 10, Pfentner Aff. ¶ 10, Schaffer Aff. ¶ 10, Thompson Aff. ¶10, Gordon Aff. ¶10, Galdon Aff. ¶10, Panasiewicz Aff. ¶10, Marzullo Aff. ¶10)

ARGUMENT

I.  **DEFENDANTS' ILLEGAL POLICY AND PRACTICES CONCERNING WAGE AND HOUR PAYMENTS VIOLATE THE FLSA.**

Under the FLSA, an employer is required to compensate its employees at the rate of one-and-a-half times their normal hourly rate for every hour the employee works over 40 in a week. 29 U.S.C. § 207(a)(1). Employers must compensate employees for all work suffered or permitted unless the employee is completely relieved of their duties. 29 C.F.R. § 785.11; 29 C.F.R. § 785.19.

In fact, the Wage and Hour Division of the United States Department of Labor's Employment Standards Administration provided guidance to health care employers on the issue of meal breaks. *See Wage and Hour Division, U.S. Dep't of Labor, Factsheet No. 53, The Health Care Industry and Hours Worked* (2008). Specifically, the Department of Labor instructs healthcare employers who chose to automatically deduct 30-minutes per shift that they must ensure that the employees are receiving the full meal break. *See id*.; 29 C.F.R. § 785.19.

As described above, defendants' Break Deduction Policy fails to comply with the regulations in the Department of Labor's specific guidance thus depriving employees of overtime compensation. Defendants knew that such work was being performed and defendants' policy and practice was not to pay employees for such work. (Mika Aff. ¶¶ 5, 9, Pfentner Aff. ¶¶ 5, 9, Schaffer Aff. ¶¶ 5, 9, Thompson Aff. ¶¶ 5, 9, Gordon Aff. ¶¶ 5, 9, Galdon Aff. ¶¶ 5, 9, Panasiewicz Aff. ¶¶ 5, 9, Marzullo Aff. ¶¶ 5, 9)

II. **THE COURT'S ROLE IN NOTIFYING EMPLOYEES OF THEIR RIGHT TO OPT-IN TO THIS FLSA LAWSUIT.**

   A. *Expedited Notice Is Required Under the FLSA.*

When the FLSA was enacted in the 1930s, Rule 23 did not exist. Congress, however, thought it was important to create a mechanism by which employees who alleged violations under the FLSA could have their claims adjudicated in one lawsuit. Therefore, the FLSA created a precursor of Rule 23 with its "collective action" provision. *See* 29 U.S.C. § 255(a). Under the FLSA, the employee must affirmatively "opt-in" to the lawsuit, but once he or she does so, his or her case is part of the class-wide allegations in the lawsuit.

It is important that employees be notified of their rights to participate in a FLSA collective action. First, the Second Circuit has long held that the interests of both the parties and the courts are best served if plaintiffs' FLSA claims are heard in one lawsuit. *See Braunstein v. Eastern Photographic Labs.*, 600 F.2d 335, 336 (2d Cir. 1979) ("We believe that Judge Daly took the proper course in authorizing notice to other potential plaintiffs in this action under the FLSA....[T]his holding comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding the multiplicity of suits.").

The Supreme Court adopted the views of the Second Circuit and encouraged the use of notice as being in the best interests of the parties involved. *Hoffmann-LaRoche, Inc. v. Sperling,* 493 U.S. at 170 ("[a] collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources" and serves the equally important judicial interest of "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity."). This Court wrote,

> A collective action allows…plaintiffs to take advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity…. Notice plays an important role in facilitating a collective action and furthers [the statute's] remedial purposes.

*Rehwaldt v. Elec. Data Systems Corp.*, 1996 WL 947568, *3 (W.D.N.Y.) *citing Jackson v. N.Y. Tel. Co.*, 163 F.R.D. 429 (S.D.N.Y. 1995).

