UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CATHERINE GORDON, et al.,

                    Plaintiffs,

        v.                                          **DECISION AND ORDER**
                                                    08-CV-378S

KALEIDA HEALTH, et al.,

                    Defendants.

# I. INTRODUCTION

Six Plaintiffs commenced this putative collective/class action on May 22, 2008, alleging that Defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by failing to pay hourly employees for all hours worked and/or overtime for hours worked over 40 per week. There are presently eight motions pending in this case, four of which are addressed here; Plaintiffs' motion for "conditional certification" of an FLSA collective action, presented in the form of a Motion for Expedited Notice to Affected Employees (Docket No. 9)[1], Plaintiffs' Motion for an Expedited Hearing on the

---

[1] In support of their motion, Plaintiffs filed a Memorandum of Law (Docket No. 10); the Affirmation of J. Nelson Thomas, Esq. with Exhibits A-C, dated May 28, 2008 (Docket No. 11); the Affirmation of J. Nelson Thomas, Esq. with Exhibits A-H, dated June 10, 2008 (Docket No. 53); a Reply Memorandum of Law (Docket No. 129); the Affirmation of J. Thomas Nelson, Esq. with Exhibits A-B, dated August 22, 2008 (Docket No. 130); and additional authority (Docket Nos. 178, 181, 186, and 216).
        Defendants filed a Memorandum of Law in Opposition to the Motion (Docket No. 117); the Declaration of Susan C. Roney, Esq. with Exhibit 1, dated August 8, 2008 (Docket No. 118); the Declaration of Jonathan W. Greenbaum, Esq. with Exhibits 1-5, dated August 5, 2008 (Docket No. 119); the Declaration of Michael A. Connors, Esq. with Exhibits 1-11, dated July 30, 2008 (Docket No. 120); and a Sur-Reply Memorandum with Exhibit A (Docket No. 136).

Motion for Expedited Notice (Docket No. 20)[2], Plaintiffs' Motion for an Equitable Toll of the FLSA's Statute of Limitations (Docket No. 191)[3], and Plaintiffs' Motion for a Status Conference (Docket No. 220)[4].

For the reasons discussed below, Plaintiff's motion seeking conditional certification and court-authorized notice to affected employees, which includes a request that Defendants produce employee information, is granted. However, the scope of Defendants' obligations are limited as set forth in this Decision and Order. The motions for equitable tolling of the FLSA statute of limitations, for an expedited hearing, and for a status conference are denied.

## II. BACKGROUND

The named Plaintiffs are hourly employees of Defendants (collectively referred to as "Kaleida"), who allege, *inter alia*, that Kaleida violated various wage and hour requirements of the FLSA.[5] (Docket No. 1) Kaleida is a healthcare network consisting of hospitals; primary care and medical offices; an ambulatory surgery center; behavioral health centers and clinics; outpatient rehabilitation and wellness centers; home care

---

[2] Plaintiffs have filed a supporting Memorandum of Law (Docket No. 21). Defendants have not opposed the motion.

[3] Plaintiffs have filed a Memorandum of Law in Support (Docket No. 192); the Affirmation of Michael J. Lingle, Esq. with Exhibit A, dated June 11, 2009 (Docket No. 193); and a Reply Memorandum of Law (Docket No. 218).
Defendants filed the Affidavit of Susan C. Roney, Esq. with Exhibit A, sworn to July 2, 2009 (Docket No. 196); and a Memorandum of Law in Opposition (Docket No. 197).

[4] Plaintiffs filed the affirmation of J. Nelson Thomas, Esq. with Exhibit A, dated July 23, 2009, in support (Docket No. 221).

[5] Plaintiffs also allege violations of state wage and hour laws, but have sought and been granted an extension of time to move for class certification of those state law claims under Fed. R. Civ. P. 23.

services; long-term care and subacute care centers; laboratory services; school-based clinics; a corporate facility; and a health foundation. (Docket No. 120 ¶ 2, Ex. 1.) All told, Kaleida has approximately 75 locations and/or facilities. (*Id.* ¶ 13.)

Kaleida employs about 9,000 hourly workers, approximately 8,200 of whom are represented by one of five union affiliates.[6] (*Id.* ¶¶ 3-4; Docket No. 1 ¶¶ 16, 93.)

Plaintiffs allege in their Complaint that Kaleida maintains a Break Deduction Policy throughout its facilities and centers, which automatically deducts a meal break from the pay of hourly workers. (Complaint ¶¶ 75-76.) According to Plaintiffs, Kaleida requires certain hourly employees, including nurses, licensed practical nurses, aides, and other health care workers, to engage in patient care during meal breaks, it knows that such work is performed, but it has a practice of subjecting employees to the automatic deduction even when they have worked through all or part of the meal period. (*Id.* ¶¶ 12, 77-82, 85, 107-111.) It is alleged that the time spent working through meal breaks, along with other uncompensated work performed before or after shifts and time spent attending training sessions, often included work that should have been paid at overtime rates. (*Id.* ¶¶ 88-90.) Plaintiffs allege that all Kaleida facilities are integrated under common management and a centrally organized labor relations and human resources team, such that its policies are applied system-wide. (*Id.*, *e.g.*, ¶¶ 17-20, 75-82.)

