UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHERINE GORDON, JAMES SCHAFFER, TERESA THOMPSON, PAMELA MIKA, JENNIFER PFENTNER AND DIANA GALDON, *on behalf of themselves and all other employees similarly situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>KALEIDA HEALTH, JAMES R. KASKIE, DAVID R. WHIPPLE, MFHS MANAGED CARE, INC., KALEIDA PROPERTIES, INC., FAMILY PHARMACEUTICALS, WESTLINK CORPORATION, COMMUNITY MEDICAL PC, GENERAL PHYSICIANS PC, MILLARD FILLMORE AMBULATORY SURGERY CENTER, VISITING NURSING ASSOCIATION OF WESTERN NEW YORK, INC., VNA HOME CARE SERVICES, INC., VNA OF WNY, INC., GENERAL HOMECARE, INC., WATERFRONT HEALTH CARE CENTER, INC., KALEIDA HEALTH FOUNDATION, THE WOMEN AND CHILDREN'S HOSPITAL OF BUFFALO FOUNDATION, KALEIDA IPA, LLC, KALEIDA MCO, LLC, GRACE MANOR HEALTH CARE FACILITY, INC. AND SCHENK PHYSICAL THERAPY, PC,<br><br>*Defendants.* | FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>Civil Action No. 08-CV-378S |

## NATURE OF CLAIM

1.      This is a proceeding for declaratory relief and monetary damages to: redress the deprivation of rights secured to plaintiffs, Catherine Gordon, James Schaffer, Teresa Thompson, Pamela Mika, Jennifer Pfentner and Diana Galdon individually, as well as all other employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA"); under the New York Labor Law, including but not limited

to Section 195; and estoppel.

## JURISDICTION AND VENUE

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; and under the Declaratory Judgment Statute, 28 U.S.C. § 2201.

3.     This Court's supplemental jurisdiction of claims arising under New York State Labor Law is also invoked.

4.     Venue is appropriate in the Western District of New York since the allegations arose in this district and the plaintiffs reside in this district.

## CLASS ACTION ALLEGATIONS

5.     The claims arising under New York State Labor Law are properly maintainable as a class action under Federal Rule of Civil Procedure 23.

6.     The class action is maintainable under subsections (1), (2) and (3) of Rule 23(b).

7.     The class size is believed to be over 50 employees.

8.     The Named Plaintiffs, Catherine Gordon, James Schaffer, Teresa Thompson, Pamela Mika, Jennifer Pfentner and Diana Galdon will adequately represent the interests of the class members because they are similarly situated to the class members and their claims are typical of, and concurrent to, the claims of the other class members.

9.     There are no known conflicts of interest between the Named Plaintiffs and the

other class members.

10. The class counsel, Thomas & Solomon LLP, is qualified and able to litigate the class members' claims.

11. The class counsel concentrates its practice in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under federal and state wage and hour laws.

12. Common questions of law and fact predominate in this action because the claims of all class members are based on whether defendants' practice of not paying nonexempt employees for all hours worked and/or statutory overtime for hours worked over 40 per week violates New York State Labor Law.

13. The class action is maintainable under subsections (2) and (3) of Rule 23(b) because the plaintiffs seek injunctive relief, common questions of law and fact predominate among the class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## PARTIES

A.   **Defendants**

14. Collectively, defendants Kaleida Health, MFHS Managed Care, Inc., Kaleida Properties, Inc., Family Pharmaceuticals, Westlink Corporation, Community Medical PC, General Physicians PC, Millard Fillmore Ambulatory Surgery Center, Visiting Nursing Association of Western New York, Inc., VNA Home Care Services, Inc., VNA of WNY, Inc., General Homecare, Inc. Waterfront Health Care Center, Inc., Kaleida Health Foundation, The Women and Children's Hospital of Buffalo Foundation, Kaleida IPA, LLC, Kaleida MCO, LLC, Grace Manor Health Care Facility, Inc., Schenk Physical Therapy, PC

(collectively, "Kaleida") are related organizations through, for example, common membership, governing bodies, trustees and officers..

15. Kaleida is an enterprise engaged in the operation of a hospital and/or the care of the sick and is a healthcare consortium.

