UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CATHERINE GORDON, *et al.*,

                             Plaintiffs,

          v.

KALEIDA HEALTH, *et al.*,

                           Defendants.
_____

**DECISION
and
ORDER**

**08-CV-00378S(F)**

APPEARANCES:       THOMAS & SOLOMON LLP
                         Attorneys for Plaintiffs
                         MICHAEL J. LINGLE, and
                         SARAH E. CRESSMAN, of Counsel
                         693 East Avenue
                         Rochester, New York 14607

                         COBURN & GREENBAUM, PLLC
                         Attorneys for Defendants
                         JONATHAN WOLFE GREENBAUM, of Counsel
                         1710 Rhode Island Avenue, NW
                         2nd Floor
                         Washington, D.C.  20036

                         NIXON PEABODY, LLP
                         Attorneys for Defendants
                         SUSAN C. RONEY, of Counsel
                         40 Fountain Plaza
                         Suite 500
                         Buffalo, New York 14202

## JURISDICTION

    This case was referred to the undersigned by Honorable William M. Skretny on

January 6, 2010 for all non-dispositive pretrial matters, pursuant to 28 U.S.C. §

636(b)(1)(A).  The matter is presently before the court on Defendants' Motion to

Compel and to Dismiss (Doc. No. 337), filed January 9, 2012, Plaintiffs' Cross-motion

for a Protective Order (Doc. No. 340), filed February 2, 2012, and Plaintiffs' Motion to

File an Amended Complaint (Doc. No. 344), filed February 16, 2012.

## BACKGROUND and FACTS[1]

Defendants to this action, commenced on May 22, 2008, are various health care

organizations, operating under the direction of Defendant Kaleida Health ("Kaleida

Health"), a not-for-profit New York Corporation, through which comprehensive medical

care and related medical services are provided in Western New York by approximately

75 hospitals, nursing homes, clinics, laboratories, and out-patient offices.  Plaintiffs are

Defendants' non-exempt hourly employees ("Plaintiffs" or "hourly employees")), who

allege Defendants violated the Fair Labor Standards Act ("FLSA"), and New York Labor

Law ("NYLL") by failing to pay such hourly employees regular hourly or overtime rates

for the time Defendants permitted or required hourly employees to work, including (1)

during assigned one-hour meal breaks, (2) time immediately prior to and after

scheduled work shifts, and (3) while attending training sessions conducted by

Defendants.  Because the alleged uncompensated work results from policies and

practices adopted and applied by Defendants to all facilities where Defendants' hourly

employees work, Plaintiffs assert both a representative collective action on behalf of all

similarly situated employees subject to the FLSA's protection, and a class action

pursuant to Fed.R.Civ.P. 23 ("Rule 23"), to enforce the rights of Defendants' hourly

employees under the NYLL wage and hours provisions for unpaid work at the

employees' regular pay rate or, as applicable, overtime rates.

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

It is estimated by Plaintiffs that as many as 40,000 present and former hourly employees may be eligible for inclusion in the class action.  In addition to six named Plaintiffs ("named Plaintiffs"), a sample group of 100 other hourly employees have been identified as opt-in Plaintiffs ("opt-in Plaintiffs"), in collective action which has been conditionally certified.  The class action claims have not been certified.

The original complaint contained thirteen claims for relief, including (1) violation of FLSA; (2) NYLL violations; (3) breach of contract; (4) breach of implied covenant of good faith and fair dealing; (5) conversion; (6) unjust enrichment/restitution; (7) quantum meruit; (8) fraud and deceit; (9) negligent misrepresentation; (10) failure to keep accurate records pursuant to the Employee Retirement Income Security Act ("ERISA"); (11) breach of fiduciary duty in violation of ERISA; (12) violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"); and (13) estoppel.  On July 1, 2008, Defendants moved to dismiss the Complaint in its entirety for failing to state a claim (Doc. No. 90) ("motion to dismiss").  On August 1, 2008, while Defendants' motion to dismiss remained pending, Plaintiffs, pursuant to Fed.R.Civ.P. 41(a)(1)(A), voluntarily and without prejudice dismissed their third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth claims for relief (Doc. No. 112), such that only the FLSA, NYLL, and estoppel claims remain pending before the court in this action.

On August 6, 2008, Plaintiffs commenced two separate actions in New York Supreme Court, Erie County, Index Nos. 2008-9072 ("state action 2008-9072") and 2008-9073 ("state action 2008-9073") ("state court actions"), asserting the same ten claims voluntarily dismissed from the instant action, against the same defendants in the state court actions, as well as an estoppel claim.  In particular, state action 2008-9072

3

includes claims under New York common law for conversion, fraud and deceit,

negligent misrepresentation, and estoppel, whereas state action 2008-9073 alleges

violations of ERISA for failure to keep accurate records and breach of fiduciary duty,

and RICO, as well as New York common law claims for estoppel, breach of contract,

breach of implied covenant of good faith and fair dealing, unjust enrichment/restitution,

and *quantum meruit*.  On August 22, 2008, Defendants filed an amended motion to

dismiss (Doc. No. 128) ("amended motion to dismiss"), seeking to dismiss the

remaining three claims for failure to state a claim.

   In a Decision and Order filed November 25, 2008 (Doc. No. 149) ("November 25,

2008 D&O"), Chief District Judge William M. Skretny denied the amended motion to

dismiss except as to the NYLL claims pertaining to uncompensated time when Plaintiffs

worked during or through scheduled meal breaks.  On December 3, 2008, Plaintiffs

served Defendants with the summonses and complaints for the state court actions,

which Defendants removed to this court on December 23, 2008 on the basis of diversity

jurisdiction, and state action 2008-9072 was assigned Docket No. 08-CV-951S, and

state action 2008-9073 was assigned Docket No. 08-CV-950S ("removed state court

actions").  On December 31, 2008, Defendants moved in the instant action, as well as

in the removed state court actions to consolidate the removed state court actions with

the instant action, and to dismiss all claims contained in the removed state court

actions.  On June 25, 2010, Defendants' motions to consolidate actions were denied

because the motions to dismiss pending in the instant action, and to remand pending in

the removed state court actions could moot the motions to consolidate. (Doc. No. 301).

