UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CATHERINE GORDON, JAMES SCHAFFER,
TERESA THOMPSON, PAMELA MIKA, JENNIFER
PFENTNER AND DIANA GALDON,
 *on behalf of themselves and all other employees similarly situated,*

                                                    Civil Action
                                                    No. 08-CV-0378 (WMS)

                                          *Plaintiffs,*

        v.

KALEIDA HEALTH, et al.,

                                          *Defendants.*

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

THOMAS & SOLOMON LLP
 *Attorneys for Plaintiffs*
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540

Of Counsel:   J. Nelson Thomas
              Michael J. Lingle
              Sarah E. Cressman

## PRELIMINARY STATEMENT

Defendants' policy at issue in this motion is clear and undisputed: defendants[1] only pay employees for work performed during meal periods that the employees themselves report despite defendants' actual or constructive knowledge that the employees perform more work than is reported.  Thus, this policy does not meet defendants' obligations under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") to pay for all hours defendants reasonably knew or should have known employees worked.  Indeed, the Second Circuit's recent holding in *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011) leaves no doubt that defendants are liable under the FLSA and NYLL to employees in this case due to their utter failure to take any steps to fulfill their non-delegable duty to accurately record all hours employees worked.

Although plaintiffs' motion for Rule 23 certification of their NYLL law claims and defendants' motion for decertification of the conditionally certified FLSA class have yet to be decided, because it is apparent that liability is dependent on a determination as to the legality of Kaleida's undisputed corporate policy, class-wide resolution of these claims is undoubtedly appropriate.  Summary judgment on the legality of defendants' employee reporting policy will substantially streamline this case for trial, as once liability is determined, only the issue of damages will remain regarding these claims.

---

[1]      Defendants are referred to herein as "defendants" or "Kaleida."

## FACTUAL BACKGROUND

### *Kaleida's Admitted Meal Break Deduction Policy*

By its own admissions, Kaleida's meal break deduction policy is to not pay for all work that it knew employees did during their unpaid, automatically deducted meal periods—but rather, to pay for something less, only time that employees reported. *See* Dkt. No. 117,[2] Defs.' Memo at 6, 19, 21-22; *see also* Dkt. No. 426, Defs.' Cert. Opp'n at 11 (defendants' timekeeping policy "requires that each employee accurately report his or her time worked"); Docket No. 426-3, Declaration of Ellie Foster[3] ¶ 38.  Despite the auto deduction, plaintiffs' and putative class members' meal periods are often interrupted or missed completely in order to perform work-related duties.  *See* Plaintiffs' Statement of Material Facts Not in Dispute ("Pltfs.' Stmt.") ¶ 2.  For example, plaintiffs and putative class members are expected to complete paperwork, such as charting and admissions, and respond to pages, call lights and requests from co-workers and management in order to fulfill their job duties.  Pltfs.' Stmt. ¶ 3.  As a result, interrupted and missed meal periods are a common occurrence.  *Id*.

Despite the typical nature of interrupted and missed meal periods, Kaleida concedes it has no formal system which accurately records and ensures compensation for this time.  *See* Dkt. No. 117, Defs.' Memo at 6 ("Timekeepers . . . maintain procedures whereby employees can report when they have not received a full meal period."); Dkt. No. 426,[4] Defs.' Cert. Opp'n at 12 ("Some departments use exception logs, while others use "no lunch" slips and

---

[2]     Docket No. 117 is Defendants' Memorandum of Law in Opposition to Motion for Collective Action Notification, referred to herein as "Defs.' Memo."

[3]     Ellie Foster was defendants' Director of Labor Relations and then engaged as a consultant by defendants.  *See* Docket No. 426-3, Declaration of Ellie Foster ¶ 1.

[4]     Docket No. 426 is Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Rule 23 Class Certification of New York Labor Law Claims, referred to herein as "Defs.' Cert. Opp'n."

verbal reports").  Significantly, Kaleida admits the only policy, if any, by which time for interrupted and missed meal periods is captured is through employee reporting.  *Id*. at 6 ("Operationally, if an employee is unable to take his or her meal break, that employee must notify his or her supervisor who will ensure the employee is compensated for that break;" employees will be paid for missed or interrupted meal breaks that are reported), 19, 21; Dkt. No. 426, Defs.' Cert. Opp'n at 13 ("Non-exempt employees are responsible for recording all hours for which they are eligible to be compensated."  It is each employee's responsibility to correctly enter all time using the mechanism defined for his/her particular site and/or department;" timekeepers cancel meal period deductions "based on such employee reports") (internal citations omitted); Docket No. 426-3, Declaration of Ellie Foster ¶¶ 38, 40; Docket No. 426-4, Exhibit B to Declaration of Ellie Foster at KAL0152076 (explaining that employees must record time worked during meal periods).

