UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CATHERINE GORDON, JAMES SCHAFFER, TERESA
THOMPSON, PAMELA MIKA, JENNIFER PFENTNER
and DIANA GALDON, on behalf of themselves and all
other employees similarly situated,

Plaintiffs,

- vs -

KALEIDA HEALTH, et al.

Defendants.

**Civil Action No.
08-CV-00378 (WMS)**

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' OBJECTIONS TO THE
DECISION AND ORDER OF MAGISTRATE JUDGE LESLIE G. FOSCHIO DENYING
KALEIDA'S MOTION TO DISQUALIFY CONSULTING EXPERT**

Defendants Kaleida Health, et al. ("Defendants" or "Kaleida"), by their attorneys Nixon

Peabody LLP, submit this Reply in further support of their Objections to Magistrate Judge

Foschio's Decision and Order, dated May 21, 2013, Docket No 462 ("Decision and Order"),

which erroneously denied Kaleida's motion to disqualify Plaintiffs' ESI expert consultant, D4.

D4 was previously engaged by Kaleida in this same action to provide expert consulting services.

In their Opposition Plaintiffs merely repeat the same erroneous bases relied upon by the Decision

and Order, such as concentrating on the scanning and coding process rather than on the

confidential communications between Kaleida and D4 to *develop* the correct categories to

highlight the data Kaleida required for its defense of this action; and downplaying the

impropriety of plaintiffs' counsel communicating directly with Mr. Karahasanovic about the

work done for Kaleida.  Plaintiffs' counsel's indiscrete communication with Mr. Karahasanovic

about the details of the project for Kaleida highlights the true motivation for plaintiffs in insisting

14526130.1

on using D4 despite ample notice and Magistrate Judge Foschio's initial admonishment that they

retain new experts, and it was clearly error to give it such short shrift in the Decision and Order.

### A.  Kaleida Revealed Confidential Information to D4, and D4 breached this Confidentiality

While both the Court and Plaintiffs' counsel focus on the scanning and coding aspect of

D4's project for Kaleida, they ignore the confidences revealed to Mr. Karahasanovic to

determine which coding categories would be the most beneficial to Kaleida within its litigation

strategy.

The motion to disqualify D4 aimed at protecting Kaleida's confidences from the risk of

disclosure to opposing counsel.  The risk was well-founded.  Plaintiffs' counsel communicated

directly with Mr. Karahasanovic, already speculating without any basis that Kaleida had not

engaged in confidential communications with D4.  They put the horse before the cart, thus, in

arguing that they could communicate with D4 about the project because it was not confidential

when this was the conclusion they sought to prove by communicating with D4.  Tellingly, they

did not submit affidavits from Coon and Courtney stating they had not communicated with Mr.

Karahasanovic about the project for Kaleida.  It is now clear that such affidavits would have

been untrue.

In the Decision and Order the Court erroneously found that the record supported that D4

employee Mr. Karahasanovic "had no contact with the Advisory and Consulting Group and

neither received nor disclosed Defendants' confidential information to Coons and Courtney"

regarding his work for Kaleida.  (Decision and Order, Docket No. 462, p. 27).  While Kaleida

was not privy to communications within D4, Kaleida argued that Mr. Karahasanovic had clearly

discussed the details of D4's work for Kaleida, as he submitted a detailed affirmation to the

Court which was crafted by Plaintiffs' counsel.  Ms. Cressman's affirmation in support of the

unfounded request for sanctions demonstrates that Mr. Karahasanovic discussed in detail D4's

work for Kaleida with Ms. Courtney.  Plaintiffs seek to recover $2,362.50 "for consulting

services provided by Cynthia Courtney to assist in preparing the Affirmation of Amir

Karahasanovic" Docket No. 468-1, ¶16.  Hence, Kaleida was correct in its assertion that D4 had

failed to preserve Kaleida's confidences within D4 and from Plaintiffs' counsel, and Judge

Foschio's finding to the contrary was in error.

It is now evident that there was no support in the record, and it was simply false, that Mr.

"Karahasanovic had no contact with the Advisory and Consulting Group about scanning and

coding project." (Decision and Order, Docket No. 462, p. 27).  In his affidavit Mr.