Second, expedited notice is required because of the FLSA's statute of limitations. The statute of limitations covers the last three (or two) years of an employee's paychecks. Therefore, an injured employee loses forever his right to recover on illegal paychecks more than three years old. As then-District, now Circuit, Judge Sotomayor explained, expedited notice is essential because an injured employee's claims "die daily" if they do not opt-in to the lawsuit. *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997). Certainly defendants have every incentive to delay the matter.

  **B.**  ***Notice Is Required Once Plaintiffs Present "Modest" Allegations of Other Similarly Situated Employees.***

If there are potentially "similarly situated" employees, class-wide notice is appropriate. *Hoffmann-LaRoche, Inc.*, 493 U.S. at 168-69. Perhaps because of the importance of expedited notice, the requirements to demonstrate the existence of possibly "similarly situated" employees are minimal. *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 95-96 (S.D.N.Y. 2003); *Brychnalski v. Unesco, Inc.*, 35 F. Supp.2d 351, 353 (S.D.N.Y. 1999); *Realite v. Ark Restaurants Corp.*, 7 F. Supp.2d 303, 307-308 (S.D.N.Y. 1998); *Hoffman*, 982 F. Supp. at 249; *Rehwaldt*, 1996 WL 947568, at *5 (W.D.N.Y.); *Jackson*, 163 F.R.D. at 429; *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 375 (N.D.N.Y. 1995); *Palmer v. Reader's Digest Association, Inc.*, No. 84 Civ. 8397, 1986 WL 324 (S.D.N.Y. Feb. 11, 1986); *Frank v. Capital Cities*

*Communications, Inc.*, 88 F.R.D. 674, 676 (S.D.N.Y. 1981). Courts, including this Court, hold that notice in FLSA collective actions is appropriate under standards far more lenient than those under Rule 23. *See Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 386 (W.D.N.Y. 2005) (Larimer, J.) ("the FLSA simply requires that all employees be 'similarly situated.' The other factors required in class actions—numerosity, typicality, etc.—do not apply to collective actions."); *Ayers v. SGS Control Svcs., Inc.*, No. 03 Civ. 9078, 2004 WL 2978296, at *4 (S.D.N.Y. Dec. 21, 2004); *Hoffman*, 982 F. Supp. at 263 ("[T]he prevailing view among federal courts, including courts in this Circuit, is that [FLSA] collective actions are *not* subject to Rule 23's strict requirement, particularly at the notice stage.") (Sotomayor, J.); *Schwed v. Gen. Elec. Co.*, No. 94-CV-1308, 1997 WL 204394, at *3 (N.D.N.Y. Apr. 11, 1997) (Pooler, J.); *Rehwaldt*, 1996 WL 947568, at *3 (*citing with approval Jackson*, 163 F.R.D. at 431 and *Krueger v. N.Y. Tel. Co.*, 1993 WL 276058, *2 (S.D.N.Y.)).

This Court has held that notice should be sent if the plaintiffs merely allege that there are other employees who were also not paid overtime. *Rehwaldt*, 1996 WL 947568, at *4 (notice to be sent "based on little more than the plaintiff's allegations") *citing with approval Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674 (S.D.N.Y. 1981). Other courts in this Circuit have reached the same conclusion. Courts have noted that plaintiffs must, at most, make "substantial allegations;" or "describe the potential class within reasonable limits;" or allege that other plaintiffs are "purportedly subject" to a common scheme to deprive them of overtime; or assert "at least a colorable claim;" or make a "modest factual showing;" or present "some factual basis;" or "indicate" there is a class-wide basis for relief. *Jackson*, 163 F.R.D. at 431; *Schwed*, 159 F.R.D. at 375-76; *Hoffman*, 982 F. Supp. at 261 (Sotomayor, J.); *Realite*, 7 F. Supp.2d at 307 (Sotomayor, J.). As this Court has held, the

- 8 -

allegations need neither be "strong or conclusive" for notice to be sent. *Rehwaldt*, 1996 WL 947568, at *4 ("plaintiffs are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subject to a common discriminatory scheme") (*citing Jackson*, 163 F.R.D. at 431-32); *Hoffman*, 982 F. Supp. at 261 ("The burden on plaintiffs is not a stringent one.") (Sotomayor, J.).