Each of the lead Plaintiffs, and two consent plaintiffs, submitted affirmations stating that Kaleida automatically deducts 30 minutes from hourly employee paychecks for each

---

[6] The representative unions and affiliates are Communications Workers of America ("CWA"), AFL-CIO, Locals 1168 and 1122; Service Employees International Union ("SEIU"), Locals 1199 Upstate and 200C; and International Union of Operating Engineers ("IUOE"), AFL-CIO, Local 17S.

shift worked.  (Docket No. 53, Exs. A-H, ¶¶3, 6.)  They go on to declare it was a "common" or "everyday occurrence" that they and "some" other employees were interrupted during their 30-minute meal break, defendants and management expected and knew that the employees worked through some or all of their lunches to take care of patients, and the 30-minute pay deduction was taken even when the declarants and others worked through their entire shift. (*Id.* ¶¶ 4-5, 7, 9-10.)  The meal break interruptions/losses were specifically attributed to chronic understaffing at Kaleida hospitals and skilled nursing facilities.[7]  (*Id.* ¶ 7.)  Two Plaintiffs, Gordon and Mika, state that their duties take them to other floors and units where they have observed others having their lunches interrupted, and that they learned of similar occurrences at inservice or other meetings with employees outside their own unit.  (*Id.* Exs. A & D, ¶ 7.)  According to all the declarants, Defendants seemed unconcerned "about employees missing meal periods and not getting paid for that time." (*Id.* Exs. A-H, ¶ 10.)

In response, Kaleida concedes that its timekeeping system automatically deducts 30 minutes daily from hourly employees' time for a meal break.  (Docket No. 120 ¶ 8.) However, it urges that its policy is to pay employees for all hours worked.  (*Id.* ¶ 9.)  To that end, it contends it has processes by which employees can report time worked during their uncompensated meal breaks—either by recording the time in an exception log or notifying the supervisor—so that the automatic meal deduction can be overriden in its timekeeping system.  (*Id.*)  Kaleida has submitted thirty-five declarations from hourly employees who

---

[7]  The declarants attest to understaffing at Deaconess Center, Millard Fillmore Gates, Millard Fillmore Suburban, DeGraff Memorial, and Buffalo General.  (Docket No. 53; *see* Connors Decl. Ex. 1 for description of facility services.)

4

state either that they have never had to perform work during meal periods, or that they have occasionally performed such work, but they reported the work time and were properly compensated. (Docket No. 119, Ex. 4.) Kaleida has also submitted declarations from eighteen managers who each state, *inter alia*, that they instruct employees to report a missed meal period and are unaware of any policy or practice not to pay employees for all time worked. (*Id.* Ex. 5.) Kaleida attests that no claim for missed meal periods has ever gone to arbitration under a union contract, and then concludes that any grievance on that issue must have been settled to the union's satisfaction prior to arbitration. (Docket No. 120 ¶10.)

In reply, Plaintiffs filed forty-one additional affirmations from current or former Kaleida employees, which recite essentially the same facts as those previously filed.[8] All of the declarants hold or held the positions of registered nurse, licensed practical nurse, staff nurse, nurses aide, home health aide, or respiratory therapist. (Docket No. 130, Ex. A.) Thirty-eight appear to identify their current or most recent Kaleida workplace as a hospital or nursing home.[9] Two state that they were aware of the existence of exception logs, but were directed by their respective supervisors that they could not use the log for missed meal time, or could record missed meal time only if "extenuating circumstances" existed. (Docket No. 130-2, Militello and Malkowski Affirmations.)

---

[8] Kaleida sought to have these affirmations stricken as improperly submitted on Plaintiffs' reply, or alternatively, for the opportunity to file a sur-reply. (Docket No. 134.) The Court granted Kaleida's request for leave to file a sur-reply. (Docket No. 139.)

[9] Three state they are or were employed at Visiting Nurses Association, a home health care provider. (Docket No. 130, Ex. A; Docket No. 120, Ex. 1.)

## III.  DISCUSSION

**A.    Plaintiffs' Motion for Expedited Notice to Affected Employees**

Congress enacted the FLSA in 1938 "to protect all covered workers from substandard wages and oppressive working hours, labor conditions that are detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers."  Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981) (citation omitted).  Among other protections, section 207(a)(1) of the FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003).

The FLSA permits one or more "similarly situated" employees alleging violations of the statute to institute a collective action.  29 U.S.C. § 216(b).  Section 216(b) states, in relevant part, that an action to recover damages:

> may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Unlike a representative action under Rule 23 of the Federal Rules of Civil Procedure, where all persons in the defined class are bound by the case outcome unless they affirmatively "opt out," an employee does not become a party to an FLSA collective action unless he or she affirmatively "opts in" by filing written consent with the court. Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 260 (S.D.N.Y. 1997).  The purpose of the "opt

6

in" language was "'to prevent[ ] large group actions, with their vast allegations of liability, from being brought [by unions] on behalf of employees who had no real involvement in, or knowledge of, the lawsuit.'" <u>United Food & Commercial Workers Union Local 1564 of New Mexico v. Altertson's Inc.</u>, 207 F.3d 1193, 1200 (10th Cir. 2000) (quoting <u>Arrington v. National Broad. Co.</u>, 531 F. Supp. 498, 501 (D.D.C. 1982)).

### 1.   Conditional Certification

Within one week after filing their Complaint, Plaintiffs filed hundreds of written consent forms from current and former Kaleida employees (Docket Nos. 2-8), and moved for  expedited notice to other potentially affected employees (Docket No. 9).[10]   The Supreme Court has determined that district courts have discretion, in appropriate cases, to facilitate the process by which notice of the lawsuit is given to potential plaintiffs. <u>Hoffmann-La Roche, Inc. v. Sperling</u>, 493 U.S. 165, 169-70, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989) (construing 29 U.S.C. § 216(b) in the context of an ADEA lawsuit); *see also*, <u>Gjurovich v. Emmanuel's Marketplace, Inc.</u>, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) (while the FLSA has no provision for issuing notice in a collective action, it is well settled that district courts have the power to authorize notice).  A determination of whether notice should issue necessarily includes a determination of whether to conditionally certify this lawsuit as a collective action.