16. Defendants operate over 100 health care facilities and centers and employ approximately 9,500 individuals.

17. Defendants constitute an integrated, comprehensive, consolidated health care delivery system, offering a full continuum of care. Defendants are one of the most integrated health care systems in the northeast United States.

18. For example, defendants collectively allocate funds for capital investments throughout the system and maintain a common financial platform.

19. Further, upon information and belief, defendants' labor relations and human resources are centrally organized and controlled, including defendants' employment of a senior vice president for human resources as part of the senior executive team as well as the maintenance of certain employee benefit plans and online training and continuing education instruction.

20. Upon information and belief, defendants share common management, including oversight and management by a senior executive team and board of directors.

21. Upon information and belief, defendants have common ownership.

22. As such, defendants are the employer (single, joint or otherwise) of the plaintiffs and/or alter egos of each other.

23. James R. Kaskie is the President and Chief Executive Officer of Kaleida.

24. Upon information and belief, including defendants' admissions, Mr. Kaskie's

responsibilities include actively managing Kaleida.

25. Upon information and belief, in concert with others, Mr. Kaskie has the authority to, and does, make decisions that concern the policies defendants adopt and the implementation of those policies.

26. Upon information and belief, in concert with others, Mr. Kaskie has the authority to, and does, make decisions that concern defendants' operations, including functions related to employment, human resources, training, payroll, and benefits.

27. Upon information and belief, due in part to his role as President and Chief Executive Officer, Mr. Kaskie is actively involved in the creation of the illegal policy complained of in this case.

28. Upon information and belief, due in part to his role as President and Chief Executive Officer, Mr. Kaskie actively advises defendants' agents on the enforcement of the illegal policies complained of in this case.

29. Upon information and belief, due in part to his role as President and Chief Executive Officer, Mr. Kaskie actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA.

30. Upon information and belief, in concert with others, Mr. Kaskie has the authority to, and does, make decisions that concern the reviewing and counseling of defendants regarding employment decisions, including hiring and firing of Plaintiffs.

31. Upon information and belief, in concert with others, Mr. Kaskie has the authority to, and does, make decisions that concern employees' schedules, hours and standard benefit levels.

32. Upon information and belief, in concert with others, Mr. Kaskie has the

authority to, and does, make decisions that concern standard pay scales.

33. Upon information and belief, in concert with others, Mr. Kaskie has the authority to, and does, make decisions that concern defendants' human resources policies, the resolution issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

34. Upon information and belief, in concert with others, Mr. Kaskie has the authority to, and does, make decisions that concern defendants' employment and human resources records, including the systems for keeping and maintaining those records.

35. Upon information and belief, in concert with others, Mr. Kaskie has the authority to, and does, make decisions that concern training and education functions across Kaleida.

36. Upon information and belief, in concert with others, Mr. Kaskie has the authority to, and does, make decisions that concern the type and scope of training employees must attend as well as any compensation they receive for attending training.

37. Upon information and belief, in concert with others, Mr. Kaskie has the authority to, and does, make decisions that concern payroll functions across Kaleida.

38. Upon information and belief, in concert with others, Mr. Kaskie has the authority to, and does, make decisions that concern the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

39. Upon information and belief, in concert with others, Mr. Kaskie has the

authority to, and does, make decisions that concern benefit plans across Kaleida.

40.     Upon information and belief, in concert with others, Mr. Kaskie has the authority to, and does, make decisions that concern the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

41.     Because Mr. Kaskie has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of Plaintiffs, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Mr. Kaskie has the power to hire and fire employees.

42.     Because Mr. Kaskie has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Mr. Kaskie supervises and controls employees' work schedules and/or conditions of employment.

43.     Because Mr. Kaskie has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Mr. Kaskie determines the rate and method of employees' payment.

44.     Because Mr. Kaskie has authority with respect to defendants' centralized

records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Mr. Kaskie maintains employees' employment records.

45. Because Mr. Kaskie provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, he is affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in regards to the employment of Plaintiffs.

46. Because Mr. Kaskie is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, he actively participates in the violations complained of in this action.

47. Based upon the foregoing, Mr. Kaskie is liable to Plaintiffs because of his active role in operating the business, his status as an employer, or according to federal and state law.