   On September 8, 2010, Defendants served its Amended First Set of

4

Interrogatories and Amended First Request for Production of Documents ("First Discovery Demands") on the named Plaintiffs and the opt-in Plaintiffs.  On June 3, 2011, Defendants were served with responses to the First Discovery Demands from all named Plaintiffs, but only 42 opt-in Plaintiffs ("First Discovery Demands Responses"). On September 11, 2011, the parties agreed to randomly select 56 employees to replace the non-responding 58 opt-in Plaintiffs ("replacement opt-in Plaintiffs"), on whom Interrogatories and Requests for Production of Documents were then served ("Replacement Discovery Demands").

Meanwhile, on August 31, 2011 counsel for Defendants and Plaintiffs commenced exchanging a series of letters in which Defendants' counsel asserted that some of the First Discovery Demands Responses were inadequate and Plainitffs' counsel made repeated assurances that complete responses would be forthcoming.  To date, no supplemental responses were ever received, nor have Defendants received any responses to the Replacement Discovery Demands.  Defendants' present motion seeks to compel responses and supplemental responses to interrogatories, and to dismiss the FLSA claims as to those opt-in plaintiffs who have failed to respond to discovery.

On January 9, 2012, Defendants filed a Motion to Compel and Dismiss (Doc. No. 337) ("Motion to Compel"), Defendants' instant motion, seeking an order compelling discovery responses and supplemental responses from Plaintiffs, and dismissing with prejudice the FLSA claims of those opt-in Plaintiffs who fail to comply with discovery. Defendants' Motion is supported by the attached Declaration of Susan C. Roney, Esq., in Support of Motion to Compel and to Dismiss (Doc. No. 337-1) ("Roney Declaration"),

and exhibits A through F (Docs. Nos. 337-2 through 337-7) ("Defendants' Exh(s). __").

In a Decision and Order filed January 17, 2012 (08-CV-951S, Doc. No. 32 ("January 17, 2012 D&O"), Chief District Judge Skretny denied the motion to remand the state court action on the basis that the New York common law claims relating to unpaid overtime wages were preempted by the FLSA, dismissing that claim and the fraud claim with prejudice, but dismissing without prejudice the negligent misrepresentation and conversion claims pertaining to unpaid straight-time wages, and also dismissing the estoppel claim, yet permitting Plaintiffs to raise estoppel as an equitable bar in any litigation that may go forward.  January 17, 2012 D&O at 23.  Judge Skretny further directed that should Plaintiffs seek to replead the New York common law conversion and/or negligent misrepresentation claims, they must do so in the instant action "from which they previously voluntarily dismissed the very same claims." *Id.* at 23-24.

In opposition to Defendants' Motion to Compel, Plaintiffs filed on February 2, 2012, their Cross-Motion for a Protective Order (Doc. No. 340) ("Motion for Protective Order"), attached to which are a Memorandum of Law in Opposition to Defendants' Motion to Compel and to Dismiss and in Support of Plaintiffs' Cross-Motion for Protective Order (Doc. No. 340-1) ("Plaintiff's Memorandum - Motion for Protective Order"), and the Affirmation of Sarah E. Cressman, Esq. (Doc. No. 340-2) ("Cressman Affirmation - Motion for Protective Order").  On February 13, 2012, Defendants filed the Declaration of Susan C. Roney, Esq., in Further Support of Motion to Compel and to Dismiss and in Opposition to Cross-Motion for Protective Order (Doc. No. 343) ("Roney Reply Declaration").

On February 16, 2012, Plaintiffs filed a motion seeking leave to file an amended complaint (Doc. No. 344) ("Motion to Amend"), to replead the same New York common law claims for conversion and negligent misrepresentation initially brought in this action, then voluntarily dismissed, repleaded in state court action 2008-9072 that was subsequently removed to this court, assigned Docket No. 2008-951S, where they were dismissed without prejudice on January 17, 2012.  Attached to the Motion to Amend is the Memorandum of Law in Support of Motion to Amend Complaint (Doc. No. 344-1) ("Plaintiffs' Memorandum - Motion to Amend), the Affirmation of Sarah E. Cressman (Doc. No. 344-2) ("Cressman Affirmation - Motion to Amend"), and a copy of the Proposed Second Amended Class Action Complain (Doc. No. 344-3) ("Proposed Second Amended Complaint").  On February 17, 2012, Plaintiffs filed their Reply Memorandum of Law in Further Support of Plaintiffs' Cross-Motion for Protective Order (Doc. No. 345) ("Plaintiff's Reply - Motion for Protective Order").

On March 5, 2012, Defendants filed the Declaration of Susan C. Roney, Esq., in Opposition to Motion to Amend Complaint (Doc. No. 349) ("Roney Declaration - Motion to Amend"), and the Memorandum of Law in Opposition to Motion to Amend (Doc. No. 350) ("Defendants' Response - Motion to Amend").  On March 19, 2012, Plaintiffs filed a Reply Memorandum of Law in Support of Motion to Amend Complaint (Doc. No. 354) ("Plaintiffs' Reply - Motion to Amend").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion to Compel is GRANTED in part and DENIED in part; Plaintiffs' Cross-Motion for a Protective Order is GRANTED in part and DENIED in part; and Plaintiffs' Motion to Amend is DENIED.

## DISCUSSION

**1.     Motions to Compel and for Protective Order**

Defendants move (1) to compel discovery responses to Defendants' discovery demands served on the replacement opt-in Plaintiffs on September 12, 2011, (2) to compel supplemental responses from the named Plaintiffs and those opt-in Plaintiffs who served initial responses to the discovery demands, and (3) to dismiss with prejudice the FLSA claims as to those opt-in Plaintiffs who have failed to serve any responses to Defendants' discovery demands.  Roney Declaration ¶¶ 5-12.  In opposition, Plaintiffs cross moved for a protective order, asserting Defendants' Motion to Compel is premature and would violate due process insofar as Defendants seek to dismiss the FLSA claims without first providing notice of the potential for dismissal, and that the dismissal of such Plaintiffs would reduce the number of opt-in Plaintiffs. Instead, Plaintiffs seeks an order (1) granting Plaintiff's 30 days to obtain discovery responses from the replacement opt-in Plaintiffs, and (2) resetting the sample size at the number of opt-in Plaintiffs and opt-in replacement Plaintiffs whose responses are produced within the requested additional 30 days for discovery responses.  Plaintiff's Memorandum - Motion for Protective Order at 6-12.  In further support of the Motion to Compel, Defendants assert Plaintiffs have attempted to shift blame for their non-compliance to Defendants, that even Plaintiffs' counsel has been unable to obtain from opt-in Plaintiffs responses to Defendants' discovery demands, yet none of the opt-in Plaintiffs have made any showing as to why they have yet to respond to the discovery demands.  Roney Reply Declaration ¶¶ 2-5.  Defendants also, for the first time, suggest as an alternative to dismissing with prejudice the FLSA claims for those opt-in Plaintiffs

who have not provided any responses, the court issue a conditional order providing

such Plaintiffs with 30 days to serve complete responses to the discovery demands to

avoid dismissal.  Roney Reply Declaration ¶ 14.  In further support of their Motion for a