Numerous declarations *submitted by Kaleida* in this action from its managers and supervisors also confirm this policy.  *See* Dkt. No. 119-7, Declaration of Ron Aldinger, ¶ 6 (explaining that if  security officers miss lunch, they are required to write it on the exception log), Declaration of Paul Boswell, ¶¶ 5-7 ("It is the responsibility of the RNs to notify their supervisor if their schedule does not allow them to take a full meal break...they are required to record the missed meal period in the department exception log"), Declaration of Cynthia Bova-Bankston, ¶¶ 6-7 (employees "are required to record the missed meal period in the department's exception log"), Declaration of Laurel Collins, ¶¶ 6-7, Declaration of Janet Cousineau, ¶ 6 (employees "required" to write missed lunches in exception log), Declaration of Michelle Gammel ¶ 6-7 ("Kaleida policy" requires employees "to record the missed meal period in the department's exception log"), Declaration of Mary Rose Graham, ¶¶ 6-7,

- 3 -

Declaration of Nicole Holler, ¶¶ 6-7, Declaration of Sharon Logue, ¶¶ 6-7; Docket No. 119-8, Declaration of James Lukasik, ¶¶ 6-7, Declaration of Judith Murcko, ¶¶ 6-7, Declaration of Peter Murphy, ¶¶ 6-7, Declaration of Michael Ozogar, ¶¶ 6-7, Declaration of Joanne Puccio, ¶¶ 6-7, Declaration of Rose Rampino, ¶¶ 6-7, Declaration of Frank Santiago, ¶¶ 6-7, Declaration of Margaret Sieroga, ¶¶ 6-8, Declaration of Lisa Smith, ¶¶ 6-7, 10 ("It is the employees [sic] responsibility to let me know if they have missed a meal period or have been interrupted and then they are paid for that time").[5]   Based on employee reporting, timekeepers will cancel the deduction in Kronos.  *See* Pltfs.' Stmt. ¶ 9.

Thus, there is no indication that Kaleida made any reasonable inquiry or used due diligence to determine whether employees received an uninterrupted 30-minute meal period if an employee did not report this time.  *See* Pltfs.' Stmt. ¶ 4.  Rather, Kaleida's policy was to only pay for time reported by employees even though Kaleida knew that employee reporting was deficient.

### Kaleida's Knowledge of Work Performed During Meal Periods

There are numerous ways that Kaleida acquired either actual or constructive knowledge that employees worked during their meal periods more often than what they reported and were paid for, including, for example, survey information, Kaleida's own observations, perpetual understaffing within the system, and the sheer magnitude of employees' workload.  Yet, by its own admissions, Kaleida did not pay for unreported interrupted or missed meal periods regardless of whether it was aware or should have been aware through reasonable inquiry and due diligence that the time was worked.

---

[5]     In opposition to plaintiffs' motion for certification pursuant to Rule 23, defendants submitted additional affirmations from managers and supervisors confirming the same policy.  *See* Docket No. 426-2, Exhibit B.

1.  ***NDNQI Survey Data***

Kaleida participates in a survey conducted by the National Database of Nursing Quality Indicators ("NDNQI"), a database owned by the American Nurses Association ("ANA"), which collects survey data from participating hospitals and prepares reports that list the data with respect to employees at the participating hospital.  Pltfs.' Stmt. ¶ 6.  The NDNQI surveys collect data from nurses, including, whether during their last shift, nurses received a meal break, if so, how long the meal break lasted, and if they were interrupted during their break to work with patients.  *See* Exhibit[6] G-1.  Kaleida's hospitals participate in the NDNQI surveys and receive reports showing the percentage of nurses whose meal breaks were missed or interrupted during their last shift.  *Id.*

Kaleida and the ANA produced meal break data from the RN Survey Reports from participating hospitals for the years 2009-2011.  *Id.*  This data indicates the percentage of nurses who reported being unable to take an uninterrupted meal break during their last shift.  *Id.*  Kaleida's timekeeping records indicate when the auto deduct for meal periods is overridden and employees are paid for working through their lunch.  *See* Exhibit G-2.  Based on the timekeeping records produced by Kaleida, employees had their auto deduct cancelled and were paid for working through their meal periods only 8.16% of the time, a staggeringly lower amount of time than employees (only nurses) reported being unable to take an uninterrupted meal period, 70.6%.  *See* Exhibit G at ¶¶ 6-26.

The NDNQI survey results were available to Kaleida, and Kaleida was or could have made itself aware through a comparison of the NDNQI survey information to its own timekeeping records that employees were working through their meal periods with much

---

[6]      All exhibits are attached to Plaintiffs' Appendix to Statement of Material Facts Not in Dispute.

greater frequency than they were being paid for this time.  In fact, Kaleida can easily generate a report from its timekeeping system indicating the number of meal period cancellations for its employees.  *See* Exhibit H at pp. 50-52 (explaining that reports can be run from Kronos for exceptions such as cancel deducts).