Karahasanovic stated that "upon information and belief," Coon and Courtney did not work on

the Kaleida project.  Docket No. 393, ¶23.  The affidavit also states that Mr. Karahasanovic was

not working on and had not discussed with Coon and Courtney D4's project <u>for Plaintiffs</u>, which

is irrelevant.  Docket No. 393, ¶23.   Tellingly, the affidavit does not state that he did not discuss

with Plaintiffs' counsel and Coon and Courtney D4's project <u>for Kaleida</u>.  D4 improperly, and in

breach of their agreement with Nixon Peabody, talked freely with Plaintiffs' counsel about its

project for Kaleida.

   B.  **Kaleida Reasonably Believed a Confidential Relationship Existed with D4 and Consistently Sought to Protect its Confidential Information**

For unknown reasons, the Decision and Order placed undue weight on the affidavit of

Mr. Karahasanovic, which was done in breach of a confidentiality agreement and for clearly self-

serving reasons, and was distrustful of the statements of Ms. Roney, an officer of the Court.  In

Magistrate Judge Foschio's Decision and Order in another case, *Hinterberger v. Catholic Health*,

Judge Foschio footnoted that he disbelieved Ms. Roney in the *Gordon* matter, but made no

3

similar finding in the Decision and Order here.  *Hinterberger v. Catholic Health Systems*, Docket

No. 455, p.57, fn. 23 (stating it was implausible that Ms. Roney was not aware that Ms. Courtney

participated in a conference call on behalf of plaintiff) *with* Decision and Order, Docket No. 462,

p. 11 (acknowledging that Ms. Roney denied awareness that Ms. Courtney participated in the

conference call).  Specifically, Magistrate Judge Foschio stated that he doubted that Ms. Roney

was unaware that D4 consultants participated on a conference call as plaintiffs' experts, as she

had attested in her Declaration.  *Hinterberger v. Catholic Health Systems*, 08-cv-380, Docket No.

455, p.57, fn. 23.  *See* Docket No. 402, ¶21.  Waiver of the privilege by defense counsel was not

seriously argued by plaintiffs in the *Gordon* matter (it was in the *Hinterberger* matter), and Ms.

Roney's persistent opposition to plaintiff's retention of D4 was well-documented and consistent.

Magistrate Judge Foschio's attribution of falsehoods to Ms. Roney statements (within the

*Hinterberger* decision) was unfounded.

  This unfounded disbelief permeated throughout the Decision and Order here.  For

example, as Kaleida had a confidentiality provision and project-specific assurances of

confidentiality, it should not have surprised the Court that Kaleida and Nixon Peabody felt free

to explain to D4 insights into its litigation strategy, insights which were, furthermore, necessary

to properly develop the effecting coding strategies.  (*See* Docket No. 462, p. 24).

  The Decision and Order ignored the fact that Kaleida had undoubtedly insisted on

confidentiality from D4.  The Decision also ignored that D4 had asked for waiver from defense

counsel to work with Plaintiffs, on several occasions, and was denied each time. Docket No.

377-1, ¶14; Karahasanovic Affidavit, Docket No. 393, ¶19-21.  Thus, D4 understood the

confidentiality that Defense counsel and Kaleida expected of them.  To now feign ignorance of

their responsibilities by discussing the project with Kaleida with Plaintiffs is illogical.  It was

clear error to find that Kaleida had no reasonable belief that a confidential relationship with D4 existed.

Finally, the Decision and Order erred in faulting Kaleida for not publicly divulging the confidences it sought to keep confidential.  Kaleida's offer to provide details to the Court *ex parte* was the only balance that Kaleida could offer to provide the necessary information while maintaining the reason for bringing the motion, to keep its work with D4 confidential.  The Decision and Order erroneously dismissed Kaleida's offer to provide the details of the project with D4 ex parte as a "throwaway line" seeking judicial guidance.  Docket No. 462, pp. 49-50. Kaleida's efforts to maintain confidentiality were not a ploy to obtain judicial guidance, as well-reflected in its motion, which included redacted communications with D4 in an effort to meet its burden of proof while protecting the confidentiality of those communications.  See Docket No. 377-1, ¶¶7-10; Docket No. 377-3, Redacted email between D4 and Nixon Peabody Senior Legal Technology Specialist Josh Headley.