Courts identify two reasons for this low standard.  First, under well-established Second Circuit and Supreme Court precedence, the FLSA is to be read broadly and liberally to effectuate its remedial purpose.  *Hoffman*, 982 F. Supp. at 261 (Sotomayor, J.); *Rehwaldt*, 1996 WL 947568, at *4 (W.D.N.Y); *Braunstein*, 600 F.2d at 336.

Second, and perhaps more importantly, class-wide notice is wise, even if the claims have no merit, or even if the plaintiffs will be placed into subclasses.  This Court cited with approval the following holding in *Jackson v. New York Telephone Company*:

> *The inquiry at the inception of the lawsuit is less stringent than the ultimate determination that the class is properly constituted….*  [E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable a more efficient resolution of the underlying issues in this case….  These benefits, however, depend on employees receiving accurate and timely notice.

*Rehwaldt*, 1996 WL 947568, at *3 (emphasis in original).  Discovery can also be conducted more efficiently if the notice is sent early, regardless of the potential merits of the claim or ultimate merits of the claim.  As cited by this Court,

> Defendants' argument [against pre-discovery notice] is that the "plaintiffs' claims may be shown in the crucible of discovery to be weak, if not meritless," in which case no notice should be sent.  The answer is that the experiences of other employees may well be probative of the existence *vel non* of a discriminatory policy, thereby affecting the merits of plaintiffs' own claims; and the notice machinery contemplated by the [statute], by reaching out to potential plaintiffs, may further the statute's remedial purpose.

*Rehwaldt*, 1996 WL 947568, at *4 (*citing Frank*, 88 F.R.D. at 676); *Realite*, 7 F. Supp.2d at 308 ("I am not holding at this time that all members of the proposed class who will be sent notices are, in fact, similarly situated.... I may later decertify the class, or divide the class into subgroups.... However, at this early juncture … principles of efficiency and judicial economy militate in favor of maintaining this action as a collective one, and waiting to see what the facts bear out.") (Sotomayor, J.).

Thus, in making the determination to send out notice, the court does not examine the underlying merits of the action. *Rehwaldt*, 1996 WL 947568, at *5 (*citing Frank*, 88 F.R.D. at 676); *Realite*, 7 F. Supp.2d at 308; *Jackson*, 163 F.R.D. at 431. Nor does the fact that the notified employees may or may not ultimately be found to be similarly situated, make any difference at the notification stage. *Id*.

Nor do the employment situations or claims of the notified employees need to be the same. Courts send out notice to employees allegedly affected by the same policy regardless of their job titles, location within the company, or reporting relationships: "Class treatment under the [statute] is not defeated simply because, as here, the plaintiffs performed a variety of jobs in a number of departments at different locations." *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988). A "finding of similarly situated does not require the plaintiffs to perform the same job in the same location as long as there is a discriminatory policy common to all." *Abrams v. Gen. Elec. Co.*, No. 95-CV-1734, 1996 WL 663889, at *2 (N.D.N.Y Nov. 4, 1996); *Jackson*, 163 F.R.D. at 432. Even if all the named plaintiffs were employed by the same department, as long as the plaintiffs allege the same policy effected other employees elsewhere, notice to employees in the corporation's other units and operations is warranted. *Schwed*, 159 F.R.D. at 377; *Hoffman*, 982 F. Supp. at 264 (notice

appropriate to all current and former managers and co-managers, or persons holding equivalent positions, however titled, who worked overtime and were not paid, rejecting defendant's attempts at a narrower range) (Sotomayor, J.). The plaintiff must simply allege a factual nexus between the employees and the alleged policy. *Realite*, 7 F. Supp.2d at 308 (notice appropriate because affidavits "indicate" same policy was in effect at other locations) (Sotomayor, J.).