A majority of district courts, including those within the Second Circuit, employ a two-step process to determine whether a lawsuit should proceed as an FLSA collective

---

[10]  Plaintiffs have not yet moved for class certification of their state law claims under Fed. R. Civ. P. 23.

action.[11]  *See, e.g.*,  <u>Hens v. Clietlogic Operating Corp.</u>, 05 Civ. 381S, 2006 U.S. Dist. LEXIS 69021, at *9 (W.D.N.Y. Sept. 22, 2006); <u>Zivali v. AT&T Mobility LLC</u>, 08 Civ. 10310, 2009 U.S. Dist. LEXIS 74420, at *5-6 (S.D.N.Y. Aug. 24, 2009); <u>Monger v. Cactus Salon & Spa's LLC</u>, 08 Civ. 1817, 2009 U.S. Dist. LEXIS 60066, at *4 (E.D.N.Y. July 6, 2009); <u>Ruggles v. WellPoint, Inc.</u>, 591 F. Supp. 2d 150, 157-58 (N.D.N.Y. 2008).

At the first step—the notice stage—the court determines, based on the pleadings, affidavits, and declarations, whether the named plaintiffs have demonstrated that the employees they seek to notify are "similarly situated."  <u>Hens</u>, at *10; <u>Bah v. Hoe Mania, Inc.</u>, 08 Civ. 9380, 2009 U.S. Dist. LEXIS 40803, at *8 (S.D.N.Y. May 13, 2009) (citation omitted).  The evidentiary standard is lenient at this stage, the plaintiffs need make only a "modest factual showing" that they and the other putative collective action members "together were victims of a common policy or plan that violated the law." <u>Rubery v. Buth-Na-Bodhaige, Inc.</u>, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008) (citation omitted); *see also*, <u>Realite v. Ark Restaurants Corp.</u>, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) (collecting cases).  A plaintiff's burden on this step is minimal, "especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one." <u>Scholtisek v. Eldre Corp.</u>, 229 F.R.D. 381, 387 (W.D.N.Y. 2005) (quoting <u>Gjurovich</u>, 282 F. Supp. 2d at 104 (S.D.N.Y. 2003) (internal quotation marks and citation omitted)).

The second step occurs after discovery is complete, when the court examines the evidentiary record and makes a factual finding as to whether the conditionally certified plaintiffs are, in fact, similarly situated to the lead plaintiffs.  <u>Romero v. Flaum Appetizing</u>

---

[11]  The Second Circuit does not appear to have spoken on the procedure for making this determination.

Corp., 07 Civ. 7222, 2009 U.S. Dist. LEXIS 80498, at *7-8 (S.D.N.Y. Aug. 17, 2009) (quoting Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)). If the court determines the opt-in plaintiffs are not similarly situated, "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." Rubery, 569 F. Supp. 2d at 336. Alternatively, if the class description is shown to require modification, that can be accomplished at the second tier inquiry. Id. at 338 (citations omitted).

Here, Plaintiffs seek to notify "all current and former hourly employees of the defendants whose pay was subject to an automatic [meal period] deduction even when the employees should have been paid for their compensable work time." (Docket Nos. 1 ¶ 73; 10 at 1; 11-2 at 2.) I find this proposed class description is vague and not in accord with Plaintiffs' Complaint and affirmations, which, taken together, limit the proposed class to certain job titles and work locations.

First, Plaintiffs allege that Kaleida requires employees to work through all or part of a meal period *to engage in patient care*. This necessarily excludes hourly workers engaged in clerical, food service, maintenance and other positions that do not involve direct patient care services. Impacted employees are identified in the Complaint as nurses, licensed practical nurses, aides, and "other health care workers," and more specifically in the affirmations as registered nurses, staff nurses, licensed practical nurses, nurses aides, and respiratory therapists. In their reply brief, Plaintiffs concede they intend that only employees performing work at Kaleida locations be included in the collective

action[12]—thereby making clear that home health aides and other health care employees engaged in patient care outside Kaleida facilities are not "similarly situated," regardless of the fact that three such opt-in plaintiffs submitted affirmations.

The lead Plaintiffs' affirmations expressly link the requirement that patient care be performed during meal periods to chronic understaffing at Kaleida's hospitals and skilled nursing facilities.[13] And opt-in plaintiffs falling within the above job titles appear to have submitted affirmations only from such facilities,[14] excepting the three home health care employees, who Plaintiffs apparently concede are excluded. (Docket Nos. 53; 130.) There is nothing in the Complaint or affirmations to suggest the involvement of any other type of Kaleida location or service.

In sum, the Court finds that Plaintiffs, all of whom are or were patient care providers in a hospital or nursing home, have made a "modest factual showing," by way of affirmations, that they routinely worked through their meal periods to attend to patient needs, and that this experience was shared by other hourly patient care providers working as registered nurses, staff nurses, licensed practical nurses, nurses aides, and respiratory therapists in Kaleida's hospitals and skilled nursing facilities. The Court also finds Plaintiffs

---

[12] Plaintiffs distinguish a case cited by Defendants, where conditional certification was denied, by noting that the unsuccessful class involved employees who worked away from the employer's place of business and were responsible for scheduling their own meal breaks, whereas the plaintiffs here "are performing work at defendants' locations during their meal periods and are docked pay" even though management knows of the interrupted or missed meals. (Docket No. 129 at 6, n.4.)

[13] Kaleida's hospitals include Buffalo General, DeGraff Memorial, Millard Fillmore Gates Circle, Millard Fillmore Suburban, and Women & Children's Hospital of Buffalo. It's skilled nursing/long-term care facilities are located at Deaconess Center, DeGraff Memorial, Millard Fillmore Gates Circle, and Waterfront Health Care Center. (Docket No. 120, Ex. 1.)