48. David R. Whipple has been the Senior Vice President of Human Resources of Kaleida.

49. Upon information and belief, Mr. Whipple has been responsible for, provides direction and control over, and has been authorized to direct all aspects of human resources functions across Kaleida.

50. Upon information and belief, due in part to his role of overseeing human resources, training and education, and payroll and commission services, in concert with

others, Mr. Whipple has been actively involved in the creation of the illegal policy complained of in this case.

51.     Upon information and belief, due in part to his role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Mr. Whipple actively advised defendants' agents on the enforcement of the illegal policy complained of in this case.

52.     Upon information and belief, due in part to his role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Mr. Whipple actively ensured defendants' compliance or non-compliance with federal law, including the requirements of the FLSA.

53.     Upon information and belief, Mr. Whipple, in concert with others, has been actively involved in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

54.     Upon information and belief, Mr. Whipple, in concert with others, has been actively involved in decisions that set employees' schedules, hours and standard benefit levels.

55.     Upon information and belief, Mr. Whipple, in concert with others, has been actively involved in decisions that set standard pay scales.

56.     Upon information and belief, Mr. Whipple, in concert with others, has been actively involved in the determination and drafting of human resources policies, the resolution of issues and disputes regarding policies and their application, the counseling locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

57. Upon information and belief, Mr. Whipple, in concert with others, has been actively involved in defendants' employment and human resources records, including the systems for keeping and maintaining those records.

58. Upon information and belief, Mr. Whipple, in concert with others, has been actively involved in training and education functions across Kaleida.

59. Upon information and belief, Mr. Whipple, in concert with others, has been actively involved in determining the type and scope of training employees must attend as well as any compensation they receive for attending training.

60. Upon information and belief, Mr. Whipple, in concert with others, has been actively involved in payroll functions across Kaleida.

61. Upon information and belief, Mr. Whipple, in concert with others, has been actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

62. Upon information and belief, Mr. Whipple, in concert with others, has been actively involved in benefit plans across Kaleida.

63. Upon information and belief, Mr. Whipple, in concert with others, has been actively involved in determining the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

64. Because Mr. Whipple had authority to hire or fire employees, provided and directed support regarding human resources issues, including the hiring and firing of employees, and controlled the drafting and enforcement of the policies which govern the

hiring and firing of employees, Mr. Whipple had the power to hire and fire employees.

65. Because Mr. Whipple had authority to establish work schedules and/or conditions of employment, provided and directed support regarding human resources issues, including work schedules and/or conditions of employment, controlled the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, established the type and scope of training employees receive, and administered employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Mr. Whipple supervised and controlled employees' work schedules and/or conditions of employment.

66. Because Mr. Whipple had authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Mr. Whipple determined the rate and method of employees' payment.

67. Because Mr. Whipple had authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Mr. Whipple maintained employees' employment records.

68. Because Mr. Whipple provided day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controlled the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administered employees' benefit programs, he has been affirmatively, directly, and actively involved in operations of defendants' business functions, particularly in regards to the employment of Plaintiffs.

69. Because Mr. Whipple has been actively involved in the creation of the illegal policies complained of in this case, actively advised defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensured defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, Mr. Whipple actively participated in the violations complained of in this action.

70. Based upon the foregoing, Mr. Whipple is liable to Plaintiffs because of his active role in operating the business, his role in the violations complained of in this action, his status as an employer, or otherwise according to federal and state law.

**B.    Plaintiffs**

*Named Plaintiffs*

71. At all relevant times, Catherine Gordon, James Schaffer, Teresa Thompson, Pamela Mika, Jennifer Pfentner and Diana Galdon were employees under the FLSA and the New York Labor Law, employed within this District and reside within this District.

*Class Members*

72. The Class Members are those employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

73. Specifically, the Class Members are those individuals who:

   a. were suffered or permitted to work by Kaleida; were subject to Kaleida's Break Deduction Policy that, by default, deducted non-compensable "break" time from the compensable time used to calculate the individuals' pay; performed work and were entitled to compensation during the unpaid "break period;" and not receive their full compensation because of the Break Deduction Policy; and/or

   b. Kaleida suffered or permitted to perform work before and/or after the end of their scheduled shift but were not paid for performing such work

              as a result of defendants' policies, practices and/or time recording system (the "Unpaid Preliminary and Postliminary Work Policy"); and/or

    c.    Kaleida suffered or permitted to attend compensable training but who did not receive compensation for such training (the "Unpaid Training Policy").