Protective Order, Plaintiffs assert that the requested protective order will not be

prejudicial to Defendants, and that Defendants have failed to establish the requisite

conditions supporting imposition of sanctions.  Plaintiffs' Reply - Motion for Protective

Order at 2-4.  The court first considers those discovery demands for which Defendants

maintain they never received satisfactory answers and still seek supplemental

responses.

At the heart of this dispute are seven interrogatories and seven document

requests for which Defendants maintain the responses received from the named and

opt-in Plaintiffs were deficient, and that no responses were received from the

replacement opt-in Plaintiffs.  These interrogatories include Interrogatories 4, 5, 6, 8, 9,

10 and 13, and Document Requests 3, 4, 8, 9, 10, 11, and 12.[2]  The specific dispute as

to each of these interrogatories and document requests is summarized below.

**Interrogatories**

**A.      Interrogatories 4 and 10**

Interrogatories 4 and 10 ask each Plaintiff if a supervisor ever prohibited or

discouraged the Plaintiff or other employee from claiming pay for time worked through

or during meals periods, meal breaks, before or after scheduled shifts, or compensable

---

[2] Copies of the Interrogatories and Document Requests are filed as Defendants' Exh. A (served
on named Plaintiffs and opt-in Plaintiffs) and Defendants' Exh. B (served on replacement opt-in Plaintiffs).
Both sets of Interrogatories and Document Requests seeks identical information, asserting 15
interrogatories and 17 document demands.

training, and further requests the Plaintiff specify when such incident occurred and identify the supervisor involved.   By letter dated August 31, 2011 ("August 31, 2011 Letter"),[3] Defendants advised Plaintiffs that although all responding Plaintiffs indicated they had been prohibited or discouraged from claiming pay during the specified times, many failed to identify the supervisor, and requested the incomplete responses be supplemented.  August 31, 2011 Letter at 3, 5.  By letter dated September 26, 2011 ("September 26, 2011 Letter"),[4] Plaintiffs replied that any Plaintiff's failure to identify a supervisor who had prohibited or discouraged employees from claiming pay during the specified times was attributed to the Plaintiff's inability to obtain the name of any supervisor, other than the supervisors identified in response to Interrogatory 1 which asks each Plaintiff to identify each supervisor to whom Plaintiff had reported. September 26, 2011 Letter at 1, 2.  By letter dated October 17, 2011 ("October 17, 2011 Letter"),[5] Defendants assert such response is inadequate because Plaintiffs who held several positions with Defendants, thus reporting to several supervisors, may have been discouraged or prohibited from claiming pay during meal times by some supervisors, but not others, and Interrogatories 4 and 10 also request information as to any supervisor whom Plaintiffs may have observed discouraging or prohibiting other employees from claiming pay for meal times.  October 17, 2011 Letter at 2.

**B.     Interrogatory 5**

Interrogatory 5 inquires whether any Plaintiff who worked through or during a

---

[3] Defendants' Exh. C.

[4] Defendants' Exh. D.

[5] Defendants' Exh. E.

meal period notified management and obtained management's approval prior to working through or during the mealtime.  By letter dated August 31, 2011 ("August 31, 2011 Letter"),[6] Defendants observed that no Plaintiff provided a simple "yes" or "no" answer to this question, instead objecting that the term "management approval" was "vague and ambiguous" and Plaintiffs understood the term as limited to "written approval."  August 31, 2011 Letter at 3-4.  Defendants responded that "management approval" pertained to "authorization, either in writing or verbal."  *Id.* at 4.  In response, Plaintiffs relied on their previous objection and provided the names of several Plaintiffs who "recall completing an exception log or some other writing regarding missed meal breaks. . . . " September 26, 2011 Letter at 1, 2.  Defendants objected to this response as "circular, rote responses."  October 17, 2011 Letter at 2.

### C.      Interrogatory 6

Interrogatory 6 inquires whether Plaintiffs recorded the hours spent working through or during meal periods.  Plaintiffs failed to provide simple "yes" or "no" answers to this question, instead objecting that the term "record" is vague and ambiguous.  August 31, 2011 Letter at 4.  Defendants advised that "[b]y record Defendants mean[ ] the creation of any documentation, including notes, memos, calendars or any other writing."  *Id.*  In response, Plaintiffs assert that any documents, such as personal records of time worked during meal breaks have been produced.  September 26, 2011 Letter at 2.  Defendants' replied that Plaintiffs' response indicated no Plaintiff had any documentation supporting their claims of having worked through or during meal breaks,

---

[6] Defendants' Exh. C.

and asked Plaintiffs to confirm as much in supplemental responses.  October 17, 2011

Letter at 2.

### D.      Interrogatories 8 and 9

Interrogatories 8 and 9 inquire, respectively, whether, since May 22, 2005, any

Plaintiff claims to have worked before or after a scheduled shift or to have attended a

training session without compensation, and if so, to specify the circumstances, including

when, where, and the number of hours, and to provide any supporting documentation.

Plaintiffs asserted that until they were able to review records maintained by Defendants,

they were unable to respond to these requests.  August 31, 2011 Letter at 4-5.