### 2. *Interrogatory Responses*

In addition to the NDNQI surveys, Kaleida similarly could have easily just asked its own employees whether they were being paid for working during or through their meal periods.  The interrogatory responses of the 49 plaintiffs for whom Kaleida produced timekeeping records in electronic format show that these employees worked through or during their meal period, on average, 82.4% of the time.  *See* Exhibit G-3.  Yet, Kaleida's own timekeeping records show that they were only paid for working through or during their meal periods 8.16% of the time.[7]  *Id.*  This means that these employees were only paid for approximately 10% of the time they spent working during or through their meal periods. The interrogatory responses alone provide more than sufficient evidence that employees were systematically not being paid for compensable time.  Kaleida could have easily simply asked its own employees at any time, as they did through the interrogatories in this lawsuit, how often they experienced missed or interrupted meal periods and whether they reported and were compensated for that time.

---

[7]     Since, as of the date of this filing, Kaleida has only produced timekeeping records in electronic format for 49 plaintiffs, the comparison of Kaleida's timekeeping records to the interrogatory responses is limited to these 49 plaintiffs, as opposed to all 74 sample plaintiffs who have completed interrogatory responses to date.  All 74 plaintiffs who completed interrogatory responses reported working during or through their meal periods, on average, 80.3% of the time (**Exhibit G-4**).

### 3. _Kaleida Discouraged and Suppressed Employee Reporting_

Worse still, Kaleida's failure to set clear (or any) uniform guidelines for employee reporting, but instead leaving it up to managers and supervisors to use whatever hodgepodge methods they come up with to attempt to capture this time, caused not only wholly inaccurate time records but also discouraged and suppressed employee reporting. _See_ Dkt. No. 117, Defs.' Memo at 6 ("Timekeepers . . . maintain procedures whereby employees can report when they have not received a full meal period."). It is therefore not surprising that Kaleida's meal break payment system resulted in off-the-clock violations, since employees were often not even aware that they could seek compensation for work performed during meal periods, even though that was the _only_ way they could be paid for that time. _See_ Pltfs.' Stmt. ¶¶ 5, 6.

For example, employees were not instructed that interrupted meal periods could or should be reported. _Id_. ¶ 6. To the contrary, if employees ate any food during their shift, management considered that a meal break even though employees did not receive a full, uninterrupted 30-minute meal break. _Id_. ¶ 7.

Kaleida's records show that, instead of ensuring that Kaleida was capturing all time worked during automatically deducted meal periods through employee reporting, employees were discouraged from reporting and being paid for work performed during meal periods. _See_ Pltfs' Stmt. ¶ 5. Employees commonly testified that their supervisors would suppress reporting by, for example, yelling at them for being inefficient when they tried to report a missed meal period, _see_ Exhibit F, Militello Aff. ¶ 14, or telling them there had to be extenuating circumstances to use the exception log for missed meal periods, _see_ Exhibit F, Malkowski Aff. ¶ 13. _Id_. However, instead of ensuring payment for work Kaleida knows

employees are performing during meal periods, Kaleida instead has chosen to bury its head in the sand by doing nothing more than leaving it up to managers and supervisors to maintain whatever methods they come up with, regardless of whether these methods accurately capture and pay for all time worked.  This is evident in Kaleida's policies, which do little more than remind employees that their meal period is automatically deducted and that only their manager may approve the cancellation of the automatic deduction.  *See* Exhibits A-D, I.

Hence, it is hardly surprising that Kaleida's timekeeping records are inaccurate since Kaleida relies exclusively on employee reporting to capture missed and interrupted meal periods but has no uniform method of capturing this time.  Instead, Kaleida leaves it up to managers and supervisors to use whatever hodgepodge methods they come up with to attempt to capture this time, while at the same time failing to set clear (or any) uniform guidelines as to when or how missed and interrupted time should be reported and discouraging and suppressing employee reporting.

## ARGUMENT

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Frankel v. Bally, Inc.*, 987 F.2d 86, 88 (2d Cir. 1993).   The Federal Rules of Civil Procedure authorize courts to grant summary judgment on only parts of a claim or defense, as plaintiffs seek here.  Fed. R. Civ. P. 56(a).  There are no material facts in genuine dispute here that would preclude a summary judgment determination on the legality of Kaleida's employee reporting policy for work performed during meal periods.  Even viewing the evidence in a light most favorable to Kaleida, it cannot make a sufficient showing that it can avoid liability for failing to pay employees for

work performed during meal periods on the undisputed facts of this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

I.  **AN EMPLOYER HAS A NON-DELEGABLE DUTY TO MAINTAIN ACCURATE RECORDS OF ITS EMPLOYEES' HOURS AND MUST PAY FOR ALL TIME IT KNOWS OR SHOULD HAVE KNOWN ITS EMPLOYEES WORKED, INCLUDING DURING MEAL PERIODS**

The legal principles underlying this motion, as discussed below, ultimately lead to the straightforward governing principle that, as stated by the Second Circuit: "once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011).  Yet, Kaleida, as a matter of corporate policy, does exactly what the FLSA prohibits—it denies its hourly employees compensation for work performed during automatically deducted meal periods when its employees fail to report that time despite having ample reason to know its employees are working during their meal periods much more frequently than Kaleida's records reflect.