While Magistrate Judge Foschio faulted the defendants in the *Hinterberger* motion for not providing an affidavit from the Nixon Peabody staff that communicated with Mr. Karahasanovic, he failed to note that in the present matter an affidavit was submitted from the person who communicated with Mr. Karahasanovic.  Ms. Roney specifically stated that:

> "Mr. Karahasanovic was our only client contact at D4; our paralegals and I spoke with him telephonically, exchanged e-mail communications and met with him in our office on multiple occasions to discuss the project for Kaleida.  Those discussions included an explanation of what the case was about, what the significance was to us of the documents that we were retaining D4 to code, what was important to us and what was not important to us, and what we were looking for, and why.  Although the documents that we shared with Mr. Karahasanovic contained much information, we discussed with Mr. Karahasanovic the areas that we wanted coded as important to our litigation strategy and defense.  This definitely included discussions as to the content of the documents in relation to the claims of the case.  Mr. Karahasanovic brought to our attention questions

raised by the people working on the project and he himself also brought to us documents to review with questions."

Docket No. 402, ¶4.   Further as the person directing the *Gordon* litigation at Nixon Peabody, Ms. Roney could properly describe the communications that the Nixon Peabody team had with Mr. Karahasanovic, without requiring affidavits from each of them.

### C.  It Was Obviously Inappropriate for Plaintiffs' Counsel to Communicate with Mr. Karahasanovic

Plaintiffs' counsel ignores, as did the Decision and Order, their extremely inappropriate communication with Mr. Karahasanovic asking for details of D4's project for Kaleida. Obviously, they reached the convenient conclusion following the discussion that there was there was no confidential relationship between D4 and Kaleida.  Even if this conclusion was correct, which it is not, what was their plan, if after talking to D4, they concluded that Kaleida's confidences had been revealed.  Would they have admitted their ethical error, subjected themselves to sanctions and disqualified themselves?  That is precisely the reason why communicating with Mr. Karahasanovic was entirely inappropriate from the outset.  Their opposition to the motion, and any semblance of ethics, required them to support their premade conclusion that no confidential relationship existed, thus, it is not surprising that they claim to have found exactly that.

While the Decision and Order, in discussing the "public interest" prong of the disqualification test, simply states that Plaintiffs' counsel does not have in-house e-discovery expertise, it ignored the clear public interest in the preservation of ethics.  *See Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575 (D.N.J. 1994) (Expert and defense counsel were disqualified where expert retained by plaintiff and who was provided with privileged information accepted a retainer from defense counsel several months later.  In disqualifying counsel, the court held the

6

"fairness and integrity of the judicial process and Plaintiff's interest in a trial free from the risk that confidential information has been unfairly used against him must also be considered and outweighs Defendant's interest … The preservation of public trust is paramount");

*MMR/Wallace Power & Indus., Inc. v. Thames Associates*, 764 F. Supp. 712, 718 (D. Conn. 1991) ("There can be no doubt that the spirit of the ethical norms adhered to in this district, if not the letter of the Rules of Professional Conduct themselves, precludes an attorney from acquiring, inadvertently or otherwise, confidential or privileged information about his adversary's litigation strategy.").

Plaintiffs' counsel was amply informed of this conflict, as was D4.  Judge Foschio seemed to originally recognize the risk of disclosure of confidential information inherent in this conflict.  Docket No. 377-5, Transcript of January 11, 2012 Status Conference, p.43.  The risk was materialized by Plaintiffs' counsel's decision to communicate directly and without restraint with D4 about its project for Kaleida.  It was in error not to grant Kaleida's motion to disqualify D4.

## CONCLUSION

For the foregoing reasons, Defendants ask that the Court review Magistrate Judge Foschio's Decision and Order and find that D4 must be disqualified as Plaintiffs' expert ESI consultant, and for such other relief as the Court might deem just and proper.

Dated:  Buffalo, New York
      July 12, 2013                    **NIXON PEABODY LLP**

                                   By:    /s/ Susan C. Roney
                                      Susan C. Roney, Esq.
                                40 Fountain Plaza, Suite 500
                                Buffalo, New York   14202
                                Tel:  (716) 853-8100
                                Email:  sroney@nixonpeabody.com

Jonathan W. Greenbaum, Eq.
**COBURN & GREENBAUM PLLC**
1710 Rhode Island Ave, NW
Second Floor
Washington, DC   20036
Tel:  (202) 657-5006
Email:  jg@coburngreenbaum.com

*Attorneys for Defendants*


TO:    J. Nelson Thomas, Esq.
       Michael J. Lingle, Esq.
       Sarah E. Cressman, Esq.
       THOMAS & SOLOMON LLP
       *Attorneys for Plaintiffs*
       693 East Avenue
       Rochester, New York   14607