Courts routinely order notice to employees who are subject to an automatic break deduction policy like the one at issue in this case. *See Barrus v. Dicks Sporting Goods, Inc.* 465 F.Supp.2d 224 (W.D.N.Y. 2006) (notification granted to all hourly employees subject to employer's automatic meal deduction policy); *Carmody v. Florida Center for Recovery, Inc.,* No. 05-14295-CIV, 2006 WL 3666964 (S.D. Fla. Nov. 8, 2006) (notification granted to registered nurses and other similarly situated employees who claimed that thirty minutes was automatically deducted from their pay regardless of whether employees were actually relieved of their work duties); *Berger v. Cleveland Clinic Foundation*, No. 05-CV-1508, 2007 WL 2902907 (N.D. Ohio Sept. 29, 2007) (court certified class action under both Rule 23 and FLSA § 216(b) for respiratory therapists subject to an automatic break deduction policy whose lunch breaks were interrupted for work related duties).

As part of the notification process, the defendant is required to immediately (often within 15 days or shorter) turn over the names and last known addresses of the potential opt-ins. *Hoffmann-LaRoche, Inc.*, 493 U.S. at 170 ("District Court was correct to permit discovery of the names and addresses ..."); *Brzychnalski v. UNESCO*, 35 F. Supp.2d 351, 353 (S.D.N.Y. 1999); *Realite*, 7 F. Supp.2d at 309-10; *Jackson*, 163 F.R.D. at 432-33; *Rehwaldt*, 1996 WL 947568, at *8; *Schwed*, 159 F.R.D. at 378. Because the information is likely stored on a

computer database, to facilitate notice, plaintiffs request the production in both electronic (in a readily readable format) and hard copy format.

### C. Because Plaintiffs Presented More Than The Minimal Showing Required, Notice Should Be Sent To Other Employees.

To determine if plaintiffs meet the liberal standard for notification, two issues must be addressed: the proper scope of the class of similarly situated employees and whether the plaintiffs have presented evidence that they are similarly situated to that group of plaintiffs.

In this case, the proper scope for notification is current or former employees of defendants who fall within the class as described above. Additionally, plaintiffs have presented far more than enough evidence to meet the liberal standard for notification to these similarly situated former and current employees.

Not only are the putative plaintiffs similarly situated, the named plaintiffs have produced more than sufficient evidence to warrant notification under the liberal FLSA standards by showing that similarly situated employees were subject to a common policy, practice and/or system that deducted time from employees for meal breaks even when employees worked through their meal breaks. (Mika Aff. ¶¶ 4, 5, Pfentner Aff. ¶¶ 4, 5, Schaffer Aff. ¶¶ 4, 5, Thompson Aff. ¶¶4, 5, Gordon Aff. ¶¶4, 5, Galdon Aff. ¶¶4, 5, Panasiewicz Aff. ¶¶4, 5, Marzullo Aff. ¶¶4, 5) Employees also universally testified that defendants' policy was not to compensate employees when their meal breaks were interrupted. (Mika Aff. ¶ 5, Pfentner Aff. ¶ 5, Schaffer Aff. ¶ 5, Thompson Aff. ¶5, Gordon Aff. ¶5, Galdon Aff. ¶5, Panasiewicz Aff. ¶5, Marzullo Aff. ¶5) Additionally, employees have testified that the policies equally applied to all hourly employees. (Mika Aff. ¶¶ 5, 7, Pfentner Aff. ¶¶ 5, 7, Schaffer Aff. ¶¶ 5, 7, Thompson Aff. ¶¶5, 7, Gordon Aff. ¶¶5, 7, Galdon Aff. ¶¶5, 7, Panasiewicz Aff. ¶¶5, 7, Marzullo Aff. ¶¶5, 7) Plaintiffs have also provided