[14] At least one employee from each Kaleida hospital and skilled nursing facility has submitted an affirmation.

have made a modest factual showing of a practice of applying the automatic 30-minute meal deduction to these employees when they worked through part or all of their meal breaks. Plaintiffs attest to their own experiences, and to observing and hearing from other employees regarding the requirement that they work during meals. The statements of the opt-in plaintiffs are in accord. Two opt-in plaintiffs affirm that when they missed meals they were expressly directed not to use the exception log, or that it was to be used rarely. The showing, at this first stage, is sufficient. *Compare* Wraga v. Marble Lite Inc., 05 Civ. 5038, 2006 U.S. Dist. LEXIS 60457, at *4-5 (E.D.N.Y. Aug. 22, 2006) (granting plaintiff's motion based on complaint and single affidavit alleging failure to pay overtime where plaintiff stated he was aware, based on conversations, of others in a similar situation), *with* Prizmic v. Armour, Inc., 05 Civ. 2503, 2006 U.S. Dist. LEXIS 42627, at *2 (E.D.N.Y. June 12, 2006) (denying certification without prejudice where "[p]laintiff [had] not submitted *any* affidavit or documentation in support of the instant motion") (emphasis supplied); Diaz v. Electronics Boutique of Am., Inc., 2005 U.S. Dist. LEXIS 30382, (W.D.N.Y. Oct. 13, 2005) (denying conditional certification where, *inter alia*, plaintiff's allegation that time sheets were altered to avoid paying overtime were not alleged to have been at the direction of management or pursuant to a policy or practice, and there is no indication that plaintiff submitted a supporting affidavit or identified any other potential member of the class); Horne v. United Servs. Auto. Ass'n, 279 F. Supp. 2d 1231, 1234 (M.D. Ala. 2003) (plaintiff did not meet burden of showing that there were similarly situated individuals who would opt-in to lawsuit where he submitted only his own affidavit, alleging facts specific to him, and did not identify any other potential plaintiff).

It is equally clear from the foregoing discussion, however, that Plaintiffs have not

made the modest factual showing called for here to support their conclusory allegations and assertions that *all* of Kaleida was "chronically understaffed" such that the purported practice can be imputed to all other employees. There is no factual basis upon which to conditionally certify a class that extends beyond the job titles and facilities specifically identified in the Complaint and affirmations. *See* Sherrill v. Sutherland Global Servs., 487 F. Supp. 2d 344, 349-50 (W.D.N.Y. 2007) (conditionally certifying group of telemarketing agents at all call centers nationwide, but declining to extend class to all hourly employees at same locations because plaintiffs failed to minimally demonstrate that the unlawful practice affected employees in other job titles); Hens, 2006 U.S. Dist. LEXIS 69021, at *15 (limiting class of hourly telephone customer service employees to the facilities where they made some showing, by way of declaration, that potential FLSA violations occurred).

In opposition to Plaintiffs' motion, Kaleida contends that conditional certification should not be granted at all. Its various arguments are rejected for the reasons discussed below.

Kaleida first argues Plaintiffs have failed to meet their burden of showing they are "similarly situated" to any potential plaintiffs for three reasons: (1) they have not demonstrated the existence of a common policy; (2) their affirmations do not establish any similarity among employees; and (3) Kaleida employees are situated differently by virtue of their differing union affiliations and status.

The first reason has been addressed and no further discussion is warranted. With regard to the second reason, this Court already has determined that Plaintiffs have established a "factual nexus" to certain employees only, and limited the class description accordingly. However, Kaleida argues that when Plaintiffs' allegations and affirmations are

"viewed against the overwhelming evidentiary record submitted by Kaleida," it is clear there that Plaintiffs' claims are specific only to them and there is no "factual nexus" between them and any other hourly employees.

Kaleida's argument suggests this Court should weigh evidentiary submissions and render credibility determinations at this preliminary stage. In support, it points to a recent case from the Southern District of New York, Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 n.9 (S.D.N.Y. 2008), and to others from outside this Circuit. In Amendola, the parties engaged in court-supervised, limited discovery prior to the plaintiff's motion for authorization to send notice. In particular, the plaintiff was able to obtain the names and addresses of 350 employees sampled from each of the employer's business units, geographic regions, and job levels, 6,000 pages of documents, and depose a manager from each business division. Id. at 462. Under these circumstances, the district court proceeded to "scrutinize the merits based on the record developed to date." Id. at 467, n.9. Other cases on which Kaleida relies are procedurally similar. See, e.g., Ledbetter v. Pruitt Corp., 05-CV0329, 2007 U.S. Dist. LEXIS 10243, *7-9 (M.D. Ga. Feb. 12, 2007) (applying second-step examination of evidentiary record, and denying certification on allegations and proof similar to that presented here, where plaintiffs moved for conditional certification two weeks after discovery closed and had full opportunity to conduct discovery with respect to defendant's policies and procedures); Basco v. Wal-Mart Stores, Inc., 00-CV-3184, 2004 U.S. Dist. LEXIS 12441, at *3-4, 13-14 (E.D. La. July 1, 2004) (court applied second-step analysis and denied certification where parties agreed to engage in necessary discovery over course of approximately one year prior to court's consideration of the motion).

13

The decisions Kaleida points to are readily distinguished from the circumstances here. Plaintiffs moved for notice within a week of filing their Complaint, prior to any court-supervised or voluntary exchange of discovery. Indeed, it appears no discovery has been exchanged to date. In such circumstances, this district and other districts in this Circuit have consistently declined to apply a merit-based inquiry to the certification determination. Barrus, 465 F. Supp. 2d at 230 ("It is not the Court's role to resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations at the preliminary certification stage of an FLSA collective action."); Ruggles, 591 F. Supp. 2d at 158 (adopting stricter standard at first step "would invariably defeat the very nature of the two-tier approach and the statutory intent to facilitate a broad remedial purpose . . . ."); Sexton v. Franklin First Financial, Ltd., 08-CV-04950, 2009 U.S. Dist. LEXIS 50526, at *19-20 (E.D.N.Y. June 16, 2009) (defendants' merit-based argument is an attack on credibility of plaintiff and opt-in plaintiffs "that is not properly decided by the Court on this motion"). Kaleida provides no authority that persuades this Court to depart from the well-settled standard, and its argument is rejected.[15]

Kaleida next urges that it employs a mix of union and non-union workers, and its employees are not similarly situated by virtue of their membership in different bargaining units or no bargaining unit at all. As the single decision on which Kaleida relies confirms, evidence in this regard is not considered at the notice stage, but on a fully developed record on a motion for decertification. Anderson v. Cagle's, Inc., 488 F.3d 945 (11th Cir.