## FACTUAL BACKGROUND

74. Kaleida is the largest health care provider in Western New York.

75. Throughout its facilities and centers, Kaleida maintains the Break Deduction Policy.

76. In particular, the Break Deduction Policy is an automatic payroll policy, practice and/or system which automatically makes deductions from Class Members pay.

77. Hourly employees working at Kaleida's facilities and centers, including its nurses, licensed practical nurses, aides and other health care workers, perform compensable work for the time that is taken from the employees' pay under the Break Deduction Policy.

78. Kaleida understands and requires that its employees do not sacrifice patient care in order to take their meal breaks and that they therefore perform work during their meal breaks. In fact, Kaleida's expectations of its employees in that regard would be consistent with its employees' dedication to providing health care service, even if that means performing work during their meal breaks.

79. Further, Kaleida suffers or permits employees to perform work before their shifts begin or after their shifts end without compensation.

80. In addition, employees attend compensable training sessions but Kaleida fails to pay employees for their attendance at such training.

81. Even though Kaleida knows its employees are performing such work, Kaleida

fails to compensate its employees for such work.

82. Defendants' practice is to be deliberately indifferent to these violations of the statutory wage and overtime requirements.

83. Through the paystubs and payroll information it provided to employees, Kaleida deliberately concealed from its employees that they did not receive compensation for all the work they performed and mislead them into believing they were being paid properly.

84. Further, by maintaining and propagating the illegal policies, defendants deliberately misrepresented to plaintiffs that they were being properly paid for time worked, even though plaintiffs were not receiving pay for all time worked.

85. When questioned by employees about the Break Deduction Policy, the defendants affirmatively stated that the employees could not be paid for such time, even though defendants knew such time was compensable.

86. The defendants engaged in such conduct and made such statements to conceal from the plaintiffs their rights and to frustrate the vindication of the employees' state and federal rights.

87. As a result, employees were unaware of their claims.

88. All class members are subject to the Break Deduction Policy and are not fully compensated for work they perform during breaks.

89. Class members are also subject to the Unpaid Preliminary and Postliminary Work Policy and Unpaid Training Policy and are not fully compensated for all work performed pursuant to such policies.

90. In addition, if plaintiffs' hours had been properly calculated, the time spent working through the breaks, performing work before and/or after their shifts and/or training

often included work that should have been calculated at premium overtime rates.

91. This failure to pay overtime as required by the FLSA and the New York Labor Law is willful.

92. Among the relief sought, plaintiffs seek injunctive relief to prevent Kaleida from continuing the illegal policy and practice perpetuated pursuant to the Break Deduction Policy, the Work Beyond Schedule Policy and the Training Policy.

### FIRST CAUSE OF ACTION
*FLSA*

93. Plaintiffs reallege the above paragraphs as if fully restated herein.

94. Defendant willfully violated their obligations under the FLSA and are liable to plaintiffs.

### SECOND CAUSE OF ACTION
*New York Labor Law*

95. Plaintiffs reallege the above paragraphs as if fully restated herein.

96. Defendant willfully violated their obligations under the New York Labor Law and are liable to plaintiffs.

### THIRD CAUSE OF ACTION
*Estoppel*

97. Plaintiffs reallege the above paragraphs as if fully restated herein.

98. Defendants are estopped from asserting statute of limitations defenses against plaintiffs.

**WHEREFORE**, plaintiffs demand judgment against defendants in their favor and that they be given the following relief:

(a) an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b) an award of the value of plaintiffs' unpaid wages, including fringe benefits;

(c) liquidated damages under the FLSA equal to the sum of the amount of wages and overtime which were not properly paid to plaintiffs;

(d) an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating plaintiffs' rights;

(e) an award of pre- and post-judgment interest; and

(f) such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact.

Dated: December 15, 2009

**THOMAS & SOLOMON LLP**

By: s/ J. Nelson Thomas
J. Nelson Thomas, Esq.
Michael J. Lingle, Esq.
*Attorneys for Plaintiffs*
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
nthomas@theemploymentattorneys.com
mlingle@theemploymenattorneys.com