Defendants responded that because Plaintiffs claim they were required to work through

or during meal breaks and training without compensation, Plaintiffs should be able to

provide specifics as to when this occurred. *Id.* at 4-5.  Plaintiffs replied that they were

evaluating the records produced by Defendants and expected to provide supplemental

responses. September 26, 2011 Letter at 2.  Defendants maintain that Plaintiffs'

assertion that they would cull the responses from records produced by Defendants is

inadequate because the interrogatories request Plaintiffs to substantiate their own

claims.  October 17, 2011 Letter at 2.

### E.      Interrogatory 13

Interrogatory 13 asks whether any Plaintiff completed an exception log or similar

form to record time worked during a missed meal break and, if not, why.  Plaintiffs

objected that the terms "exception log" and "missed meal breaks" are vague and

ambiguous, and that the term "exception log" refers to a "formal written process that

plaintiff was trained to use."  August 31, 2011 Letter at 5.  Defendants responded by

demanding Plaintiffs inform whether they completed an exception log or similar form to record time worked during meal breaks.  *Id.*  Plaintiffs replied by listing those Plaintiffs who recalled completing an exception log or similar form, and those Plaintiffs who did not.  September 26, 2011 Letter at 2.  Defendants assert that Plaintiffs have yet to provide all the information requested by Interrogatory 13.

**Document Demands**

Document Demands 3, 4, 8, 9, 10, 11, and 12 seek all documents or records maintained by Plaintiffs reflecting hours worked (Document Demand 3), reflecting hours Plaintiffs claim to have worked for which they were not compensated (Document Demand 4), reflecting damages each Plaintiff seeks in this matter (Document Demand 8), regarding each Plaintiff's observation of others who were not compensated for such work (Document Demand 9), supporting or substantiating each Plaintiff's allegations that they were not permitted to cancel an automatic meal break deduction despite having worked during the meal break (Document Demand 10), support or substantiating each Plaintiff's allegation that they were not permitted to request pay for time spent attending Defendants' training programs (Document Demand 11), and substantiating and supporting any allegation that Defendants' employees told Plaintiffs they were not permitted to request pay for work performed either before or after scheduled shifts (Document Demand 12).  Plaintiffs' objected to these demands on the basis that Defendants were already in possession of the requested information, and that some of the requested documents were protected by the attorney-client privilege or as work product.  August 31, 2011 Letter at 6-7.  Defendants objected to these objections on the basis that Plaintiffs' belief that Defendants are in possession of the documents does

not excuse Plaintiffs from producing them, and that no privilege log establishing the

withholding of any document on the basis of privilege has been provided. *Id.* at 6-8.

Plaintiffs responded that they are not withholding any personal records responsive to

these Documents Demands.  September 26, 2011 Letter at 3.  Defendants replied that

the Document Demands are not limited to personal records prepared by Plaintiffs, but

any documents responsive to the Document Demands.  October 17, 2011 Letter at 3.

Significantly, Plaintiffs do not oppose Defendants' Motion to Compel on the basis

that any of the interrogatories or document demands at issue seeks information that is

privileged, burdensome, cumulative, or irrelevant; rather, the excuses Plaintiffs offer for

failing to provide responses to the Interrogatories and Document Demands are limited

to the difficulties encountered in contacting each Plaintiff, given that the Plaintiffs are

comprised of the six named Plaintiffs who provided responses, 42 of the original opt-in

Plaintiffs who provided responses, and 59 of the replacement opt-in Plaintiffs for whom

no responses have been provided.  Plaintiffs' argument in support of its requested

protective order is insufficient for several reasons.

First, the discovery demands in dispute are relevant to the essential issues of

this action, *i.e.*, did Defendants wrongfully deny Plaintiffs compensation for time

Plaintiffs worked during scheduled breaks, meal periods, and time before and after their

scheduled shifts, as well as for time Plaintiffs spent attending required training

sessions.  Plaintiffs do not contend otherwise.  The names of any supervisors who

allegedly were engaged in the wrongful conduct is relevant to establish that any time

Plaintiffs worked without compensation can be attributed to the employer, and the hours

allegedly worked are necessary to determine the frequency and seriousness of such

violations and, ultimately, any damages to be awarded.  Also, to the extent Defendants'

requests seek to establish that Plaintiffs have no personal recall of the asserted events

and are thus limited to proof of any potential establishment of the facts on the basis of

Defendants' records, Defendants are similarly entitled to do so by insisting on Plaintiff's

specific answers and responses.  *See Cornell Research Foundation, Inc. v. Hewlett*

*Packard Co.*, 223 F.R.D. 55, 68 (N.D.N.Y. 2003) (holding that even if the plaintiffs were

already in possession of responsive documents, the defendant was nevertheless

required to either produce such documents or at least sufficiently identify to which

documents the defendants was referring to permit the plaintiff to determine what

documents are being referenced and whether such documents are, in fact, within the

plaintiff's possession, custody, or control).  Accordingly, the information requested is

relevant to this case and must be produced.

    None of the discovery demands seek information that is duplicative of any of the

other discovery demands, such that no argument can be made that the disputed

discovery demands seek information that is cumulative.  Other than asserting that

attempting to obtain responses has been slow because of the number of Plaintiffs,

Plaintiffs' counsel has not specified the communication difficulties encountered in

attempting to contact Plaintiffs.  The court observes that the total number of named

Plaintiffs, opt-in Plaintiffs, and replacement opt-in Plaintiffs is 107, a number that is not

so great as to unduly hamper Plaintiffs' efforts in obtaining responses,

    Nor is there any merit to Plaintiffs' assertions that Defendants, in discussions

with Plaintiffs on October 21, 2011, requested additional information not previously

sought in the discovery demands, or delayed in advising Plaintiffs of deficiencies in the

responses received.  Plaintiffs' Response at 5.  The copies of the discovery demands

Defendants served on Plaintiffs establish that the information Defendants, by the

instant motion, seek to compel Plaintiffs to produce is limited to that originally requested

in the discovery demands.  *See* Defendants' Exh. A (discovery demands served on

named Plaintiffs and opt-in Plaintiffs), and B (discovery demands served on

replacement opt-in Plaintiffs).  Moreover, copies of correspondence exchanged

between the parties regarding the discovery demands establishes Defendants first

raised concerns regarding the sufficiency of Plaintiffs' responses to Defendants'

discovery demands in the August 31, 2011 letter.  There is, therefore, no merit to this

argument.