A.  **All Work That is Suffered or Permitted Must Be Compensated**

"To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge." *See Kuebel*, 643 F.3d at 361.  Thus, an employer must pay an employee for any time the employer knew or should have known the employee worked—even if the employee did not record the time and even if not recording the time ran contrary to the employer's policy. *See Kuebel*, 643 F.3d at 363 ("once an employer knows or has reason to know that an employee is working overtime, it cannot deny

compensation simply because the employee failed to properly record or claim his overtime hours").

The "knew or should have known" standard finds its underpinning in the broad statutory language mandating employees be paid for all time the employer suffers or permits them to work. *See* 29 U.S.C. § 203(g). The regulations further explain this broad standard:

> Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. **The employer knows or has reason to believe that he is continuing to work and the time is working time.**

29 C.F.R. § 785.11 (emphasis added).

As the regulations make clear, an employer "suffers or permits" work whenever the employer knows or has reason to believe that the employees are working. 29 C.F.R. §§ 785.11–785.13; *accord Barvinchack v. Indiana Reg'l Med. Ctr.*, Civ. Action No. 3:2006-69, 2007 WL 2903911, at *12-13 (W.D Pa. Sept. 28, 2007) (citing *Reich v. Dep't of Conservation & Natural Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994)). An employer has reason to know that employees are working whenever it has the opportunity to find out, through exercising reasonable diligence that its employees are working. *Id.*, at *12-13 (citing *Reich*, 28 F.3d at 1082); *see also Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969) ("[A]n employer's knowledge is measured in accordance with his duty . . . to inquire into the conditions prevailing in his business.").

In order to properly pay for all time suffered or permitted to work, the law imposes a duty **on the employer** to accurately record all time worked. *See* 29 U.S.C. § 211(c). The duty to record and pay for all time worked is non-delegable, and an employer cannot simply rely

on employees to not work during their unpaid breaks.   29 C.F.R. § 785.13.   Rather, an

employer must *prevent* employees from performing work that it does not want to pay for.   *Id.*

> The Department of Labor has explained:

> > [I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

*Id.*

Indeed, an employer must adopt "all possible measures" to prevent uncompensated

work, including discipline.  *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 291 (2d Cir. 2008);

*see also Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 148 (2d Cir. 2008)

(employer's failure to keep accurate records that would make it easy to discover overtime

hours would not permit a finding that employer did not "suffer or permit" overtime work).

The sweepingly broad statutory provision encompassing all time employers suffer or

permit employees to work reflects a clear policy choice by Congress that employers must pay

for **any** time an employee works. *United States v. Rosenwasser*, 323 U.S. 360, 362 n.3  (1945)

(citing statement by Senator and future Supreme Court Justice Hugo Black that the FLSA's

definitions of "employee" and "employ," including the "suffer-or-permit" standard, were "the

broadest definition that has ever been included in any one act.") (quoting 81 Cong. Rec.

7657 (1937)); *id.* at 362 ("A broader or more comprehensive coverage . . . would be difficult

to frame."); *accord Fegley v. Higgins*, 19 F.3d 1126, 1132 n.5 (6th Cir. 1994) (citing the same

statement).   Such broad language reflects Congress' conscious rejection of some lower

standard, under which, for example, employers would have only needed to pay for the

amount of time recorded by the employee.  *See, e.g., Burry v. Nat'l Trailer Convoy, Inc.*, 338

F.2d 422, 426 (6th Cir. 1964) (rejecting defendants' argument that they were only required to pay for the time plaintiffs recorded on timesheets); *accord Chao v. Gotham Registry*, 514 F.3d at 286, 288-90 (holding that under the "suffer or permit" standard, even work that was not "**authorized**" by the employer was still compensable) (emphasis added); *Burch v. Qwest Commc'ns Int'l*, 677 F. Supp. 2d 1101, 1115 (D. Minn. 2009) (noting that "[t]he law does not require that employees be **compelled** to work overtime to bring an FLSA claim; it is enough that the employer suffers or permits the work") (emphasis added).

There are at least three sound reasons underlying Congress's policy decision to use the broad "suffer or permit" standard:

First, the primary purpose of the FLSA is to protect workers, not employers. *See* 29 U.S.C. § 202; *e.g.*, *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1153-54 (9th Cir. 2000) (rejecting defendants' argument that the FLSA's purpose is to protect employers as well as employees, holding that "[d]espite [the Portal-to-Portal Act], the Supreme Court [has] consistently found that the central purpose of the FLSA is . . . to protect employees.") (citing *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). Therefore, Congress made employers, not employees, responsible for ensuring that they pay for all work they permitted employees to perform. 29 C.F.R. § 785.13 (providing that an employer "cannot sit back and accept the benefits [of employees' work] without compensating for them."). This standard ensured that hourly employees would receive all their wages, irrespective of the hourly employees' education level, bargaining power, or knowledge of wage-and-hour law. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945) ("The legislative debates indicate that the prime purpose of the legislation was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked

sufficient bargaining power to secure for themselves a minimum subsistence wage."). As the Supreme Court has held, even employees who "vehemently protest" being paid properly, must still be paid as required by the FLSA despite their protests. *Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 302 (1985). Congress's decision to adopt the "suffer or permit" standard removes incentives for employers to pay for less than all time by directly or indirectly encouraging their employees to not seek payment for all work time. *Id*.