H:\Buffalo Health Care\Kaleida Health\Memorandum of Law in Support of Notice.doc

sufficient evidence that the break deduction policy was observed throughout defendants locations, including their hospitals and nursing homes, such as Deaconess Center, Millard Fillmore Suburban Hospital, DeGraff Memorial Hospital and Millard Fillmore Gates Hospital. (Mika Aff. ¶ 10, Pfentner Aff. ¶ 10, Schaffer Aff. ¶ 10, Thompson Aff. ¶10, Gordon Aff. ¶10, Galdon Aff. ¶10, Panasiewicz Aff. ¶10, Marzullo Aff. ¶10) Therefore, there is little dispute that there is common issue among all the putative plaintiffs in this lawsuit: that similarly situated employees were subject to a common policy which *automatically* deducted time for meal breaks even when such employees should have been paid for their compensable work time.

Therefore, it is appropriate to send notice to all potentially affected employees.

### D.     *The Proposed Notice is Fair and Adequate and Needs to be Expedited.*

As discussed above, a collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche, Inc.*, 493 U.S. at 170. The court-authorized notice prevents "misleading communications," such as is often unilaterally disseminated by defendants. *Id*. at 172. Plaintiffs' proposed notice meets these criteria. It provides notice of the pending action and opportunity to opt-in. (Thomas Aff., Ex. A)

Plaintiffs' counsel modeled their proposed notice heavily on the examples provided on the Federal Judicial Center's ("FJC") website, found at (http://www.fjc.gov/public/home.nsf). The FJC is the education and research agency for the federal courts which was established by Congress in 1967, on the recommendation of the Judicial Conference of the United States. (Thomas Aff., Ex. B). The FJC was requested to develop illustrative notices of proposed class

H:\Buffalo Health Care\Kaleida Health\Memorandum of Law in Support of Notice.doc

action certifications and settlements by the Subcommittee on Class Actions of the U.S. Judicial Branch's Advisory Committee on the Federal Rules.  In order to develop its illustrative notices, the FJC engaged in a careful study of the use of plain language in legal documents.  (Thomas Aff., Ex. B)  After obtaining recommendations from a lawyer with a Ph.D. in linguistics and using multiple rounds of focus groups, testing and re-drafting to refine the notice to provide maximum comprehension for individuals reading the notice, the FJC finally posted, and re-posted, its illustrative notices for use by courts and attorneys. (Thomas Aff., Ex. C; FJC Employment Discrimination Class Action-Full Notice)

As a result this comprehensive research and analysis, the FJC's illustrative notices are the recognized leading models for notice in class actions.  *See Pierce v. Novastar Mortgage, Inc.*, No. C 05-5835 RJB, 2007 WL 505670, at *3 (W.D. Wash. Feb. 12, 2007); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005); *Rivera-Feliciano, et al. v. Acevedo-Vila*, No. Civ. 05-1910(PG), 2005 WL 2170881 (D.P.R. Sept. 7, 2005); *Grider v. Keystone Health Plan Cent., Inc.*, No. 2001-CV-05641, 2006 WL 3825178 (E.D. Pa. Dec. 20, 2006); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F.Supp.2d 612 (E.D. La. 2006); *Martsolf v. JBC Legal Group, P.C.*, No. Civ. A. 1:04-CV-1346, 2005 WL 331544 (M.D. Pa. Feb. 7, 2005); *In re Indep. Energy Holdings PLC Sec. Litig.,* 302 F.Supp.2d 180 (S.D.N.Y. 2003); *Allstate Fin. Corp. v. Bristol Meyers Squibb Co.*, No. 96 Civ. 1785(LMM), 1997 WL 728237 (S.D.N.Y. Nov. 20, 1997); *Bafus v. Aspen Realty, Inc.*, No. CV-04-121-S-BLW, 2007 WL 793633 (D. Idaho Mar. 14, 2007); *In re Serzone Products Liability Litigation*, 231 F.R.D. 221 (S.D.W.Va. 2005).