---

[15] Kaleida also urges that by sending out solicitation letters and establishing a website, Plaintiffs have engaged in an "investigation" of such "magnitude" that the stricter second step analysis applies here. Docket No. 117 at 10, n.4. Plaintiffs' outreach to other potential members of the collective action is not a substitute for discovery, including documents and depositions, from Defendant. Accordingly, the Court rejects Kaleida's invitation to "collapse the steps" in this case.

2007).

Finally, Kaleida argues that this case is inappropriate for collective action treatment because each claim will require an individualized inquiry—*i.e.*, mini-trials— involving employees working in over 350 job titles, who may be subject to one of numerous collective bargaining agreements, perform different work, in different facilities or departments, and report to different supervisors. It notes that Plaintiffs submitted affirmations only from patient care employees, and urges that the manner in which their meal breaks are scheduled, for example, will differ from a clerical or food service worker. In short, Kaleida reasserts and amplifies its prior argument that Plaintiffs are not "similarly situated" to other employees.

Of course, the class description has now been narrowed to include only patient care employees with specific titles working at specific locations. Beyond that, what is at issue at this first stage is Plaintiffs' claim that they and others were required to work during meal breaks without compensation. "That these employees may have had different duties and performed different types of work is not particularly relevant to whether they are similarly situated with respect to [that] claim. What is important is that these employees were allegedly subject to a common practice" on Kaleida's part to require unpaid work during meal periods, which may have resulted in FLSA overtime violations. Scholtisek, 229 F.R.D. at 390. The proper inquiry at the notice stage is simply "'whether plaintiffs are similarly situated *with respect to their allegations that the law has been violated*.'" Hallissey v. Am. Online, Inc., 99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387, at *6 (S.D.N.Y. Feb. 19, 2008) (quoting Chowdhury v. Duane Reade, Inc., 06 Civ. 2295, 2007 U.S. Dist. LEXIS 73853, at *15 (S.D.N.Y. Oct. 2, 2007) (emphasis in original)).

15

It is well-settled that such a determination does not require an individualized inquiry, and Kaleida does not contend otherwise. <u>Sexton</u>, 2009 U.S. Dist. LEXIS 50526, at *28-29 (finding the existence of individual claims and defenses does not preclude conditional certification of FLSA collective action) (collecting cases); <u>Ruggles</u>, 591 F. Supp. 2d at 161 (citing <u>Parks v. Dick's Sporting Goods, Inc.</u>, 2007 U.S. Dist. LEXIS 20949, at *12 (W.D.N.Y. Mar. 21, 2007) (magistrate judge correctly declined to apply fact-specific inquiry into job duties or other potentially distinguishing circumstances at conditional certification stage; such considerations are to be addressed at the second stage of the certification analysis)); <u>Francis v. A&E Stores, Inc.</u>, 2008 U.S. Dist. LEXIS 49971, at *7 (S.D.N.Y. May 9, 2008) (variations among duties can be explored during discovery and addressed in second-stage motion for de-certification). To the extent Kaleida urges authority holding to the contrary, this Court declines to depart from the well-settled approach in this Circuit.

For all of the reasons stated, the Court finds it appropriate to conditionally certify an FLSA collective action for all present and former hourly registered nurses, staff nurses, licensed practical nurses, nurses aides, and respiratory therapists employed at Kaleida hospitals and skilled nursing/long-term care facilities, who perform[ed] patient care duties and who have been subject to automatic meal break deductions.

## 2. Appropriateness of Notice to the Conditional Class

A court has the discretion to authorize notification to "similarly situated" potential plaintiffs and to direct an employer to disclose the names and addresses of those potential plaintiffs to facilitate the opt-in process. *See* <u>Patton v. Thomson Corp.</u>, 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005) (quoting <u>Hoffmann-La Roche, Inc.</u>, 493 U.S. at 169 and <u>Braunstein v. Eastern Photographic Labs., Inc.</u>, 600 F.2d 335, 336 (2d Cir. 1979)). This

Circuit encourages the sending of notice, as doing so "comports with the broad remedial purpose of the [FLSA], . . . as well as with the interest of the courts in avoiding multiplicity of suits." Braunstein, 600 F.2d at 336.

Kaleida nevertheless urges that the Court should not authorize notice here because Plaintiffs' counsel solicited potential plaintiffs prior to the commencement of this action and have posted a website[16] about this lawsuit.[17] According to Kaleida, it has been prejudiced "through the scattershot solicitation of its employees with imbalanced and inaccurate information and any further notice would confuse employees through the distribution of multiple and contradictory notices." (Docket No. 117 at 34.)

The Court notes that Kaleida has not identified the purported inaccuracies, or moved for any specific relief related to Plaintiffs' solicitations or the resulting consents. Even assuming Kaleida has been prejudiced in some unspecified way, in the United States Supreme Court's view, Court-monitored notice serves to ensure that employees receive accurate information from which they can make informed decisions. Hoffman-La Roche, Inc., 493 U.S. at 169-72. I agree, and conclude that facilitating notice here should serve to clarify rather than confuse.