Inasmuch as Plaintiffs assert that any of the requested information is protected

by a privilege, when a party withholds relevant information that is discoverable,

pursuant to Fed.R.Civ.P. 26(b)(1), on the grounds of privilege, a party is obligated to

promptly provide the adverse party with notice of the claimed privilege by preparing and

serving a privilege log sufficiently describing the withheld information to enable the

adverse party to assess the validity of the asserted privilege.  Fed.R.Civ.P. 26(b)(5)(A);

*see also* W.D.N.Y. Local R.Civ.P. 26(e)(2) (requiring assertion of privilege "be furnished

in writing when the party responds to such discovery or disclosure").  A failure to comply

with this requirement results in a waiver of the asserted privilege in the withheld

information.  *See United States v. Construction Products Research, Inc.*, 73 F.3d 464,

473 (2d Cir. 1996) (failure to provide adequately detailed court-ordered privilege log

waives privilege); *Robbins & Meyers, Inc. v. J.M. Huber Corp.*, 2010 WL 2595332, at *5

(W.D.N.Y. June 24, 2010) (plaintiff required to produce two documents plaintiff asserted

was protected because any privilege that may have attached to two documents was waived by failing to list the documents in a privilege log provided to defendants); *Bove v. The Allied Group*, 2004 WL 5902631, *1 (W.D.N.Y. Oct. 28, 2004 (failure to provide privilege log complying with local rule waives privilege); *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2000 WL 1538003, *3 n. 1 (S.D.N.Y. Oct. 17, 2000) (citing *PKFinans Int'l. Corp. v. IBJ Schroder Leasing Corp.*, 1996 WL 525862, *3 (S.D.N.Y. Sep't. 17, 1996) ("party's failure to produce [privilege] log results in a waiver of any privilege that might otherwise be asserted" (citing caselaw))).  As such, any privilege that could have been asserted has been waived by Plaintiffs' failure to timely assert the privilege.

Accordingly, all Plaintiffs who have yet to do so must provide complete responses to Interrogatories 4, 5, 6, 8, 9, 10 and 13, and document requests 3, 4, 8, 9, 10, 11, and 12.  The court thus turns its attention to whether the FLSA claims should be dismissed with prejudice as to those Plaintiffs who have yet to provide any responses to Defendants' discovery demands.

Insofar as Defendants seek to dismiss the FLSA claims as to those 59 replacement opt-in Plaintiffs who have completely failed to comply with Defendants' discovery requests, the sanction of dismissal is extremely harsh and rarely imposed for a first discovery violation.  Fed.R.Civ.P. 37(c) ("Rule 37(c)") governs the use of sanctions to combat discovery abuses and include (1) ordering payment of reasonable expenses, including attorney's fees, caused by the non-compliant party's failure to disclose; (2) informing the jury of the non-compliant party's failure to disclose; and (3) the sanctions listed under Rule 37(b)(2)(A)(i) - (vi) concerning the failure to comply with a court order, including dismissing the action in whole or in part, Fed.R.Civ.P.

37(b)(2)(A)(v), relevant here given Defendants' request to dismiss with prejudice the FLSA claims as to those opt-in Plaintiffs who have failed to comply with discovery.  The severe sanction of "dismissal with prejudice is a harsh remedy to be used only in extreme situations, and then only when a court finds 'willfulness, bad faith, or any fault'" by the non-compliant party.  *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (quoting *Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759, 764 (2d Cir. 1990)).  "[D]ismissal pursuant to Rule 37 is appropriate 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a sanction.'" *Id.* (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). Among the factors to be considered in assessing whether dismissal of an action to sanction for non-compliance with discovery are "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir.  2009) (internal quotation marks and citation omitted).  Further, dismissal of an action as a sanction generally is not imposed absent the giving of a warning that noncompliance may result in dismissal.  *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994) (citing *Bobal*, 916 F.2d at 766).

In the instant case, no warning that the continued failure to comply with requested discovery has been given, nor have Plaintiffs failed to provide any court-ordered discovery.  Defendants have also failed to demonstrate Plaintiffs' non-compliance with discovery has been willful or in bad faith, and a plain reading of the

correspondence exchanged between the parties on this issue suggest the failure is best attributed to Plaintiffs' failure to comprehend the need to earnestly engage in the discovery process.  In short, at this time, the dismissal with prejudice of the FLSA claims for those opt-in Plaintiffs who have failed to provide any responses to Defendants' discovery claims would be premature.

Nor will the court reset the sample size for the opt-in Plaintiffs to the number of such Plaintiffs who actually respond to the discovery demands, as Plaintiffs urge. Plaintiffs' Memorandum at 9-10.  Plaintiffs maintain that if the final number of opt-in Plaintiffs providing responses to Defendants' discovery demands is less than 100, the court should reset the size of the sample of opt-in Plaintiffs to the number providing responses, rather than dismissing those opt-in Plaintiffs who do not respond. *Id.* Plaintiffs, however, reference no case law or other legal authority in support of this novel suggestion and the court's research has revealed none.  Further, granting this request would have the undesirable effect of preserving the size of the opt-in class despite Plaintiffs' unexcused non-compliance with Defendants' legitimate discovery requests.  As such, this request is DENIED.

Accordingly, Defendants' Motion to Compel is GRANTED insofar as Defendants move to compel discovery responses to Defendants' discovery demands served on the replacement opt-in Plaintiffs on September 12, 2011, to compel supplemental responses from the named Plaintiffs and those opt-in Plaintiffs who served initial responses to the discovery demands.  As to those opt-in Plaintiffs who have failed to serve any responses to Defendants' discovery requests, Defendants' Motion to Compel is DENIED insofar as Defendants seeks to have the FLSA claims dismissed with

prejudice, but is GRANTED as to Defendants' alternative request for a conditional order providing such Plaintiffs with 30 days to serve complete responses to the discovery demands to avoid dismissal should Defendants renew the request is a further motion.[7]

**2.    Motion to Amend**

Plaintiffs seek leave to file an amended complaint to replead the New York common law negligent misrepresentation and conversion claims previously voluntarily dismissed from this action, refiled in a separate state court action that was removed to this court, and then dismissed on January 17, 2012 for failing to state a claim. According to Plaintiffs, their voluntary dismissal and refiling of these claims in New York Supreme Court was intended "to keep the FLSA claims moving forward in this action" without having to litigate the motion to dismiss as to the New York common law claims. Plaintiff's Memorandum - Motion to Amend at 1. In support of the motion, Plaintiffs maintain that none of the circumstances in which motions to amend may be denied is present here, including undue delay, bad faith, or dilatory motion on the part of Plaintiffs, nor will "merely adding back in two common law claims that survived defendants' motion to dismiss [in 08-CV-951S] would not prejudice defendants, since discovery in this case remains ongoing." *Id.* at 3.