Second, the overtime provisions protect workers, not only by ensuring that employees are adequately compensated for overtime work, but also by creating financial pressure for employers to spread work and wages among more employees. *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 577-78 (1942); *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009); *Gotham Registry*, 514 F.3d at 290 (describing "the FLSA's incentive structure to reduce overtime, spread employment and compensate workers for the burden of long hours.") (citing *Missel*, 316 U.S. at 577-78). If an employer only had to pay an employee for work the employee specifically asked to be paid for, then that unrecorded work would not be spread to others in the workforce, who are among the principal beneficiaries of the act. *See Missel*, 316 U.S. at 577-78.

Third, the FLSA was designed to prevent employers from obtaining a competitive advantage over other employers by engaging in conduct that harms employees. *See* 29 U.S.C. § 202(a)(3), (b) (stating that underpayment of workers "constitutes an unfair method of competition," and that the policy of the FLSA is to "eliminate" such unfair competition); *see also Citicorp. Indus. Credit, Inc. v. Brock*, 483 U.S. 27, 36-37 (1987) (noting that the FLSA "reflects Congress' desire to eliminate the competitive advantage enjoyed by goods produced under substandard conditions") (citing *United States v. Darby*, 312 U.S. 100, 115 (1941));

*accord Chao v. Hospital Staffing Servs., Inc.*, 270 F.3d 374, 387 (6th Cir. 2001) (quoting *Citicorp.*, 483 U.S. at 36-37).   If employers were required to pay only for time employees report, employers who managed to find ways to encourage employees to work without reporting their time would have an unfair competitive advantage over employers who paid their employees for all time worked.

Thus, the FLSA imposes the statutory burden on employers—not on employees—to make sure employees are paid for all time the employer "permits" them work.  The statute does not regulate both employer and employee conduct, but instead, requires employers—and employers alone—to make sure all work time is paid. The requirement attaches to pay for such work immediately upon the employee performing work, and there simply is no exception under the FLSA to an employer's obligation to pay for all work it permits a non-exempt employee to perform.  *Gotham*, 514 F.3d at 287; *Kuebel,* 643 F.3d at 363 ("an employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable").

Consistent with these purposes, courts liberally construe the FLSA to protect employees.  *E.g.*, *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 585 (6th Cir. 2002) (noting "that the FLSA, as a statute designed to protect individual rights, is 'remedial and humanitarian in purpose,' and 'must not be interpreted or applied in a narrow, grudging manner.'") (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, (1944)); *Fegley*, 19 F.3d at 1132 (holding that because "[t]he FLSA is designed to be a 'broadly remedial and humanitarian statute,'" therefore the court "'construe[s] the Act's definitions liberally to effectuate the broad policies and intentions of Congress.'") (quoting *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 143 (6th Cir. 1977)); *see also Mitchell v. Lublin,*

*McGaughy & Assocs.*, 358 U.S. 207, 211 (1959) (noting that the FLSA is to be "construed liberally to apply to the furthest reaches consistent with congressional direction.").

Hence, the FLSA makes it clear that *all* work suffered or permitted must be compensated, not just work that is reported by employees.

### B.    Constructive Knowledge Requires Active Investigation by Employers

As discussed above, even when an employer lacks actual knowledge of work performed, it is still liable to pay employees for work time that it should have known occurred. *E.g.*, *Dep't of Conservation & Natural Res.*, 28 F.3d at 1082 (holding that to determine whether the employer "permitted" the work at issue, "a court 'need only inquire whether the circumstances . . . were such that the employer either had knowledge [of overtime hours being worked] or else had 'the opportunity through reasonable diligence to acquire knowledge.'") (quoting *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir.1969)). Consistent with the policies underlying the FLSA, employers are presumed, consistent with practical reality, to be able to know what happens in their business. As the Eleventh Circuit held, "The cases must be rare where prohibited work can be done and knowledge or the consequences of knowledge avoided." *Dep't of Conservation & Natural Res.*, 28 F.3d at 1082 (citing *Gulf King Shrimp*, 407 F.2d at 512 (5th Cir.1969); *People ex rel. Price v. Sheffield Farms-Slawson-Decker Co.*, 225 N.Y. 25, 31 (1918) (Cardozo, J.)).