Plaintiffs' notice follows the content and form of the FJC models, including an introductory page that quickly informs class members about the case and how they are

affected and detailed information separated by headings. (Thomas Aff., Ex. A)  Overall, plaintiffs' proposed notice is easy to read and written in plain English, informing class members of their rights and how they can elect to participate in the action.  The notice also describes the legal effect of joining the suit; describes the legal effect of not joining the suit; notes that the Court expresses no opinion regarding the merits of plaintiffs' claims or defendant's liability; and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action.  *See* 29 U.S.C. § 215(a)(3) (anti-retaliation provision).

Plaintiffs propose that the notice and consent forms be mailed first-class to all of defendants' employees who are or have been subject to the Break Deduction Policy.  To facilitate this notice, the Court should also order defendant to disclose the names and addresses of all potential plaintiffs.

Because the statute of limitations is daily destroying the injured employees' ability to collect damages, plaintiffs also request that defendants internally post the notice prominently on the lunch room bulletin boards (or alternatively on the bulletin boards where job notices are posted) and print the notice in five circulations of the company's newsletter. *See Kane v. Gage Merchandising Servs., Inc.,* 138 F. Supp.2d 212, 216 (D.Mass. 2001).  Courts have long required that notice be posted at company facilities, in addition to being mailed to employees' homes.  Plaintiffs further request that defendant provide e-mail addresses of employees and help facilitate the notice being sent electronically to such employees. *See, e.g., Frank,* 88 F.R.D. at 679; *Kane,* 138 F. Supp.2d at 216 (requiring the provision of employee's e-mail address).

Plaintiffs' counsel can take steps in addition to the court-approved notice to inform plaintiffs of their rights.  For instance, counsel may send additional written notices to affected employees, provided the written communication is accurate and not misleading.  *See Shapero v. Kentucky Bar Assoc.*, 486 U.S. 466 (1988); *Gulf Oil v. Bernard* 452 U.S. 89 (1981).  To ascertain the facts and gather evidence, plaintiffs' counsel may initiate phone contact with potential witnesses, provided those individuals are not represented by counsel.  These measures are important, and plaintiffs' counsel will utilize them as needed.  However, as courts have repeatedly held, the best way to insure that employees' rights do not continue to "die daily" is for this Court to approve the notice proposed by plaintiffs; order its expedited dissemination; and forbid any future retaliation.

As set forth above, this case requires immediate and effective FLSA notification. Defendants have every reason to delay this process in any way possible – every day that goes by removes large amounts of liability from their books.  Therefore, every effort must be made to stop the valid claims of defendants' employees from continuing to "die daily."

Therefore, it is appropriate to send notice to all potentially affected employees.

## CONCLUSION

For the forgoing reasons, plaintiffs respectfully request that this Court issue an Order:

1. requiring the issuance of an expedited notice as set forth in Exhibit A to the affirmation of J. Nelson Thomas to all current and former hourly employees of the defendants who fall within the class as described above;

2. requiring defendants to provide to plaintiffs' counsel a list both electronically (in an Excel spreadsheet) and with each item of the employee's name, current or last known address, phone number, social security number, location of employment, dates of employment, date of birth and e-mail address designated as a separate field and by hard copy, of all individuals who meet the above class description, including their current or last known address, phone number, e-mail address, social security number, location of employment, dates of employment and date of birth within 15 days of the issuance of the order;

3. requiring defendants to post notices and opt-in forms in a conspicuous place (such as break rooms or other such locations) at defendants' locations where employees can see such notices during the pendency of the lawsuit;

4. requiring defendants to e-mail such notices and opt-in forms to employees;

5. requiring defendants to publicize such notice five times in defendants' employee newsletter or other employee communications; and

6. for such other relief as this Court deems just and proper.

Dated: May 28, 2008

**DOLIN, THOMAS & SOLOMON LLP**

By:   s/ J. Nelson Thomas
      J. Nelson Thomas, Esq.
       *Attorneys for Plaintiffs*
      693 East Avenue
      Rochester, New York 14607
      Telephone:  (585) 272-0540
      nthomas@theemploymentattorneys.com

H:\Buffalo Health Care\Kaleida Health\Memorandum of Law in Support of Notice.doc