Kaleida goes on to urge that Plaintiffs' early solicitations were entirely improper, citing Cintron v. Hershey Puerto Rico, Inc. for the proposition that no notice can be sent to potential class members unless it is first authorized by the trial court. 363 F. Supp. 2d 10,

---

[16] Although the content of Plaintiffs' website is not the subject of a pending motion, the Court directs Plaintiffs to make whatever changes, if any, may be necessary to conform the posted information to this Decision, within fifteen (15) days after its issuance.

[17] Kaleida's counsel also contacted and was conducting interviews of hourly employees prior to commencement of this action. (Docket No. 119 ¶ 5.)

17 (D.P.R. 2005).  This statement appears to be an aberration in the First Circuit, arising from a misreading of the "consummate holding[s]" of two prior district court cases.  Indeed, the Supreme Court has made clear that the timing of the trial court's involvement is entirely within its discretion.  *See* <u>Hoffmann-La Roche</u>, 493 U.S. at 172 (FLSA implicitly vests court with discretion to monitor preparation and distribution of notice; thus, "court is not limited to waiting passively for objections about the manner in which the consents were obtained").  Accordingly, the Court finds <u>Cintron</u> unpersuasive.

In sum, the Court rejects Kaleida's contention that, having conditionally certified a group of "similarly situated" employees, the Court should now decline to authorize notice to that group, which presumably includes individuals Plaintiffs have not identified, despite their efforts.

### 3.    Information Regarding Potential Plaintiffs

To facilitate notice, Plaintiffs have requested that Defendant provide—in electronic form (Excel spreadsheet) and hard copy—the name, last known address, phone number, Social Security number, location of employment, dates of employment, date of birth, and e-mail address for each potential opt-in plaintiff, with disclosure to be made within fifteen (15) days of the issuance of this Decision.

Like most pretrial discovery, Plaintiffs' request involves a matter entrusted to the court's sound discretion.  *See* <u>Wills v. Amerada Hess Corp.</u>, 379 F.3d 32, 41 (2d Cir. 2004) (recognizing the district court's "broad discretion to direct and manage the pre-trial discovery process").  Kaleida concedes that when a court determines notice is appropriate, the defendants have a well-established obligation to provide the names and addresses of potential opt-in plaintiffs.  <u>Hoffmann-La Roche</u>, 493 U.S. at 170.  But, it contends that it

should not be required to produce the additional information Plaintiffs request here because disclosure would impact the privacy interests of potential class members.

The Court agrees that, in the interest of privacy, Kaleida need not produce phone numbers, social security numbers, dates of birth, and e-mail addresses. *See* Ruggles, 491 F. Supp. 2d at 163 (denying plaintiffs' request for telephone numbers and social security numbers). However, in this Court's view, employee work locations and dates of employment do not implicate the same kinds of privacy concerns. Accordingly, the Court directs Kaleida to produce, within fifteen (15) days after issuance of this Decision,[18] the names, current or last known addresses, locations of employment, and dates of employment for all employees falling within the conditionally certified class. Fengler v. Crouse Health Found., Inc., 595 F. Supp. 2d 189, 198 (N.D.N.Y 2009) (directing defendants to provide names, addresses, dates of employment, and positions held).

**4.    Form of Notice**

Along with their motion, Plaintiffs present a proposed notice, consent form, information sheet, and envelope. (Docket No. 11-2.) Kaleida seeks modification of all except the envelope. (Docket No. 118-2.) In reply, Plaintiffs urge that because their proposed notice is based on samples obtained from the Federal Judicial Center's website, Kaleida's proposed changes should be denied in their entirety.

The Court first notes that Kaleida's proposed notice appears to intermix information pertinent to this case with that from another FLSA action pending before the Court and involving these same law firms, among others. Moreover, other than Plaintiffs' general

---

[18]   Kaleida has not objected to the requested 15-day time frame for production.

reference to the FJC, neither side provides a rationale for adopting the specific language it proposes over its opponent's phrasing. Finally, in light of this Decision and Order, one or both parties may consider additional modifications warranted. This Court declines to take on the task of analyzing the competing language and attempting to discern, in a vacuum, the extent of any errors in drafting, the basis for the various objections, and any possible additional objections.

Accordingly, the Court directs the parties to confer and attempt to agree on the form of the notice, consent form, and information sheet. If the parties are able to agree, they shall file a stipulation to that effect, with the proposed documents appended. The Court will either "so order" the stipulation or modify the documents. If the parties are unable to reach agreement, they shall identify the particular language in dispute and submit their respective proposals to the Court, along with memoranda, not to exceed five (5) pages, setting forth the rationale for their version of the disputed language. The stipulation, or respective proposals, shall be filed no later than thirty (30) days after the date of this Decision.

## 5. Time to Opt In and Publication

There are two other disputes germane to the notice that can be addressed now, the time to opt into the collective action and publication of the notice.

### a. *Time to Opt In*

Plaintiff's proposed notice does not contain any deadline for potential plaintiffs to opt in to the lawsuit. Kaleida argues this approach is patently unreasonable, noting that courts routinely set limits of sixty days for potential plaintiffs to opt in. Bowens v. Atl. Maint.

<u>Corp.</u>, 546 F. Supp. 2d 55, 84-85 (where proposed notice contained no deadline for opt-in period, court found sixty-day period sufficient); *see also*, <u>Iriarte v. Redwood Deli & Catering, Inc.</u>, CV-07-5062, 2008 U.S. Dist. LEXIS 50072, at *17 (E.D.N.Y. June 30, 2008) (approving notice setting deadline at 60 days after date notice mailed); <u>Francis</u>, 2008 U.S. Dist. LeXIS 49971, at *16 (same). Kaleida does not provide any authority for setting a deadline shorter than sixty days, but goes on to urge that potential plaintiffs should be given only forty-five days here, in light of Plaintiffs' earlier solicitation efforts. This Court disagrees that all potential plaintiffs should be divested of a reasonable period to consider their options because some have received prior notice of this lawsuit.