Defendants argue in opposition that Plaintiffs' Motion to Amend is futile and dilatory and, if granted, would confer an "unjustified benefit" on Plaintiffs given that

---

[7] Although the court is required to award attorney's fees upon granting a motion to compel, Fed.R.Civ.P. 37(a)(5)(A), where, as here, the motion is granted in part and denied in part, the court has discretion whether to award fees in proportion to that part of the motion granted.  Fed.R.Civ.P. 37(a)(5)(C). Defendants did not request an award of attorney's fees and the court, in its discretion, does not award them.

Plaintiffs moved to consolidate the claims asserted in 08-CV-951S with the instant claims, but were denied.  Defendants' Response - Motion Amend at 2.  Defendants further maintain that the allegations in the Proposed Second Amended Complaint in support of the negligent misrepresentation and conversion claims are too generalized and conclusory as to be subject to dismissal for insufficient pleading, and that insofar as both the negligent misrepresentation and conversion claims are based on overtime pay, this court has already determined the claims are preempted by the FLSA.  *Id.* at 7-12.  Alternatively, Defendants maintain that if Plaintiffs are permitted to file the Second Amended Complaint, such filing should be conditioned on Plaintiffs' payment of Defendants' attorneys' fees pursuant to Fed.R.Civ.P. 41(d) ("Rule 41(d)") as the costs of a previously dismissed action. *Id.* at 12-16.  In further support, Plaintiffs argue their Motion to Amend is neither dilatory nor prejudicial, Plaintiffs' Response - Motion to Amend at 1-2, the claims they seek to replead are not futile, *id.* at 2-7, and that Plaintiffs are not seeking to revive any claims previously determined to be preempted by the FLSA.  *Id.* at 7.  Finally, Plaintiffs maintain Defendants are not entitled to attorneys' fees because Rule 41(d) only permits a defendant to be awarded the costs of a previously dismissed action upon its refiling as a subsequent action.  *Id.* at 8-10.

Fed.R.Civ.P. 15 provides that leave to amend a pleading "shall be freely granted when justice so requires."  An amended pleading may be filed pursuant to Fed.R.Civ.P. 15(a) where the new allegations do not unduly prejudice an opponent, are not the result of undue delay or bad faith, and are not futile. *Foman v. Davis*, 371 U.S. 178, 181 (1962).  Absent a showing that significant additional discovery burdens will be incurred or that the trial of the matter will be significantly delayed, amendment should be

permitted.  *Block v. First Blood Associates,* 988 F. 2d 344, 350 (2d Cir. 1993).  "Leave

to amend may properly be denied if the amendment would be futile, as when the

proposed new pleading fails to state a claim on which relief can be granted."  *Anderson*

*News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (citing cases).

"The adequacy of a proposed amended complaint to state a claim is to be judged by

the same standards as those governing the adequacy of a filed pleading."  *Id.* (citing

*Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991) In particular, the

adequacy of a proposed amended complaint is determined according to the same

standards governing the adequacy of a filed pleading as recently articulated by the

Supreme Court.  *Id.* at 185-86 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007)). *See also Jones v. New York Div. of Military & Naval Affairs*, 166 F.3d 45, 55

(2d Cir.1999) (an amendment is futile "if the proposed amended [pleading] would be

subject to 'immediate dismissal' for failure to state a claim or on some other ground.").

　　　Here, Plaintiffs seek leave to file a second amended complaint to reassert the

same New York common law claims of negligent misrepresentation and conversion

alleged in the original complaint, and which were among the ten claims Plaintiffs

voluntarily dismissed from this action prior to reasserting the same claims in the state

court actions.  The court considers whether permitting the amendment would be dilatory

or prejudicial, futile, or should be permitted only upon the condition that Plaintiffs pay

Defendants' attorneys' fees incurred in connection with defending these claims in

connection with the earlier actions.

A.      **Dilatory and Prejudicial**

Insofar as Defendants maintain the proposed amendment is dilatory, prejudicial, and otherwise not in the interest of justice, Defendants' Response - Motion to Amend at 6-7, Plaintiffs maintain they originally voluntarily dismissed the negligent misrepresentation and conversion claims and refiled them in the state court actions "to keep the FLSA claims moving forward in this action," Plaintiffs' Memorandum - Motion to Amend at 1, after Defendants filed their motion to dismiss which Plaintiffs' feared could "unduly delay conditional certification of the FLSA claims . . . ." *Id.* at 3. According to Defendants, the prejudice to Defendants that would occur if Plaintiffs are permitted to replead their negligent misrepresentation and conversion claims "is obvious, as [Defendants] have been forced to incur considerable expenses and were denied a timely resolution of these claims because of Plaintiffs' maneuvers, just to end up in the same place the parties would have been in December 2008," and that the proposed amendment would only serve to permit Plaintiffs to "perpetuate their meritless allegations."  Defendants' Response - Motion to Amend at 7.  Plaintiffs further maintain that the voluntary dismissal of the negligent misrepresentation and conversion claims was necessary to "protect the rights of absent class members."  Plaintiffs' Reply - Motion to Amend at 2.  Plaintiffs argue that Defendants' asserted prejudice is without merit because Defendants simply refiled the same motion to dismiss in the refiled action as was filed in this action prior to the voluntary dismissal of the New York common law claims. *Id.* at 2.  Furthermore, Plaintiffs assert that discovery in this action remains open, and the facts underlying the negligent misrepresentation and conversion claims overlap with those supporting the FLSA and NYLL claims, such that repleading

will not be prejudicial to Defendants or cause Defendants to incur additional, extensive discovery. *Id.*

A careful review of this case establishes that Plaintiffs' decision to voluntarily dismiss certain claims from this action and to refile those claims in state court did nothing to advance the litigation of any of the claims either here or in state court and Plaintiffs' assertions in that regard indicate some uncertainty as to how best to proceed in litigating all of Plaintiffs' claims.  Nevertheless there is no evidence that the decision was intended to cause delay or to otherwise obstruct Defendants' defense of any claims but, rather, suggest confusion of a procedural nature on the part of Plaintiffs.  As such, Plaintiffs' Motion to Amend will not be denied on the basis that the motion is a dilatory tactic.