The "suffer or permit" standard imposes on an employer an affirmative "duty to inquire into the conditions prevailing in his business." *Id.* Therefore, "a court need only inquire whether the *circumstances* were such that the employer had the opportunity through reasonable diligence to acquire knowledge" of the overtime hours being worked. *Id.* (emphasis in original). Therefore, "[a]n employer does not rid himself of that duty because the extent of

- 15 -

the business may preclude his personal supervision, and compel reliance on subordinates."
*Id.; accord Allen v. Bd. of Public Educ. for Bibb County*, 495 F.3d 1306, 1321 (11th Cir. 2007);
*Ketchum v. City of Vallejo*, 523 F.Supp.2d 1150, 1163 (E.D. Cal. 2007). An employer cannot
"indulge[] in conscious myopia and studied indifference" to the work its own employees are
performing that benefit the employer. *Gulf King Shrimp Co.*, 407 F.2d at 514.  Put simply, an
employer cannot evade the FLSA "simply by ignoring the reality of what was occurring in its
places of business." *Martin v. Funtime, Inc.*, 792 F.Supp. 539, 542 (N.D. Ohio 1991).

For example, in *Department of Conservation and Natural Resources*, the Eleventh Circuit
held an employer was liable for overtime worked even though the employer had no actual
knowledge the time was worked, the employer had repeatedly told employees verbally and in
writing not to work the time, and the employees certified repeatedly to the employer that
they had not worked any overtime. *Id.* at 1083-84. Liability attached because the employer
should have inquired about what was going on in its own business, and had it done so with
reasonable diligence, it would have known the amount the employees were working. *Id.*  The
Fifth Circuit reached the same holding under similar facts in *Brennan v. Gen. Motors Acceptance
Corp*, 482 F.2d 825, 827-28 (5th Cir. 1973) (holding employer liable for unreported work
about which upper management had no knowledge because an employer should have found
out how much its employees are working by investigating the issue).

Both of these cases found constructive knowledge, even though the work was off the
employer's premises, outside the view of supervisors, against company policy, and not
reported to the employer. The cases demonstrate, therefore, that it is virtually impossible for
an employer to claim that it had no reason to know, through reasonable diligence, about
work performed by employees on the job site, in view of supervisors, and consistent with

company policy. *See Gulf King Shrimp*, 407 F.2d at 513. Courts are rightly "skeptical" of claims that an employer is oblivious to what is going on in its own business and, therefore, powerless to prevent employees from working for the employer's benefit. *Gotham*, 514 F.3d at 291.

An employer cannot successfully claim that it lacks constructive knowledge of the work its employees do if it has not undertaken "every effort" to prevent employees from working time that it has determined not to pay for.  As the Department of Labor regulations make clear, "it is the duty of management to exercise its control and see that the work is not performed if it does not want it to be performed.  It cannot sit back and accept the benefits without compensating for them." 29 C.F.R. § 785.13.

Courts do not hesitate to impose liability when employers fail to act accordingly. *E.g.*, *Gotham*, 514 F.3d at 291 ("[T]he law does not require Gotham to follow any particular course to forestall unwanted work, but instead to adopt all possible measures to achieve the desired result. Gotham has not persuaded us that it made every effort to prevent the nurses' unauthorized overtime.") (citing 28 C.F.R. § 785.13); *Mumbower v. H.R. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975) (holding that employees who work during their unpaid meal breaks must be paid for that time, even if they did so without the employer's request—"[t]he employer who wishes no such work to be done has a duty to see it is not performed. He cannot accept the benefits without including the extra hours in the employee's weekly total for purposes of overtime compensation. If the employer has the power and desire to prevent such work, he must make every effort to do so."); *Brown v. L & P Indus., L.L.C.*, No. 04-0379, 2005 WL 3503637, at *6 (E.D. Ark. Dec. 21, 2005) (holding that, although the employer "was entitled to deduct lunch breaks from [the employee's] working hours," it could "only

[do so] if [the employee] was relieved of all duties during that time") (citing 29 C.F.R. §785.13); *Alexander v. Wackenhut Corp.*, No. 07-262, 2008 WL 2697163, at *5 (E.D. La. July 1, 2008); *Mendez v. Brady*, 618 F. Supp. 579, 582 (W.D. Mich. 1985) (holding employer liable because it made no effort to prevent unpaid work).

### C.   All Time the Employer Knew or Should have Known Employees Worked During Automatically Deducted Meal Periods Must be Paid

The same requirement that employers pay for all time that they "suffer or permit" their employees to work, including all time that they know or have reason to know their employees are working, applies to work performed during meal periods.