Plaintiffs contend that imposing any "artificial limitation" on the opt-in period makes little sense because employees who miss the deadline will simply file their own action. They suggest the Court should receive consents throughout this litigation. The Court finds this proposal untenable in terms of case management. Beyond that, Plaintiffs have stated no reasons why sixty days will not be sufficient.

Accordingly, I find that potential plaintiffs shall be provided sixty days to opt in to this action, counted from the date of the Court's Order approving or settling the form of notice. Plaintiffs, by then, will have had the employee names and contact information in hand for some time, and should be in a position to mail notices forthwith. At the expiration of the opt in period, the collective "class" will be closed and additional opt-in forms will not be accepted for filing.

> **b.** *Publication*

Plaintiffs request that, once the form of notice is settled, Kaleida be required to: (1) post notices and opt-in forms in a conspicuous place at its locations during the pendency

of the lawsuit, (2) email notices and opt-in forms to employees, and (3) publicize the notice five times in its employee newsletter or other communication. Kaleida objects to each request, and contends that because first class mail constitutes the "best notice practicable," it should be the sole form of notice.

"'Historically, first class mailing has been utilized because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members.'" Karvaly v. eBay, Inc., 245 F.R.D. 71, 91 (E.D.N.Y. 2007) (quoting Reab v. Electronic Arts, Inc., 214 F.R.D. 623, 630 (D. Colo. 2002)). In both Karvaly and Reab, the district courts were concerned that notification by electronic mail could create risks of distortion or misleading notification through modification of the notice itself or the addition of commentary. I share those concerns, and the cases cited by Plaintiffs do not persuade me otherwise. Cranney v. Carriage Services, Inc., 2:07-cv-1587, 2008 U.S. Dist. LEXIS 22630, at *16 (D. Nev. Feb. 29, 2008) (directing notification by email to all current and former employees working at more than 200 locations in 27 states, where defendant apparently raised no objection); Kane v. Gage Merch. Servs., Inc., 138 F. Supp. 2d 212, 216 (D. Mass. 2001) (directing that defendant provide plaintiffs with employee email addresses, a request already rejected here).

As for posting and newsletter publications, I find the requests premature. Kaleida has not yet produced employee contact information and there is no reason, at this juncture, to assume that production will not be complete and accurate. Moreover, the only group that will be reached by posting are current employees, who have an interest in providing their employer with an up-to-date mailing address. *Compare* Romero v. Producers Dairy

<u>Foods, Inc.</u>, 235 F.R.D. 474, 493 (E.D. Cal. 2006) (directing workplace posting after finding there was some risk that potential class members would be prevented from receiving notice due to defendant's failure to provide contact information).

For the reasons stated, I find that first class mail is the "best notice practicable" and should be sufficient to provide potential class members here the notice to which they are entitled. Accordingly, Plaintiffs requests are denied.

**B.     Plaintiffs' Motion for Equitable Tolling**

Plaintiffs' Motion for Expedited Notice to Affected Employees was filed on May 28, 2008. On June 11, 2009, they filed a Motion for an Equitable Toll of the FLSA Statute of Limitations for the period May 28, 2008 until the date of this Decision, due to "a number of litigation and motion practice-related delays." Plaintiffs point to the granting of an extension of time of less than two weeks,[19] and Defendants' filing of a Motion to Dismiss. (Docket No. 218 at 3.)

The Court did not stay the Motion for Expedited Notice due to the filing of the Motion to Dismiss, and set briefing schedules for both motions to end simultaneously, on August 22, 2008. (Docket No. 87.) A decision on the Motion to Dismiss was issued on November 25, 2008. At that time, the Motion for Expedited Notice had been fully briefed for about two-and-one-half months.[20] Since then, almost eleven additional months have passed, so

---

[19]  In their Reply Memorandum, Plaintiffs point to Kaleida's motion for an extension of time to respond to the Complaint (Docket Nos. 59 and 60), and the Court's extension of that deadline from June 19, 2008 to July 1, 2008.

[20]  Briefing on the Motion to Expedite Notice was extended at Defendants' request, after Plaintiffs submitted new evidence with their reply papers. Authorized briefing on the motion was complete on September 4, 2008, when Kaleida filed its sur-reply. (Docket No. 136.) Plaintiffs sought to extend the schedule further by filing a sur-sur-reply on October 10, 2008. (Docket No. 145.) That filing was later stricken due to Plaintiffs' failure to first seek the Court's permission.

that thirteen months have passed since the Motion for Expedited Notice was submitted. Plaintiffs seek to ensure that putative plaintiffs who are yet unaware of this suit have an opportunity to consider whether to opt in before their claims are eradicated by the running of the statute of limitations. In their supporting memorandum, Plaintiffs urge they have diligently pursued their claims and done nothing to intentionally delay litigation. (Docket No.

An FLSA collective action is deemed commenced on the date of filing only for named party plaintiffs who have simultaneously filed a consent. The action commences for each putative plaintiff on the date the individual opts into the suit by filing his or her own written consent. 29 U.S.C. § 256; Hoffmann, 982 F. Supp. at 260 ("only by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled"). There is a two-year statute of limitations for FLSA claims, except for those arising out of a willful violation, which are subject to a three-year limitations period. *Id.* § 255(a).

In this Circuit, "equitable tolling is only appropriate in [ ] rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (internal quotations and citations omitted) (alteration in original). Equitable tolling is generally appropriate where the potential plaintiff "actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where [he] has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d (1990). "[A] district court must consider whether the person[s] seeking application of the equitable tolling doctrine (1) ha[ve] acted with reasonable diligence during the time period [they]

24

seek[ ] to have tolled, and (2) ha[ve] proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli Edelglass, 333 F.3d at 81 (citation and internal quotation marks omitted) (alterations added).