Nor is there any basis on which to find that permitting the requested amendment will unduly prejudice Defendants.  Rather, Defendants have already been required to defend the claims, whether in this action or in the state court actions, and the factual allegations on which the negligent misrepresentation and conversion claims are based are largely the same as those underlying the FLSA, NYLL and estoppel claims such that defending the claims will not require additional, time-consuming discovery. *Compare* Complaint ¶¶ 74-127, with Proposed Second Amended Complaint ¶¶ 74-114. Accordingly, Plaintiffs' Motion to Amend will not be denied as imposing undue prejudice on Defendants.

**B.   Futile**

Plaintiffs assert the proposed negligent misrepresentation and conversion claims

"would not be futile, but would assert valid allegations which, when proven at trial, will entitle Plaintiffs to relief."  Plaintiffs' Memorandum - Motion to Amend at 3.  In opposition, Defendants argue Plaintiffs' proposed negligent misrepresentation claim has not been pleaded with sufficient particularity as required under Fed.R.Civ.P. 9(b) ("Rule 9(b)"), Defendants' Response - Motion to Amend at 8-11, the proposed conversion claim Plaintiffs seek to plead is so vague as to be futile, *id.* at 11-12, and Plaintiffs are attempting to revive claims the court has already held are preempted by the FLSA, *id.* at 12.  In further support of the Motion to Amend, Plaintiffs assert the negligent misrepresentation claim sufficiently pleads the requisite duty owed by Defendant to Plaintiffs, that Defendants knowingly made a false representation about information upon which Defendants anticipated Plaintiffs would rely and that Plaintiffs, relying on the misrepresentation, acted to their detriment.  Plaintiffs' Reply - Motion to Amend at 3-5.  With regard to the conversion claim, Plaintiffs clarify they are repleading the claim, as permitted in the January 17, 2012 D&O at 21, only with regard to "straight-time wages," but not overtime wages. *Id.* at 5-6.  Plaintiffs further maintain they have sufficiently alleged facts establishing each of the elements of a conversion claim, *id.* at 6-7, and that neither of the claims Plaintiffs seek to replead has been held to be preempted by the FLSA. *Id.* at 7.

### 1.   Negligent Misrepresentation

Plaintiffs' proposed fourth claim for relief alleges "Defendants willfully violated their obligation under the common law and the state laws of New York by misrepresenting to Class Members that they would be fully compensated for all services

performed . . . ."  Proposed Second Amended Complaint ¶ 123.  Defendants argue the

proposed negligent misrepresentation claim lacks the particularity required under Rule

9(b).  Defendants' Response - Motion to Amend at 8-11.  Plaintiffs argue in further

support of their Motion to Amend that the proposed negligent misrepresentation claim

sufficiently alleges each of the required elements.  Plaintiffs' Reply - Motion to Amend

at 4-5.

"It is settled New York law that the elements of negligent misrepresentation are:

(1) carelessness in imparting words; (2) upon which others were expected to rely; (3)

and upon which they did act or failed to act; (4) to their damage.  Most relevant, the

action requires that (5) the declaration must express the words directly, with knowledge

or notice that they will be acted upon, to one to whom the declarant is bound by some

relation or duty of care."  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d

Cir. 2003) (citing *White v. Guarente*, 372 N.E.2d 315, 319 (N.Y. 1977)).  Whether Rule

9(b)'s particularity requirement applies to state law negligent misrepresentation claims

remains an open question in the Second Circuit Court of Appeals.  *Eternity Global*

*Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York*, 375 F.3d 168, 188 (2d

Cir. 2004) ("Rule 9(b) may or may not apply to a state law claim for negligent

misrepresentation.  District court decisions in [the Second] Circuit have held that the

Rule is applicable to such claims, but [the Second Circuit] has not adopted that view . . .

.").  Nevertheless, in determining whether a complaint adequately pleads justifiable

reliance, the court considers "whether the person making the representation held or

appeared to hold unique or special expertise; whether a special relationship of trust or

confidence existed between the parties; and whether the speaker was aware of the use

to which the information would be put and supplied it for that purpose." *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996). The Second Circuit "has held that a 'sparsely pled' special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where 'the complaint emphatically alleges the other two factors enunciated in *Kimmell*.'" *Eternity Global Master Fund Ltd.*, 375 F.3d at 188 (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001)). As such, where a special relationship is not pleaded, "and the allegations with respect ot the other *Kimmell* factors are soft, a claim for negligent misrepresentation is dismissible under Rule 12(b)(6)." *Id.* In the instant case, the proposed negligent misrepresentation fails to adequately plead the requisite special relationship, as well as that the person responsible for the misrepresentation "held or appeared to hold unique or special expertise," or "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Id.*

Specifically, not one statement of misrepresentation is attributed to any particular individual; rather, Plaintiffs allege the misrepresentations that "wages would be paid legally and in accordance with [Defendants'] obligations pursuant to applicable state laws" are made either in Defendants' "corporate publications" or "through statements of [Defendants'] agents. . . ," Proposed Second Amended Complaint ¶ 86, in statements in "employee manuals and policy manuals," "corporate publications," and "corporate documents" that Plaintiffs "would be paid for all hours worked including those worked both under and in excess of forty in a work week," and for work performed "during their lunch breaks." *Id.* ¶¶ 87-89. Not only are these "sparsely pled" allegations insufficient to establish the requisite special relationship for a negligent misrepresentation claim,