When an employer chooses to automatically deduct meal periods from its employees' shifts, it has predetermined that, as a matter of policy, it will not pay its employees for a portion of their shifts.  In enacting such a policy, the employer assumes that its employees are not working during the meal period and, logically, therefore, it takes on the responsibility to verify that this assumption is true.  *See, e.g.*, 29 C.F.R. 516.2(a)(7) (providing that employers must keep accurate records of the hours worked each day by their employees).  Moreover, when an employer permits its employees to work during their unpaid meal periods, *every single failure* to accurately record that work will count against the employees, and will work to the employer's financial benefit.  Not surprisingly, then, the United States Department of Labor ("DOL") has specifically warned health care employers that "[w]hen choosing to automatically deduct 30-minutes per shift, [they] must ensure that [their] employees are receiving the full meal break."  Dep't of Labor, Wage & Hour Div., Fact Sheet # 53 – The Health Care Industry and Hours Worked (citing 29 C.F.R. § 785.19) (attached to the Affirmation of Sarah Cressman ("Cressman Aff.") as Exhibit D); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2007-1NA, at 1 (May 14, 2007) ("the employer's

proposal to discontinue the use of a time clock to record the meal period does not violate the FLSA so long as the *employer* accurately records actual hours worked, including any work performed during the lunch period") (emphasis added) (attached to the Cressman Aff. as Exhibit C).

The DOL has explained multiple times that, if a hospital with an automatic meal break deduction policy—like Kaleida—does not ensure that its employees actually receive a full meal period, then *each* interrupted or missed meal period counts as work time, and the hospital must pay its employees for that time. *See id.*; U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2008-7NA, at 1 (May 15, 2008) (explaining to a hospital that it was responsible under the FLSA to pay for all time worked during unpaid meal periods, even if the employee violated hospital policy by failing to record missed or interrupted meal breaks in an exception log) (attached to the Cressman Aff. as Exhibit B). If the hospital instructs its employees to record their missed or interrupted meal periods in an exception log, then the hospital is responsible to pay them for missed or interrupted meal periods, even when they fail to comply with such instructions. Opinion Letter FLSA2008-7NA, at 1.

Courts also recognize this rule. For example, most recently, in *DeMarco v. Northwestern Memorial Healthcare*, No. 10-397, 2011 WL 3510896 (N.D. Ill. Aug. 10, 2011), the court denied the hospital's motion for summary judgment. *Id.* at *6. The hospital had argued that because it had instructed its employees to record their missed or interrupted meal periods, it could not have constructive knowledge of missed or interrupted meal periods that went unrecorded, and could therefore not be held liable for failing to pay its employees for unrecorded work during their meal periods. *Id.* at *3-4. The court rejected that reasoning as inconsistent with the FLSA's suffer or permit standard:

> [The hospital] essentially asks: If a large employer allows its employees to record their own time, how can it be liable for failing to pay overtime when a particular employee did not record all the time she worked? And if [the employee] did not record all of her work time, isn't that her fault rather than [the hospital]'s? The law answers those questions in [the employee]'s favor. The governing regulation provides that [the hospital] **cannot shield itself from an FLSA . . . overtime claim simply by adopting policies that prohibit unreported overtime and that place on [the employee] the onus of recording her own time**.

*Id.* at *4-5 (citing 29 C.F.R. § 785.13; *Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1072 (N.D. Ill. 2005)) (emphasis added); *accord Barvinchak*, 2007 WL 2903911 at *13-14 (holding a hospital liable for unrecorded work during meal periods even though the hospital trained employees to record meal period interruptions and paid employees for meal period interruptions that were recorded); *Chao v. Self-Pride, Inc.*, No. 03-3409, 2005 WL 1400740, at *8 (D. Md. June 14, 2005) (holding employer liable because it "made no effort to ensure that employees actually took the breaks before deducting the time from employee wages.").

### D.    Kaleida's Policy to only Pay for Work Recorded by Employees During Meal Periods Violates the FLSA

Under this framework, there are only two ways an auto deduct policy, like Kaleida's, can be lawful under the FLSA.  The employer must either: (1) ensure that employees always receive their full, uninterrupted meal period; or (2) accurately record all time worked during the meal period.  Here, there is no dispute that Kaleida does not comply with (1) because its employees frequently work during their meal periods.  Therefore, in order for Kaleida's auto deduct policy to be lawful, Kaleida must comply with (2) by accurately recording all time worked by employees during their meal periods.

There is no dispute that the sole method Kaleida utilizes to capture time worked by employees during their automatically deducted meal periods is employee reporting.  Pltfs.'

Stmt. ¶ 8.   However, as a matter of corporate policy, Kaleida makes no additional efforts to determine whether the employee reporting accurately captures all time worked by employees during their meal periods.   The problem with that approach is that Kaleida's policy to pay for only reported work fails to satisfy its obligation to pay for all work that it is actually or constructively aware of, and thus constitutes a violation of the FLSA, because Kaleida knows or should know that its employees are performing much more work during meal periods than they report.   By prospectively deducting time and not ensuring the meal periods were actually taken, constructive knowledge principles place an obligation on Kaleida to record and pay for every missed or interrupted meal period.   And that is exactly what Kaleida failed to do.

Indeed, the evidence in this case that Kaleida should have known that employees worked more time during their meal periods than was recorded, and therefore paid, is abundant and not disputed:

- Kaleida received NDNQI reports which demonstrated that employees were performing work during meal periods at much greater percentages than meal periods were actually cancelled as demonstrated in its own payroll records, *see* Pltfs.' Stmt. ¶¶ 11-15;

- Kaleida failed to implement any system for accurately recording work during meal periods, instead relying on a hodgepodge of methods implemented at the department level, *see* Pltfs.' Stmt. ¶ 10;

- Kaleida conducts no audits or other investigations concerning time recording to inquire and ensure that all time worked is recorded and paid, *see* Pltfs. Stmt. ¶ 16.