There are few cases in this Circuit that have touched on the issue of equitable tolling of an FLSA collective action. Cases in which tolling was granted have involved either: a court-imposed stay pending the Court's resolution of a dispositive motion, Lee, 236 F.R.D. at 199-200, a stipulation among the parties to toll the statute, Roebuch v. Hudson Valley Farms, 239 F. Supp. 2d 234, 240 n.10 (N.D.N.Y. 2002); Hoffmann, 982 F. Supp. at 260 n.14, tolling only for plaintiffs who already had filed consents, Armstrong v. Homebridge Mortg. Bankers Corp., 07-CV-1024, 2009 U.S. Dist. LEXIS 91146, at *4-7 (E.D.N.Y. Sept. 30, 2009); or the employer's failure to post required notices advising employees of their FLSA rights, Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 369 (S.D.N.Y. 2007); Baba v. Grand Central P'shp., 2000 U.S. Dist. LEXIS 17876 (S.D.N.Y. Dec. 8, 2000). None of those circumstances appear to exist here.

Cases that have denied tolling have done so because the plaintiff failed to carry his or her burden of demonstrating diligence and/or the existence of extraordinary circumstances. *See, e.g.*, Amendola, 558 F. Supp. 2d at 479-480. Kaleida opposes the tolling motion on this basis, arguing that reasonably prudent persons already have learned of the litigation from other sources, and there have been no inordinate delays in litigation. It further contends that Defendants would be unduly prejudiced by a toll.

This Court finds that Plaintiffs have not met their burden of demonstrating diligence here. Their argument is premised on the assumption that potential plaintiffs have been,

and will remain, unaware of their rights unless and until they receive notice of this lawsuit.[21] But the underlying right here is to overtime pay for hours worked over 40 per week. In contrast to those cases where the employer allegedly failed to post requisite notice of employees' legal rights, Plaintiffs here have offered no allegations or proof from which this Court can conclude that a reasonably prudent potential plaintiff would not have known of his or her right to receive overtime pay after 40 hours. Pursuit of that right is not dependent on the commencement or certification of a collective action, and a reasonably diligent person could have acted by pursuing an individual or collective action for relief.

Initially, Plaintiffs did not move for relief on the basis of employer misconduct. In their reply, however, they point to paragraphs 82-87 of the Complaint, and claim Kaleida concealed information from employees, possibly lulling them into inaction. They allege, *inter alia*, that the paystubs and payroll information Kaleida provided to its employees "deliberately concealed from employees that they did not receive compensation for all the work they performed and mislead [sic] them into believing they were being properly paid for time worked." While Plaintiffs implicitly concede they possess the evidence to support their conclusory allegation, they have not presented any paystub or payroll information, or offered any explanation as to how they were "misled." Their failure to support conclusory allegations, where it is possible to do so, is fatal to their motion.[22] Plaintiffs carry the

---

[21] Plaintiffs' conclusory assertion, in reply, that "there is no evidence anywhere in the record that even suggests, much less establishes, that all of defendants' employees know about their legal rights," is not sufficient to meet the movant's burden of showing circumstances warranting tolling. (Docket No. 218 at 4.)

[22] Plaintiffs also allege that Kaleida told employees who asked about the Break Deduction Policy that they could not be paid for their break time. The fact of the Break Deduction Policy, in and of itself, is not a violation of the FLSA.

burden here of demonstrating that tolling is warranted.

As for Plaintiffs' concern over litigation delays, I again note that no stay was imposed here. Unfortunately, the time for consideration of the conditional certification and related motions is reflective of an increasing caseload in this District and does not constitute an extraordinary circumstance for tolling purposes. Equitable tolling is "a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Wallace v. Kato, 549 U.S. 384, 396, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007).

For the reasons stated, I find Plaintiffs have not met their burden of demonstrating the existence of circumstances warranting equitable tolling and their motion is denied.

## C.    Plaintiffs' Motion for an Expedited Hearing

As is evident from the timeframes discussed above, the Motion to Expedite is moot, and has been for some time. Accordingly, this motion is denied.

## D.    Plaintiffs Motion for Status Conference

Plaintiff seeks a status conference for two reasons, to discuss the status of the Motion for Expedited Notice, and to discuss the possibility of scheduling a Rule 16 conference. The first reason is now moot, the Motion for Expedited Notice and related motions having been decided. The second reason is premature, as issue has not yet been joined. Therefore, the Motion for Status Conference is denied.

## IV.  CONCLUSION

For the reasons given above, Plaintiffs' Motion for Expedited Notice to Affected Employees is granted, as to the conditionally certified class defined herein. Plaintiffs' Motion for an Expedited Hearing on the Motion for Expedited Notice, Motion for an

27

Equitable Toll of the FLSA's Statute of Limitations, and Motion for a Status Conference are each denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiffs' Motion for Expedited Notice to Affected Employees (Docket No. 9) is GRANTED, consistent with the conditionally certified class description;

FURTHER, that Plaintiffs' Motion for an Expedited Hearing on the Motion for Expedited Notice (Docket No. 20) is DENIED;

FURTHER, that  Plaintiffs' Motion for an Equitable Toll of the FLSA's Statute of Limitations (Docket No. 191) is DENIED;

FURTHER, that Plaintiffs' Motion for a Status Conference (Docket No. 220) is DENIED;

FURTHER, that within fifteen (15) days of the date of this Decision and Order, Defendants shall provide to Plaintiffs the names, current or last known addresses, locations of employment, and dates of employment for all potential members of the conditionally certified class;

FURTHER, that within fifteen (15) days of the date of this Decision and Order, Plaintiffs' counsel shall make whatever modifications to its www.hospitalovertime.com website may be necessary in light of this Decision;

FURTHER, that within thirty (30) days of the date of this Decision and Order, the parties shall file a stipulation of agreed-upon notice, or proposed notices with supporting

memoranda, as directed above.

SO ORDERED.

Dated:     October 13, 2009
           Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                     United States District Judge