but neither of the other two elements is pleaded, *i.e.*, that the person responsible for the misrepresentation "held or appeared to hold unique or special expertise," or that "the speaker was aware of the use to which the information would be put and supplied it for that purpose."  *Eternity Global Master Fund Ltd.*, 375 F.3d at 188.  Moreover, the allegations in the Proposed Second Amended Complaint fail to provide the detail Judge Skretny found lacking in the previously dismissed action, 08-CV-951S, where the negligent misrepresentation claim was dismissed on the basis that the Plaintiffs "have alleged, at best, an ordinary employer-employee relationship, and it is not even clear from the Complaint which Plaintiff is employed by which Defendant."  January 17, 2012 D&O at 20 (citing *Kwon v. Yun*, 606 F.Supp.2d 344, 356-57 (S.D.N.Y. 2009) ("courts have routinely held that the employer-employee relationship does not constitute a special relationship sufficient to support a claim for negligent misrepresentation. . . ."); and *DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, 770 F.Supp.2d 497, 534-35 (E.D.N.Y. 2011) (dismissing negligent misrepresentation claim based on non-payment of compensation where plaintiffs failed to allege anything more than an employer-employee relationship which was insufficient to establish the requisite special relationship)).  Accordingly, the negligent misrepresentation claim asserted in the Proposed Second Amended Complaint would be subject to dismissal under Rule 12(b)(6) as failing to plausibly plead a legally viable claim.  As such, Plaintiffs' Motion to Amend is DENIED with regard to the negligent misrepresentation claim.

## 2.    Conversion

Plaintiffs' proposed third claim for relief alleges a claim for conversion, asserting

Defendants, in violation of New York common law, converted funds to which Plaintiffs were entitled.  Proposed Second Amended Complaint ¶¶ 119-121.  Preliminarily, the court observes that although not specifically pleaded as such, Plaintiffs have clarified that the proposed conversion claim seeks only to recover for straight-time pay. Plaintiffs' Reply - Motion to Amend at 5, 7.  This is consistent with Judge Skretny's observation that "to the extent Plaintiffs are seeking unpaid overtime wages that are available under the FLSA, their common law claims are preempted, and to the extent they are seeking straight-time wages for which no federal relief is available, they are not."  January 17, 2012 D&O at 13.

Defendants argue Plaintiffs' proposed conversion claim is futile because it is too vague and fails to allege, as required under New York law, that Plaintiffs had actual ownership, possession, or control of the funds before Defendants' alleged conversion. Defendants' Response - Motion to Amend at 11-12.  Plaintiffs assert the proposed conversion claim is sufficiently pleaded because under New York law, a conversion claim does not require the plaintiff have ownership, possession or control of the money before its conversion, but only that the alleged converted money was in a specific, tangible fund and that wages owed constitutes such a fund.  Plaintiffs' Reply - Motion to Amend at 6-7.

Under New York common law, conversion is defined as "the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'"  *Vigilant Insurance Company of America v. Housing Authority of the City of El Paso, Texas*, 660 N.E.2d 1121, 1126  (N.Y. 1995) (quoting *Employers' Fire Ins. Co. v. Cotten*, 156 N.E. 629, 630 (N.Y. 1927)).  "Two key

29

elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito v. New York Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006) (citing cases). "It is well settled that an action will lie for conversion of money where there is a specific, identifiable fund, and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Manufacturers Hanover Trust Co. v. Chemical Bank*, 559 N.Y.S.2d 704, 712 (1st Dep't 1990). A claim for conversion generally "does not lie for the withholding of indefinite, intangible, and incorporeal species of property." *Martzan v. Eastman Kodak Co.*, 521 N.Y.S.2d 917, 918 (4th Dep't 1987).

"An action for conversion does not lie to enforce a mere obligation to pay money." *Ehrlich v. Howe*, 848 F.Supp. 482, 492 (S.D.N.Y. 1994). In at least two cases filed in District Courts within the Second Circuit, claims for conversion based on unpaid wages were dismissed under Rule 12(b)(6) because the plaintiffs were unable to allege ownership, possession or control of the money before its conversion. *See DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, 2012 WL 748760, at * 9 (E.D.N.Y. Mar. 7, 2012) (dismissing conversion claim based on unpaid wages where money out of which wages would be paid was not "specifically identified and segregated"); *Nakahata v. New York Presbyterian Healthcare System, Inc.*, 2011 WL 321186, at * 6 (S.D.N.Y. Jan. 28, 2011) (dismissing claim for conversion of unpaid wages "because New York requires the plaintiff to have ownership, possession, or control of the money before its conversion."). Significantly, both *DeSilva* and *Nakahata* address similar complaints regarding nonpayment of wages to healthcare workers who worked during or through

scheduled breaks and meal times, and the plaintiffs in those actions are represented by the same attorneys who represent Plaintiffs in the instant action.

Similarly, in the instant case, Plaintiffs have failed to specifically identify and segregate the funds out of which their alleged unpaid wages were to be paid.  As such, their proposed conversion claim fails to state a claim for which relief can be granted, such that permitting it to be filed would be futile.  Plaintiffs' Motion to Amend is, therefore, DENIED as to the conversion claim.


**C.      Costs of Previous Action**

Defendants, alternatively, request that if Plaintiffs are permitted to file the Second Amended Complaint, such permission should be conditioned on Plaintiffs' first paying Defendants the costs, including attorneys' fees, incurred in connection with defending against the negligent misrepresentation and conversion claims in the previous actions, as permitted under Rule 41(d).  Defendants' Response - Motion to Amend at 12-16.  Plaintiffs argue in opposition that no such award of costs to Defendants should be made because although Plaintiffs initially voluntarily dismissed the negligent misrepresentation and conversion claims from the instant action, the claims were involuntarily dismissed after Defendants removed the state court actions to this court, where Defendants then moved to have the actions dismissed.  Plaintiffs' Reply - Motion to Amend at 8-10.  Plaintiffs further maintain that attorneys' fees are not among the costs recoverable under Rule 41(d), and that Defendants' request for attorneys' fees is duplicative of their request for attorneys fees made in 08-CV-950 and 08-CV-951.  *Id.*

Because the court is denying Plaintiff's Motion to Amend, Defendants' request for costs under Rule 41(d) is DISMISSED as moot.

## **CONCLUSION**

Based on the foregoing, Defendants' Motion to Compel (Doc. No. 337) is GRANTED in part and DENIED in part; Plaintiff's' Cross-Motion for a Protective Order (Doc. No. 340) is GRANTED in part and DENIED in part; and Plaintiff's Motion to file an Amended Complaint (Doc. No. 344) is DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      July 19, 2012
            Buffalo, New York