- Employees performed work during meal periods, and the work was performed on Kaleida's premises and in plain sight, *see* Pltfs.' Stmt. ¶¶ 2-3;

- Kaleida failed to provide training to employees concerning reporting work during missed and interrupted meal periods, *see* Pltfs. Stmt. ¶¶ 5-6;

- Supervisors discouraged employee reporting by yelling at them for being inefficient if they tried to report a missed meal period and telling them there

had to be extenuating circumstances to use the exception log for missed meal periods.  *See* Exhibit F, Militello Aff ¶ 14, Malkowski Aff. ¶ 13.

Kaleida is therefore liable to pay for all the remaining meal period work its employees have performed but that was not captured by Kaleida's defective policy.   Accordingly, because there is no genuine dispute regarding the facts material to this claim, plaintiffs are entitled to judgment as a matter of law on their claim that Kaleida's employee reporting policy does not meet its obligation under the FLSA to pay for all hours it reasonably knows or should know employees worked.

## II.   FOR THE SAME REASONS, DEFENDANTS ARE ALSO LIABLE UNDER THE NYLL

Because the NYLL mirrors the FLSA, defendants are also liable to the plaintiffs under the NYLL.

Under the NYLL, wages for all "labor or services rendered" must be paid to the employee within the time specified by statute and/or the Commissioner of Labor.  N.Y. Lab. Law §§ 190(a), 191.  "If the employer fails to make timely payment, an employee can seek to recover unpaid or underpaid wages (article six), and unpaid overtime for hours worked in excess of forty per week (article 19 and 12 N.Y.C.R.R. 142-2.2), by either filing a complaint with the Commissioner, § 196-a, or commencing an action, §§ 198, 663."  *See* November 19, 2009 Decision and Order at 7-8 (Dkt. No. 222); *Gordon v. Kaleida Health*, Civ. Action No. 08-cv-378S, 2009 WL 4042929, at *4 (W.D.N.Y. Nov. 19, 2009).  Similarly, unauthorized deductions from wages are prohibited.  N.Y. Lab. Law § 193.

NYLL, like the FLSA, defines "employed" to include "permitted or suffered to work." *See* N.Y. Lab. Law § 2(7); New York State Department of Labor Opinion Letter, RO-09-0129 (February 25, 2010) (attached to the Cressman Aff. as Exhibit A); 29 U.S.C. § 203(g).  The

New York statutes and regulations incorporate FLSA standards to determine whether time worked is compensable time, i.e., whether the employee was suffered or permitted to work. *See* N.Y. Lab. Law § 651(5); 12 N.Y.C.R.R. 142-2.2; *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003) ("Because New York Labor Law and the FLSA embody similar standards . . . I will consider the federal law."); *Jiao v. Chen*, Civ. Action No. 03 Civ. 0165 (DF), 2007 WL 4944767, at *9 n. 12 (S.D.N.Y. Mar. 30, 2007); *Zheng v. Liberty Apparel Co.*, Civ. Action No. 99 Civ. 9033, 2002 WL 398663, at *6 n. 3 (S.D.N.Y. Mar. 13, 2002) ("[T]he same analysis applies for both the FLSA and [the New York regulations]."); *Lopez v. Silverman*, 14 F. Supp. 2d 405, 411 n. 4 (S.D.N.Y. 1998) ("[T]he legal issues involved in plaintiffs' state-law causes of action are governed by the same standards as those applicable to their FLSA claims.").

Thus, because liability under NYLL for failing to pay employees for time worked during their automatically deducted meal periods is determined based on the same standard that applies under the FLSA, defendants are also liable to plaintiffs under the NYLL in this case.[8]

---

[8]    The NYLL imposes liability for all uncompensated hours – both hours above and below 40 in a week, with hours above 40 to be paid at premium rates.  New York State Department of Labor Opinion Letter, RO-09-0129 (February 25, 2010) (attached to the Cressman Aff. as Exhibit A); 12 NYCRR § 142-2.2.  In addition, the NYLL statute of limitations extends back six years from the filing of the complaint.  N.Y. Lab. Law § 198(3).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment should be granted.

Dated: July 8, 2013

**THOMAS & SOLOMON LLP**

By:     <u>s/ Michael J. Lingle</u>
         J. Nelson Thomas, Esq.
         Michael J. Lingle, Esq.
         Sarah E. Cressman, Esq.
          *Attorneys for Plaintiffs*
         693 East Avenue
         Rochester, New York 14607
         Telephone:  (585) 272-0540
         nthomas@theemploymentattorneys.com
         mlingle@theemploymentattorneys.com
         scressman@theemploymentattorneys.com