UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CATHERINE GORDON, et al.,

               Plaintiffs,

     v.

KALEIDA HEALTH, et al.,

               Defendants.

**DECISION AND ORDER**
08-CV-378S

## I. INTRODUCTION

Six Plaintiffs commenced this putative collective/class action on May 22, 2008, claiming that Defendants, a health care network and certain of its officers and member entities, violated the: Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), Employee Retirement Income Security Act ("ERISA"), Racketeering Influenced Corrupt Organizations Act ("RICO"), and New York common law by failing to pay hourly employees for all hours worked and/or overtime for hours worked over 40 per week.

There are four motions presently before the Court: (1) Plaintiffs' motion for Rule 23 class certification (Docket No. 408), (2) Defendants' motion to strike Plaintiffs' motion for certification of a "rounding" class (Docket No. 427), (3) Defendants' motion for summary judgment dismissing certain of the New York minimum wage order and labor law claims of Plaintiffs Gordon, Mika and Thomson (Docket No. 431), and (4) Plaintiffs' motion for partial summary judgment (Docket No. 474).

For the reasons stated below, Plaintiffs' motions are denied and Defendants' motions are granted.

1

## II.  BACKGROUND

### A.   Procedural Background and Pending Motions

In their Complaint, Plaintiffs alleged that Defendants were applying three policies within their facilities that gave rise to, inter alia, violations of statutory wage and overtime requirements. Only two are relevant to the pending motions. First is a "Break Deduction Policy," pursuant to which a meal break is deducted automatically from the pay of hourly workers.  According to Plaintiffs, this policy is applied even when employees are required to perform patient care duties during all or some portion of the meal period. Next is an "Unpaid Preliminary and Postliminary Work Policy" under which Defendants do not pay employees for work performed before and/or after their scheduled shifts.

Within one week after filing their Complaint, Plaintiffs moved for conditional certification of a FLSA collective action, under 29 U.S.C. § 216(b).  On July 1, 2008, Defendants responded by moving to dismiss the Complaint in its entirety. Thereafter, Plaintiffs voluntarily dismissed all but their FLSA and NYLL claims. These statutory claims survived Defendants' motion to dismiss, and Plaintiffs were directed to file an Amended Complaint that included only the claims that remain. (Docket No. 149, as amended by Docket No. 232.)

On October 14, 2009, this Court issued a decision on Plaintiffs' motion for conditional FLSA certification and concluded that the class description Plaintiffs had proposed  was overly vague and not supported by the allegations and affirmations on record. The Court did, however, find there was a sufficient basis to conditionally certify a class that included a limited number of job titles and work locations—more specifically, "all

present and former hourly registered nurses, staff nurses, licensed practical nurses, and respiratory therapists who perform(ed) patient care duties" at nine hospitals and skilled nursing/long-term care facilities. (Docket No. 228.)

Plaintiffs filed their Amended Complaint on December 15, 2009 (Docket No. 235, "Am. Compl."), naming as Defendants Kaleida Health, eighteen of its network entities, and two of its officers (id. Caption, ¶¶ 23, 48), which will together be referred to as "Kaleida." Discovery had commenced prior to filing of the Amended Complaint and continued for nearly three more years.

On October 29, 2012, Plaintiffs moved, under Rule 23 of the Federal Rules of Civil Procedure, for certification of two classes of claims under the New York Labor Law. The first involves the Break Deduction Policy, which Plaintiffs now appear to concede is not an unlawful practice in and of itself. Rather, they urge that Kaleida relies on hourly employees "to provide urgent and around-the-clock services" at its locations, but has a policy of paying for time worked during meal breaks only when an employee affirmatively reports having missed or been interrupted during a meal period. According to Plaintiffs, Kaleida knows employees do not always report missed or interrupted meal breaks, but it does not take steps to ensure they are compensated for the unreported time. (Docket No. 409 at 1.)

The second class involves what Plaintiffs refer to as a "Rounding Policy," described as a timekeeping policy/system whereby the times clocked by hourly employees to record the start and end of their shifts are rounded forward and backward to the top of the hour, resulting in a loss of credit for time worked. (Id. at 1-2.) Each class is described as including all Kaleida hourly workers.

On December 7, 2012, Kaleida moved to strike Plaintiffs motion for a rounding class

3

on the ground that Plaintiffs had not previously asserted such a claim (Docket No. 427.) Kaleida quickly followed, on December 17, 2012, with a motion for summary judgment on certain of the New York Minimum Wage Order and Labor Law claims of Plaintiffs Gordon, Mika, and Thomson. (Docket No. 431.) Essentially, Kaleida contends these named Plaintiffs are exempt, or largely exempt, from state law wage and overtime provisions. (Docket No. 431-2.) On January 23, 2013, Defendants sought to stay discovery pending resolution of the certification-related motions. (Docket No. 447-1.) Plaintiffs did not oppose the request (Docket No. 447), and the stay was granted (Docket No. 450.)

On July 8, 2013, Plaintiffs moved for partial summary judgment on the question of Kaleida's liability relative to their meal break claims under both the FLSA and NYLL. (Docket No. 474.)

These four related motions were fully briefed as of November 1, 2013.[1] In light of the extensive materials submitted, the Court determined there was no need for oral argument.

## B.   Factual Background

### 1.   The Named and Putative Parties

Kaleida Health, a charitable organization, was formed in 1998 as an affiliation of existing healthcare entities including, at various times: five hospitals,[2] fourteen primary and

---

[1] Plaintiffs' request to file additional briefing was denied. Both parties continued to advise the Court of relevant newly-issued decisions thereafter.

[2] The five are: Buffalo General Medical Center ("Buff. General'), DeGraff Memorial Hospital ("DeGraff"), Millard Fillmore Gates Circle Hospital ("Millard Gates"), Millard Fillmore Suburban Hospital "Millard Suburban"), and Women & Children's Hospital of Buffalo ("Children's Hospital"). Each hospital has its own Vice President/President, and two hospitals have their own Human Resources Managers. (Docket No. 426-3 ¶¶ 7-8, 21.)

specialty care centers, an ambulatory surgery center, a home care agency operating in five counties, three long-term care facilities, nine school-based health centers, and various rehabilitation, laboratory, and adult day services. (Docket No. 426-3[3] ¶¶ 4-7.)

Kaleida employs approximately 8,550 nonexempt workers at over 27 locations. These employees work in over 448 departments across the system, and hold 388 separate job titles. (Id. ¶ 24.) After the Court conditionally certified a FLSA class comprised of only certain job titles and facilities, Kaleida produced a notice list identifying 5,380 potential class members. (Docket No. 410 ¶ 34.) Plaintiffs proposed class of all nonexempt Kaleida employees from 2002 would consist of approximately 18,700 individuals.

Network-wide, approximately 84 percent of Kaleida employees are represented by nine different unions, and their terms and conditions of employment are governed by twelve different collective bargaining agreements ("CBAs").[4] (Docket No. 426-3 ¶¶ 25-26.) 40.) The various entities pay overtime at different daily or weekly thresholds and, for unionized positions, that threshold is governed by the applicable union contract. (Id. ¶ 28.)

The six name Plaintiffs, three registered nurses and three respiratory therapists, are or were employed at one of four Kaleida hospitals and/or two long-term care facilities. Current and former employees falling within the conditionally certified FLSA class description were notified of this action and some have opted-in to this case (the "opt-in plaintiffs"). The putative plaintiffs, for purposes of Rule 23 certification, include a broader group of all current and former hourly Kaleida employees at all Kaleida facilities who were

---

[3] Declaration of Ellie Foster, Director of Labor Relations for Kaleida from February 6, 2005 to November 16, 2012, and Senior Labor Relations Specialist for approximately seven years prior.

[4] Pharmacists, social workers, research associates, and security personnel are some of the positions held by Kaleida's non-union hourly employees. (Id. ¶ 27.)

employed during the relevant time period.

2.   Kaleida Policies

Since April 2003, Kaleida has had a system-wide Timekeeping Standards Policy which requires that employees accurately report all time worked using the reporting mechanism(s) in place at their respective work sites. (Id. ¶¶ 33, 38, Exh. B.) In the event that a portion of a Kaleida policy conflicts with any collective bargaining agreement, the CBA's provisions dictate the terms and conditions of employment. (Id. ¶ 42.)

The Timekeeping Standards Policy is distributed to new employees during Kaleida's system-wide orientation, and instructions on clocking in and out are posted in each department. (Id. ¶¶ 34, 37, 47.) In addition, individual supervisors and managers are responsible for providing written instructions on correct timekeeping procedures to all employees working under their supervision, and must attest to having done so as part of their annual performance review. (Id. ¶ 37, 48.) Timekeeping policies, training materials, and updates also are posted on a computer intranet to which all employees have access. (Id. ¶ 46.)

Prior to 2003, Kaleida employees recorded their time in a variety of ways depending on the system in use in their respective departments and facilities. Manual time sheets, time clocks, telephone systems, and badge systems were among the various methods utilized. (Id. ¶ 31.) In 2003, Kaleida contracted with Kronos to provide a computer software system that would be used to record employee work hours at various affiliated entities. The Kronos system was implemented on a rolling basis from March 2003 to June 2004. Since then, employees record their time by telephone, badge swipe, and/or the use of exception logs. (Id. ¶¶ 30-31.) Department timekeepers—generally the manager or

6

supervisor[5]—review and approve employees' reported times and must correct for hours an employee did not record, or recorded incorrectly, before submitting time records to the payroll department. (Id. Exh. B.) Employees, in turn, are directed to report to their supervisor if there are corrections or changes that need to be made to their recorded time. (Id. ¶ 32, Exh. B.)

Under Kaleida's Timekeeping Policy, hourly employees are not permitted to clock in more than seven minutes before the beginning of their shift or more than seven minutes past the end of their shift unless authorized by their supervisor. The timekeeping system automatically rounds times that are entered within seven minutes of the scheduled start or end time. (Id. ¶ 39, Exh B at 2.) In other words, when an employee clocks in up to seven minutes before or after the beginning of his or her shift, or clocks out up to seven minutes before or after the end of the shift, the time is rounded forward or backward to the scheduled shift time. Clock-ins that are outside the seven-minute grace period are rounded to the nearest quarter hour. Clock-ins of eight minutes or more before a quarter hour interval are rounded back to the previous quarter hour, and clock-ins of eight minutes or more after a quarter hour interval are rounded forward to the next quarter hour. (Docket No. 410-3 at 2.) Employees who consistently clock in late and/or clock out early are subject to discipline. (Docket No. 426-3 Exh. B.)

Kaleida provides a 30-minute unpaid meal period to all hourly employees who work a shift longer than six hours. (Id. ¶ 40.)

A 30-minute meal period is automatically assumed and calculated by the

---

[5] Managers may designate someone else in the department to perform timekeeping duties, but the manager remains responsible for the accuracy of time submitted and paid. (Id., Exh. B.)

> automated time and attendance systems for all employees working any shift longer than six hours. An employee may only work through a meal period when required by management. Employees must notify and have management approval prior to working through the mealtime.

(Id. Exh. B.) When employees take their meal break on the premises, Kaleida does not require that they clock out and back in for meal periods; 30 minutes is deducted automatically from their clocked time. (Id. ¶ 41.) Timekeepers are instructed to maintain a process by which employees can report when they do not receive a full meal period, and are provided with complete discretion to select an appropriate reporting process based on the specific needs and environment of their department. (Id. ¶ 40). They also are trained on how to cancel the Kronos automatic meal deduction when an employee reports having worked during a meal period. (Id. ¶ 49, Exh. E.) In 2007, Kaleida paid employees for a total of 46,353 meal periods. (Id. ¶ 51, Exh. G.)

  3. Name Plaintiffs' Statements

   Although this case is fast approaching its six-year anniversary, not a single deposition has been taken. (Docket No. 496 ¶ 4.) The modicum of information relative to Plaintiffs' claims is gleaned from their affirmations and their verified and unverified responses[6] to Kaleida's interrogatories.

   Plaintiff Galdon has been employed, during the period from 1992 to the present, as a Respiratory Therapist at Millard Gates and Millard Suburban.[7] (Docket No. 410-7 at 3-4.) Plaintiff Gordon has been employed as a RN, from 1996 to March 2003, and from June

---

[6] Plaintiffs have submitted a total of sixty "Supplemental Responses to Defendants' Amended First Set of Interrogatories," from each name Plaintiff and a number of opt-in plaintiffs. The responses of Plaintiff Pfentner and several of the opt-in plaintiffs are unsigned.

[7] Galdon's earlier-filed affirmation indicates she worked at Deaconess Center at some point, and makes no mention of employment at Millard Suburban. (Docket No. 410-14 at 34.)

2003 to the present. She currently works at Buffalo General, and was previously employed at Deaconess Skilled Nursing Facility and Millard Gates Skilled Nursing Facility. (Docket Nos. 431-3 ¶ 5; Docket No. 410-7 at 27-28.) Plaintiff Mika worked as a RN at Millard Gates from 1982 through March 2008 in three departments or units: Acute Geriatrics, Intensive Care, and Cardiac Monitoring. (Docket Nos. 431-3 ¶ 6; 410-10 at 27.) Plaintiff Pfentner, a Respiratory Therapist, has worked at DeGraff and Millard Suburban during the period from 1985 to the present. (Docket No. 410-11 at 3.) Plaintiff Schaffer, also a Respiratory Therapist, has been employed at DeGraff from 1978 to the present. (Id. at 72.) Plaintiff Thomson worked at Deaconess Center from 1990 to 2012, at which time she transferred to Buffalo General. (Docket Nos. 431-3 ¶ 7; 410-12 at 50.)

The name Plaintiffs have filed identical, 10-paragraph affirmations relating to all or some of the Kaleida facilities at which they worked. Each is dated April or May 2008, and addresses the issue of meal breaks only. Plaintiffs uniformly attest that: Kaleida's "payroll program automatically deducted 30 minutes from an employees [sic] pay check for each shift he or she worked," "it was common that I would not be receiving a 30 minute uninterrupted meal period during my shift [because] it was of paramount importance that the employees take care of the patients' needs," the workplace was "chronically under staffed," and, "[a]lthough [Defendants] knew of the work being done their larger concern was with staying within their budget [and] Defendants did not seem concerned about employees missing meal periods and not getting paid for that time." (Docket Nos. 410-14 at 34-35, 40-41, 101-102, 123-24, 133-34, 148-49 ¶¶ 3-4, 7, 10.)

## III. DISCUSSION

**A.    The Summary Judgment Motions**

1.    Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

2.    Kaleida's Motion for Summary Judgment on Certain NYLL Claims

Kaleida is seeking summary judgment only on the NYLL claims of certain Plaintiffs. Nonetheless, a brief discussion of the provisions of both the FLSA and NYLL informs this and other pending motions.

The Fair Labor Standards Act mandates that "employees" receive a minimum wage and overtime pay of one and one-half times the worker's regular hourly rate for each hour worked in excess of forty hours per workweek. 29 U.S.C. §§ 206(a)(1), 207(a)(1) (2002). The FLSA defines an "employee" as "any individual employed by an employer, " subject to certain exceptions. Id. § 203(e)(1). The term "employ" is defined as "to suffer or permit to work." Id. § 203(g).

New York's Minimum Wage Act, like the FLSA, requires employers to pay a minimum wage. N.Y. LAB. LAW § 652.1 (2013). While there is no statutory provision addressing the payment of overtime wages, Department of Labor regulations do mandate that employers pay overtime.[8] Specifically, N.Y.C.R.R. § 142–2.2[9] provides that:

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of Section 7 and Section 13 of 29 U.S.C. 201 *et seq.*, the Fair Labor Standards Act of 1938, as Amended . . . . In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as Amended, . . . overtime at a wage rate of one and one-half times the basic minimum hourly rate.

The regulation defines the term "employee" as "any individual employed, suffered or

---

[8] The Labor Law empowers the Commissioner of Labor to appoint a wage board with authority to, *inter alia*, recommend "regulations governing . . . overtime or part time rates." N.Y. LAB. LAW § 655(5)(b).

[9] Plaintiffs cite to N.Y.C.R.R. § 142-2.2, and Defendants contend that § 142-3.2, relating to "employees in nonprofitmaking institutions which have not elected to be exempt from coverage under a minimum wage order" applies. This dispute is of no real consequence here as these regulations are virtually identical.

permitted to work by an employer," subject to certain exceptions. 12 N.Y.C.R.R. § 142-2.14(a).

      a.   *Overtime*

New York's overtime regulation exempts from the definition of "employee" individuals who work in a bona fide executive, administrative, or professional capacity. Id. § 142-2.14(c)(4). This is similar to the FLSA's provision that "employee[s] employed in a bona fide executive, administrative, or professional capacity" are exempt from FLSA overtime requirements. 29 U.S.C. § 213(a)(1). Kaleida maintains that Plaintiffs Gordon, Mika, and Thomson qualify as bona fide professionals under the NYLL and so, are not entitled to, and cannot maintain a claim for, overtime pay.

Where the FLSA's and NYLL's definitions and standards are identical, or nearly so, courts typically apply federal law to claims made under either statute. See, e.g., Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2008) (applying federal law to claims that, under both the FLSA and New York law, defendants were joint employers); Zheng v. Liberty Apparell Co., Inc., No. 99 Civ. 9033, 2002 WL 398663, at *6, n.3 (S.D.N.Y. Mar. 13, 2002) (applying single analysis to claims for overtime wages brought under FLSA and New York law); Oi Kwan Lai v. Eastpoint Int'l, Inc., No. 99-CV-2095, 2000 U.S. Dist. LEXIS 12502, at *9 n.3 (S.D.N.Y. 2000) (applying federal law to retaliation claims brought under FLSA and New York law, as their anti-retaliation provisions are nearly identical). Here, however, there is some divergence.

Under the FLSA, an employee must satisfy both a "salary basis" test and a "duties" test to be considered an exempt professional. 29 C.F.R. §§ 541.2; Auer v. Robbins, 519 U.S.452, 455, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997). New York, in contrast, requires only

a duties test—the professional exemption has no salary requirement whatsoever.[10] 12

N.Y.C.R.R. § 142-2.14(c)(4)(iii). That being said, New York's test for the professional

exemption is in accord with the duty portion of the FLSA's test:

> In New York:
>
> Work in a bona fide professional capacity means work by an individual:
>
> (a) whose primary duty consists of the performance of work: requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual or physical processes;

Id. The FLSA's duties test is met by "the performance of work requiring advanced

knowledge in a field of science or learning customarily acquired by a prolonged course of

specialized intellectual instruction." 29 C.F.R. 541.301(a). Thus, courts considering NYLL

overtime claims have applied federal law to conclude that registered nurses, such as

Gordon, Mika, and Thomson, meet the test for professional employment and so are

exempt from New York's overtime provisions, even when they are paid on an hourly basis.

See, id. § 541.301(e)(2) ("Registered nurses who are registered by the appropriate State

examining board generally meet the duties requirements for the learned professional

exemption."); Bachayeva v. Americare Certified Special Servs., No. 12-CV-1466, 2013 U.S.

Dist. LEXIS 38740, at *15 (E.D.N.Y. Mar. 20, 2013) (citing Bongat v. Fairview Nursing Care

Ctr., Inc., 341 F. Supp. 2d 181, 187 (E.D.N.Y. 2004) (dismissing NYLL overtime claims with

---

[10] The professional exemption is unique. New York's executive and administrative exemptions parallel the FLSA in that the employee must meet a duties test and also be "paid for his services a salary" at a prescribed minimum rate before the exemptions will apply. 12 N.Y.C.R.R. §§ 142-2.14(c)(4)(i)(e) and (ii)(d).

respect to the RN plaintiff and all similarly situated RNs); <u>Gordon v. Kaleida Health</u>, 2012 U.S. Dist. LEXIS 16443, at *14-15 (W.D.N.Y. Feb. 9, 2012) (noting that RNs who are hourly employees are exempt from New York's overtime protection).

Plaintiffs' sole argument in opposition resides in a footnote and posits that employees who "do not qualify as exempt under the FLSA because they were paid on an hourly basis, . . . should also not be exempt from overtime under NYLL."[11] (Docket No. 448 at 1, fn. 1.) This argument is inconsistent with the NYLL's plain text and Plaintiffs offer no authority for interposing a salary requirement where none is otherwise evident. Accordingly, Gordon, Mika, and Thomson are not entitled to NYLL overtime protections.

      b.   *Underpaid Wages*

Plaintiffs also contend that, regardless of the Court's determination with respect to overtime pay, Gordon, Mika, and Thomson are not exempt from the protection of Section 191 of the Labor Law, which provides for the recovery of wages for all hours worked. Section 191 establishes a schedule for the payment of wages earned by manual workers, railroad workers, commission salespersons, and clerical and other workers. N.Y. Lab. Law § 191(a)-(d). Kaleida violated this provision, Plaintiffs say, when it suffered or permitted its employees to perform work during meal breaks without compensation.

For purposes of Section 191, the "clerical and other worker" category does not

---

[11] In another footnote, Plaintiffs suggest that because Kaleida has not provided certificates evidencing Mika's state registration, and have provided documentary evidence of Gordon's and Thomson's registrations only through April and July 2010, respectively, there are questions of fact as to whether these employees were exempt during some or all of the relevant time period.

    In addition to the documentary evidence, Kaleida's Director of Labor Relations attests that each of these Plaintiffs met New York State accreditations requirements throughout their employment, and performed RN duties at Kaleida throughout. Docket Nos. 431-1 ¶¶ 2, 6, 10; 431-3 ¶¶ 4-7.) Plaintiffs have offered no testimony or evidence that would call into question Kaleida's proof. Thus, they have failed to raise a question of fact in this regard.

include "any person employed in a bona fide executive, administrative or professional capacity whose earnings are in excess of nine hundred dollars per week." Id. § 190(7). Prior to January 14, 2008, the applicable income threshold was six hundred dollars. 2007 N.Y. LAWS 304.

As is the case with respect to overtime, Gordon, Mika, and Thomson meet the duties test for possible exemption as professional employees. But here, as Plaintiffs correctly note, there is an earnings requirement as well. While the statute does not require that professionals be paid on a "salary basis," the exemption does not apply unless the employee's weekly "earnings" are above the specified threshold.

Kaleida has submitted payroll records showing that Gordon was paid in excess of six hundred dollars per week for all but fourteen of her weeks worked from 2002 through 2007, and in excess of nine hundred dollars for all but nine of her weeks worked in 2008 through 2012.[12] Mika was paid in excess of six hundred dollars for all but two of her weeks worked from 2002 through 2007. She separated from employment in or about April 2008 and was paid in excess of nine hundred dollars in all but three of her 2008 work weeks. Thomson was paid in excess of six hundred dollars per week for all but three weeks from 2002 through 2007, and in excess of nine hundred dollars for all but fourteen weeks in 2008 through 2012. (Docket No. 431, Exhs. C, D, E.)

Plaintiffs urge that, because Kaleida concedes Gordon, Mika, and Thomson did not meet the six hundred dollar threshold in each week of their employment, they cannot be

---

[12] During five of these work weeks, Gordon earned between $22.04 and $88.16.Without reaching any conclusion on the merits, it seems unlikely that Gordon would have worked through a meal period for which she was not compensated during these weeks.

15

classified as professional employees for any week, and are entitled to the protections of Section 191 throughout. Kaleida maintains there is no support for Plaintiffs all-or-nothing approach, and reasons that Section 191's weekly earnings requirement necessitates that a week-by-week analysis be conducted. Under this approach, Kaleida contends, the exemption would apply except for those few weeks in which Gordon, Mika, and Thomson earned less than the applicable earnings threshold.[13] Neither side has cited, nor was this Court able to locate, any case discussing the status of employees who meet the duties test for an exemption, but whose earnings may fluctuate because they are paid on an hourly basis. Of the arguments presented, Kaleida's week-by-week approach is most consistent with the plain text of Section 191. Accordingly, Kaleida's summary judgment motion is granted with respect to the claims of Gordon, Mika, and Thomson, and they may maintain their Section 191 claims only for those weeks in which they worked, but earned less than the statutory threshold for exemption.

      c.   *Unlawful Deductions from Wages*

Plaintiffs next argue it would be improper to dismiss the Gordon, Mika, and Thomson NYLL claims because they have claims for unpaid wages under § 193. (Docket No. 448 at 4.) "[B]y not paying Plaintiffs for work performed during meal periods because they did not report that time pursuant to Kaleida's policy, Kaleida unlawfully deducted wages in violation of NYLL § 193." (Id. at 5.) Plaintiffs rely on a Department of Labor opinion letter, dated November 25, 2009, to support their proposition that Kaleida's failure to compensate them for unreported work during meal breaks constitutes a prohibited

---

[13] Kaleida's briefs expressly provide that it is not seeking dismissal of the § 191 claims in which earnings were less than the applicable statutory minimum.

"deduction from wages for violating [Kaleida's] policies." (Id. (citing Docket No. 448-6).) The request for a DOL opinion was made by a hotel containing a full-service restaurant.

As Kaleida correctly observes, Plaintiffs did not assert a Section 193 impermissible deduction claim in their Complaint or Amended Complaint. Even assuming they had, such a claim cannot survive as a matter of law. The DOL letter on which Plaintiffs rely repeatedly confirms that Section 191 is the statutory provision that entitles workers to full payment of wages for all time worked. Section 193, on the other hand, prohibits employers from making deductions from wages earned unless the deduction benefits the employee or otherwise is authorized by law. In this latter regard, the DOL letter advises it would be unlawful for the employer to make deductions from an employee's wages for violating workplace policy. The DOL then cites to two regulations, now repealed, specific to the restaurant industry, 12 N.Y.C.R.R. § 137-2.5, and the hotel industry, 12 N.Y.C.R.R. § 138-3.6. Plaintiffs have not provided any rationale that would justify the extension of this particularized inquiry or the industry-specific regulations to their claims.

Moreover, their argument is contrary to decisions within this Circuit holding that an employer's alleged failure to pay for all hours worked does not constitute an improper deduction from wages for purposes of Section 193. See Church v. St. Mary's Healthcare, No. 11-CV-1198, 2012 U.S. Dist. LEXIS 138338, at *10-11 (N.D.N.Y. Sept. 26, 2012) (section 193 prohibits employers from making unlawful deductions from wages, but does not govern deductions from the number of hours worked; thus, plaintiffs' claim that defendant failed to pay them for hours worked during meal periods is not cognizable under section 193); Ellis v. Common Wealth Worldwide Chauffeured Transp. of NY, LLC, No. 10-CV-1741, 2012 U.S. Dist. LEXIS 40288, at *30  (E.D.N.Y. Mar. 23, 2012) ("Section 193

17

was intended to place the risk of loss for such things as damaged, spoiled merchandise, or lost profits on the employer rather than the employee. The provision does not cover failure to pay an employee for time worked.") (internal citation and quotation marks omitted).

Plaintiffs, relying on Ryan v. Kellogg Partners Inst. Servs., 19 N.Y.3d 1 (2012), urge that the "failure or neglect to pay wages in the form of payment for time worked is necessarily [ ] a violation of § 193." (Docket Nol. 448 at 6-7.) Ryan was a salaried employee at a brokerage firm who, as part of his compensation package, was to receive a guaranteed bonus of $175,000. When the bonus was not forthcoming, Ryan commenced an action alleging breach of contract and New York Labor Law violations. The Court of Appeals confirmed that Ryan's bonus constituted "wages" because it was nondiscretionary, and was earned and vested prior to his separation from employment. Thus, the employer's failure to pay the bonus violated § 193. Id. at 15-16 (2012). In this and the four similar cases Plaintiffs cite, the compensation at issue was a vested, nondiscretionary amount that had been established as a sum certain or was calculated based on factors other than "hours worked." Plaintiffs do not allege any similar circumstance here, and Section 191 provides the remedy for these hourly employees' claims that they were not compensated for time worked during meal periods.

* * * * * *

For the reasons stated, Kaleida's motion for summary judgment on the Gordon, Mika, and Williams NYLL claims is granted and the claims are dismissed, except that the Section 191 claim survives for those weeks not included in Kaleida's motion, in which these Plaintiffs worked and earned less than the statutory minimum.

3.     Plaintiffs' Motion for Summary Judgment on Liability

Plaintiffs seek summary judgment on the issue of Kaleida's liability, under both the FLSA and NYLL, for its system-wide policy of "only pay[ing] employees for work performed during meal periods that the employees themselves report . . . ."[14] (Docket No. 475 at 1.) Kaleida "adamantly dispute[s]" Plaintiffs' characterization of its policy and urges that this factual dispute over "plaintiffs' (mis)characterization . . . mandates the denial of summary judgment." (Docket No. 496-7 at 1.)

It is undisputed that hourly employees working at Kaleida facilities are subject to a 30-minute meal period automatic deduction. Courts in this Circuit have expressly recognized that automatic meal deduction policies are not per se illegal. Wolman v. Catholic Health Sys. of Long Island, Inc., 853 F. Supp. 2d 290, 300-301 (E.D.N.Y. 2012), aff'd in  part and rev'd in part on other grounds sub nom, Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106 (2d Cir. 2013); see also Fengler v. Crouse Health Found., Inc., 595 F.Supp.2d 189, 195 (N.D.N.Y.2009) ("[T]he mere existence and implementation of a policy or practice of making automatic deductions for scheduled meal breaks in and of itself does not violate the FLSA.").

Even more specific to this case, federal courts have found it is not per se unlawful for an employer to "shift the burden to their employees" to report that they worked during an unpaid meal break. Wolman, 853 F. Supp. 2d at 301 ("there is no duty to ensure that employees are not working through unpaid meal breaks, and employers utilizing an automatic meal deduction policy may legally shift the burden to their employees to cancel

---

[14] Plaintiffs have not moved for summary judgment with regard to the alleged rounding policy.

the automatic deduction if they work through an unpaid meal break") (citing Frye v. Baptist Mem'l Hosp., Inc., No. 07-CV-2708, 2010 U.S. Dist. LEXIS 107139, at *20 (W.D. Tenn. Sept. 27, 2010) (describing the shift as a "natural consequence of any employer's adopting an automatic deduction policy")).

Regardless of who is responsible for recording time worked, it is the employer's duty to "maintain accurate records of its employees' hours." Kuebel v. Black & Decker, 643 F.3d 352, 263 (2d Cir. 2011) (citations omitted). Kaleida's Timekeeping Standards Policy provides that each timekeeper is required to review and approve employees' reported times and must correct for hours an employee did not record, or recorded incorrectly, before submitting time records to the payroll department. (Docket No. 426-3 ¶¶ 32, 34, Exh. B ¶ 4.)

Plaintiffs concede that Kaleida's automatic deduction policy and reliance on employee reporting of time worked during meal periods is lawful on its face. (Docket No. 505 at 4.) But they maintain that summary judgment is warranted because, contrary to its written policy, Kaleida pays for work performed during meal periods only when an employee affirmatively reports that time. Thus, it is Kaleida's alleged "hands-off implementation" that Plaintiffs claim violates "the FLSA's requirement that employers police . . . [their employees] to ensure that all time worked is captured." (Id.)

"To establish liability under the FLSA on a claim for unpaid overtime,[15] a plaintiff must prove that he performed work for which he was not properly compensated, and that

---

[15] Although there is limited authority on compensation for missed meal breaks, which may involve both overtime and non-overtime hours, two Circuit Courts presented with the issue have concluded that "[a] claim for non-payment of work during an established mealtime is analytically similar to an unpaid overtime claim." Hertz v. Woodbury County, 566 F.3d 775, 783 (8th Cir. 2009) (quoted in White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 873 (6th Cir. 2012).

the employer had actual or constructive knowledge of that work." Kuebel, 643 F.3d at 361

(citations omitted); see also, 29 C.F.R. § 785.11 (where an "employer knows or has reason

to believe that [an employee] is continuing to work[,] the time is working time"). "The

relevant knowledge is not 'I know the employee was working,' but 'I know the employee was

working and not reporting his time.'" White v. Baptist Mem'l Health Care Corp., 699 F.3d

869, 875 (6th Cir. 2012) (citation and alteration omitted) (emphasis supplied). Thus:

> Where an employer has no knowledge that an employee is engaging in
> overtime work and that employee fails to notify the employer or deliberately
> prevents the employer from acquiring knowledge of the overtime work, the
> employer's failure to pay for the overtime hours is not a violation of the FLSA.
> . . . However, an employer who is armed with this knowledge cannot stand
> idly by and allow an employee to perform overtime work without proper
> compensation, even if the employee does not make a claim for the overtime
> compensation. Constructive knowledge can be imputed to the employer
> when it has reason to believe that its employee is working beyond his shift.
> Moreover, when an employer's actions squelch truthful reports of overtime
> worked, or where the employer encourages artificially low reporting, it cannot
> disclaim knowledge.

Stanislaw v. Erie Indem. Co., No. 07-1078, 2012 U.S. Dist. LEXIS 19032, at *10-11 (W.D.

Pa. Feb. 15, 2012) (internal citations, quotation marks, and alterations omitted).

When, as here, the moving party has the burden of proof at trial, that party must

affirmatively show the absence of a genuine issue of material fact; in short, that no

reasonable jury could find for the non-moving party.

Plaintiffs contend both that Kaleida had actual knowledge of time worked, but chose

not to pay unless the employee reported the time, and also that, for various reasons, it had

constructive knowledge of unreported work during meal periods. (Docket No. 475 at 21.)

Kaleida acknowledges that its employees are busy, and that some occasionally perform

work during meal periods, but maintains that its policy and practice is to pay for all time

worked of which it has knowledge even when an employee does not report the time worked using the procedures implemented for that purpose. (Docket No. 496-7 at 8-11,15.) As explained below, summary judgment is denied because reasonable minds could differ as to whether Kaleida had actual or constructive knowledge of unreported, uncompensated time.

      a.   *NDNQI Survey Data*

The National Database of Nursing Quality Indicators ("NDNQI") collects survey data from nurses employed at participating hospitals. Each of Kaleida's five hospitals participated in NDNQI's annual "RN Survey" in 2009, 2010, and 2011. (Docket No. 410, Exh. G-1.) RNs who worked shifts of 8 hours or more were asked to report whether, during the shift they last worked, they were "Unable to sit down for [meal] beak," "Able to sit down, not free of patients," or "Able to sit down, free of patients." (Id.) They were also asked whether the meal break on their last shift was "None," "<30 min," or >=30 min."

Kaleida produced the NDNQI survey results to Plaintiffs in discovery. Plaintiffs now present them as evidence of Kaleida's actual or constructive knowledge of their contents—i.e., the results were "available to Kaleida, and Kaleida was or could have made itself aware " of the possibility that employees were working during more meal periods than they were reporting. (Docket No. 475 at 5.)

Kaleida first urges that, because Plaintiffs have not authenticated the survey results by way of an attestation of personal knowledge, they "are inadmissible as a matter of law" and cannot be used on summary judgment to "attempt to establish knowledge of unpaid meal breaks."  (Docket No. 496-7 at 15-16.) Federal Rule of Civil Procedure 56(c)(2) provides that, on summary judgment, "[a] party may object that the material cited to support

or dispute a fact *cannot be presented in a form* that would be admissible in evidence," and so should be excluded. (emphasis added.) This Rule simply provides that the evidence must be capable of presentation in admissible form at the time of trial; it does not require that the materials be presented in an admissible form on summary judgment.

Kaleida does not contend it would be impossible for Plaintiffs to authenticate the survey data at trial or that it would otherwise be inadmissible under the Federal Rules of Evidence for the purpose of establishing Kaleida's knowledge. Because Rule 56(c)(2) does not contemplate the exclusion of evidence based solely on the form of presentation, the Court will consider whether the data establishes Kaleida's liability. See Sobel v. Hertz Corp., 291 F.R.D. 525, 532 (D. Nev. (2013) (Rule 56(c)(2) focuses on admissibility of evidence's content, not its form); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (on summary judgment, party need not produce evidence in a form that would be admissible at trial).

Kaleida urges the data does not establish its actual or constructive knowledge. Among other things, it notes that the survey was distributed only to RNs working a shift of 8 hours or more in a hospital setting, whereas the FLSA opt-in plaintiffs include the much broader group of RNs and respiratory therapists working in hospitals and nursing homes on various schedules.[16] The surveys are anonymous and undated, so it would be impossible to identify the participant or the date and time of his or her "last shift worked." In sum, Kaleida argues, these limited questions, presented to a discrete and relatively small group of respondents, is not a sufficient basis from which it could draw any informed

---

[16] The Court further notes that Plaintiffs' putative Rule 23 class includes not just the FLSA opt-in plaintiffs, but virtually every nonexempt Kaleida job title at every facility.

conclusion about its many and varied employees and worksites.

Plaintiffs urge otherwise, and maintain that by comparing the frequency of interrupted breaks reported in the surveys with timekeeping records showing the overall frequency with which automatic meal deductions were cancelled, Kaleida "was or could have made itself aware" that employees were performing uncompensated work.

This Court is not persuaded that the survey data is evidence of Kaleida's actual or constructive knowledge. The value of comparing the one-shift experience of a discrete group of individuals (RNs) working in a particular setting (acute care), to timekeeping reports covering multiple job titles and work settings over an extended time period, is debatable at best. The survey data does not sufficiently establish, for purposes of summary judgment, that Kaleida knew or should have known any particular Plaintiff, or its employees generally, were performing uncompensated work. Camilotes v. Resurrections Health Care Corp., 286 F.R.D. 339, 352-53 (N.D. Ill. 2012) (finding constructive knowledge not established by NDNQI survey results where there is no indication the opt-in plaintiffs had experiences comparable to the self-selected nurses surveyed; defendant's knowledge must be established by evidence representative of plaintiffs' specific experiences).

At least one Circuit Court has held that, even where records to which an employer had access indicate that particular employees are working during lunch periods, it is not necessarily sufficient to establish constructive knowledge that the employees were not reporting their time. Hertz v. Woodbury County, 566 F.3d 775, 781-82 (8th Cir. 2009). The Hertz court noted that the FLSA standard for constructive knowledge is whether the employer "should have known," not whether it could have known, and went on to consider whether it would have been reasonable to require the employer to review its dispatch

records for payroll purposes to determine whether employees were working in excess of their scheduled hours. Id. at 782. It found the proposition unreasonable, particularly where the employer had procedures in place for employees to report any additional time worked. Id.

The NDNQI data at issue here is far more attenuated. The documents in Hertz were the employer's own non-payroll business records from which it was possible to glean the on-duty and off-duty status of specific employees. Here, Plaintiffs rely on a sampling of anonymous, unverified data that was reported to a third-party. There is no indication here that Plaintiffs had no means of reporting work during lunch. While they repeatedly characterize Kaleida's procedures as a "hodgepodge," they also concede that Kaleida supervisors and managers implemented reporting procedures at the department level. (e.g., Docket No. 475 at 21.)

b.    *Interrogatory Responses and the Duty to Monitor Employees*

Plaintiffs next state that Kaleida produced timekeeping records for 49 of the employees who submitted interrogatory responses, and maintain that "[t]he interrogatory responses alone provide more than sufficient evidence that employees were systematically not being paid for compensable time." (Id. at 6.) Though Plaintiffs, wisely, do not suggest the interrogatory responses dated between January through August 2012 evidence Kaleida's knowledge that employees were not reporting all time worked from 2002 to the present, they contend Kaleida "could have easily simply asked its own employees at any time . . . how often they experienced missed or interrupted meal periods and whether they reported and were compensated for that time." (Id.) This argument is consistent with Plaintiffs' repeated contention, throughout their memoranda, that Kaleida had a duty to

monitor its employees.

Plaintiffs cite a number of cases for the proposition that Kaleida has a legal duty to exercise reasonable diligence in the workplace, and had it done so here, it could have discovered that employees were performing work during meal periods that they were not reporting. They urge the Court to find constructive knowledge based on Kaleida's failure to monitor the workplace and conduct inquiries to ensure that its reporting mechanisms were capturing all hours worked. (Docket Nos. 475 at 9-12, 15-17; 505 at 2-7.)

The cases Plaintiffs rely on are readily distinguished because the involve circumstances where the employer either had actual knowledge of a labor law violation, had promulgated a "no overtime" policy, or had prevented employees from reporting overtime hours. See, e.g., Kuebel, 643 F.3d at 356-57 (finding plaintiff raised genuine issue of fact as to employer's knowledge where he testified, inter alia, that supervisors told him not to put more than forty hours on time sheet no matter how many hours he worked, and, after complaining to supervisor about uncompensated work, was told employer cannot afford overtime); Chao v. Gotham Registry, Inc., 514 F.3d 280, (2d Cir. 2007) (rejecting employer's contention that, because it required employees to get advance authorization before working overtime, unauthorized overtime did not constitute work within meaning of FLSA; employer had knowledge of work through employee time sheets and could not rely on its policy alone to avoid liability); Reich v. Dep't of Conservation & Natural Res., 28 F.3d 1076 (11th Cir. 1994) (where employer had conducted study to determine effectiveness of no overtime policy, knew overtime was required to properly perform duties, and possessed information showing that certain employees were not reporting all hours worked, simply restating its "no overtime policy" was not sufficient to avoid liability); Gulf

King Shrimp Co. v. Wirtz, 407 F.2d 508, 512-14 (5th Cir. 1969) (finding employer knew, or with reasonable diligence should have known, that minors were working on its premises where, inter alia, it had been warned twice by Labor Department investigators that minors had been discovered working there, and all work was performed under direct company supervision in open work area where "everyone in it could see everyone else");

In each case involving employer policies against working or reporting overtime, the deciding court cited 29 C.F.R. § 785.13:

> [I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

See Kuebel, 643 F.3d at 365; Chao, 514 F.3d at 288; Reich, 28 F.3d at 1083. Each court reasoned that, when an employer directs employees not to work overtime or states they will not be paid for overtime, it cannot avoid liability by merely promulgating a "no overtime" policy; the employer must take steps to ensure its employees actually comply by, for example, imposing penalties for engaging in prohibited work. In short, an employer that does not want work to be performed has an affirmative duty to see that it is not performed.

At all relevant times, Kaleida had a Timekeeping Standards Policy which acknowledged that its employees may experience a missed or interrupted lunch. Though Kaleida encouraged employees to take their breaks, it also instructed its timekeepers on how to cancel the automatic meal deduction, and directed its supervisors to put procedures in place for reporting work performed during meal periods.

In one of Plaintiffs' cited cases, a district court construed a similar timekeeping system as a prohibition against unauthorized overtime during meal periods. In DeMarco

v. Northwestern Mem'l Healthcare., the hospital's policies included a directive to take uninterrupted meal breaks, and provided procedures for cancelling the automatic deduction in the event of missed or interrupted meals. No. 10-CV-397, 2011 U.S. Dist. LEXIS 88651 (N.D. Ill. Aug. 10, 2011). After characterizing this system as a prohibition against unreported work, the district court reasoned that 29 C.F.R. § 785.13 imposed a duty on the hospital to "make every effort to ensure that DeMarco complied with those directives." Id. at *41 (citations and internal quotation marks omitted). Concluding that a reasonable jury could find the hospital did not do enough to ensure employee compliance with timekeeping procedures, the court denied the hospital's motion for summary judgment.

Plaintiffs urge the Court to apply the DeMarco analysis here and grant summary judgment on liability due to Kaleida's inability to show that it monitored managers, conducted surveys or audits to measure unpaid work, assessed the effectiveness of employee training, or made any other inquiry to determine whether its employees were following its policies and procedures. The Court does not agree that the Kaleida Timekeeping Standards Policy is properly characterized as an employer-promulgated prohibition against work, and so declines to adopt the DeMarco reasoning here.

Though federal law does not require that Kaleida provide its employees meal periods and breaks, state law does. See N.Y. LAB. LAW § 162. Directives or policies that notify employees of their legal entitlement to a meal break, and to compensation if they are "suffered or permitted" to work during the meal period, are, in this Court's view, readily distinguished from prohibitions that cap the total hours of work that will be permitted or paid for.  It is undisputed here that Kaleida imposed no such cap and that each Kaleida entity has daily or weekly thresholds after which its nonexempt employees are entitled to

28

overtime pay.[17] The fact that employees are responsible for reporting their time worked during meal periods does not render Kaleida's policies a prohibition against work within the meaning of 29 C.F.R. § 785.13. Indeed, several courts have confirmed that requiring employees to take affirmative action to ensure payment for time worked during meal breaks does not support a common theory of statutory violations. See Frye,  2010 U.S. Dist. LEXIS 107139, at *20-21; Camesi v. Univ. of Pittsburgh Med. Ctr., No. 09-CV-85, 2011 U.S. Dist. LEXIS 146067, at *15 (W.D. Pa. Dec. 20, 2011) (collecting cases and noting that, under prevailing view, an employer's default system under which automatic deductions for meal breaks are made does not constitute a unified policy of FLSA violations capable of binding a class action).

In addition, "[w]hen the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." White, 699 F.3d at 876 (citations omitted) (granting hospital's motion for summary judgment on nurses' meal break claims). Several Circuit Courts, in addition to the Sixth Circuit in White, have acknowledged the established principle that an employer with actual or constructive knowledge of hours worked cannot avoid liability under the FLSA, but then expressly declined to place the onus on employers to ferret out work that is not reported under its reasonable procedures. See  Hertz, 566 F.3d at 784 (police officers who were required to

---

[17] The Court expressly notes that the 74 nearly identical interrogatory responses to question 4 repeatedly state that "defendants had a strict policy against overtime." (Docket No. 410 Exh. J.) Plaintiffs have offered no document or testimony in support of the conclusory statement that at some unspecified time for some unspecified duration, such a policy existed. Kaleida has filed a declaration stating that, in 2007, the year immediately prior to the commencement of this action, Kaleida paid employees a total of 554,204 overtime hours, and a total of 46,353 meal breaks. (Docket No. 426-3 ¶¶ 50-51, Exhs. F, G.)

submit paperwork for overtime pay had burden to show they performed work during uncompensated meal period; they were in best position to do so and holding otherwise would "perversely incentivize employers to keep closer tabs on employees during their off-duty time"); Newton v. City of Henderson, 47 F.3d 746, 749-50 (5th Cir. 1995) (reversing summary judgment in favor of employee officer who was required to accurately report hours worked, was paid for all hours he reported, but sought compensation for unreported work time; officer did not produce sufficient evidence regarding employer's knowledge, and it was reasonable for supervisors to rely on officer's payroll submissions "as a reliable indicator of the number of hours worked"); Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 414, 414 (9th Cir. 1981) (affirming grant of summary judgment to employer where store employee was required to  report overtime on time sheets, was paid for all hours he reported, and did not raise material issue of fact as to employer's knowledge). Accordingly, the Court rejects Plaintiffs' contention that Kaleida is liable under the FLSA and NYLL as a matter of law on the ground it has a duty to "make every effort" to discover whether employees are accurately reporting all time worked. See  Wolman, 853 F. Supp. 2d at 301 ("there is no duty to ensure that employees are not working through unpaid meal breaks").

c.     *The Absence of Audits*

Plaintiffs next contend liability is properly imputed to Kaleida because it "conducts no audits or other investigations concerning time recording to inquire and ensure that all time worked is recorded and paid." (Docket No. 475 at 21.) As a preliminary matter the Court notes that, because Plaintiffs bear the burden of proof at trial, they cannot establish entitlement to summary judgment by simply citing to an absence of evidence; they must affirmatively show that no reasonable jury could find for Kaleida on the issue of liability.

Moreover, Plaintiffs' asserted "fact" is based solely on an attorney affirmation that: "Defendants have not produced any evidence that they conduct any audits concerning time recording to inquire and ensure that all time worked is recorded and paid." (Docket No. 477 ¶ 16.) They offer no explanation as to how and why this purported absence gives rise to the conclusion that Kaleida knew, or should have known, its employees were performing work for which they were not paid. In short, they have not met their burden on summary judgment.    Even assuming Plaintiffs had met their burden, Kaleida has come forward with declarations from former Director of Labor Relations Foster and several managers stating it is Kaleida's policy and manager practice to examine timekeeping records for accuracy and to correct for any errors the managers are notified of or otherwise become aware of. (Docket Nos. 496-3 ¶ 3, Exh. B; 496 Exh. A.) This evidence is sufficient to raise a material question precluding summary judgment.

    d. *The Absence of Procedures and Training*

Plaintiffs also maintain that Kaleida "failed to implement any system for accurately recording work during meal periods, instead relying on a hodgepodge of methods implemented at the department level." (Docket No. 475 at 21.) They point to a Declaration by Kaleida's former Director of Labor Relations, Ellie Foster, who stated:

> Timekeepers are provided with complete discretion to select the appropriate reporting process for work performed during meal periods based on the specific needs and working environment of their department or unit. They are responsible for canceling the 30 minute meal periods based on these reports.

(Docket No. 477 ¶ 10 (<u>citing</u> Docket No. 426-3 ¶ 40).) Plaintiffs do not contend that managers can decide whether or not they will implement reporting procedures. What they appear to suggest instead is that, because Kaleida did not promulgate a uniform reporting

method for use by every job title in every facility, it should have known the methods its managers implemented would result in unreported and uncompensated work. Plaintiffs' opinion in this regard is not a factual showing sufficient to meet its burden.

In a related argument, Plaintiffs now contend that Kaleida failed to train employees on the methods implemented in their various departments for reporting missed and interrupted meal periods and/or discouraged employees from reporting the time. (Docket No. 475 at 21.) The name Plaintiffs' did not make either of these allegations in their initial or Amended Complaint, nor do their affirmations address these issues. Instead, they offer the testimony of four opt-in and three putative plaintiffs to that effect. (Docket No. 477 ¶ 6.) In response, Kaleida points to Foster's declaration that all new employees are trained to record their meal break interruptions during Kaleida's system-wide orientation and in department-specific orientation sessions. (Docket No. 496-6 ¶ 6.) Kaleida also has submitted declarations from several department managers, including individuals who supervise(d) four of the name Plaintiffs, and others who supervise(d) opt-in plaintiffs. The managers attest that they established department protocols to ensure employees received a full meal period whenever possible, trained employees to record missed or interrupted breaks so they would be compensated when they did not get a full 30-minute break, did not discourage employees from using the reporting procedures, and did not instruct employees to work off-the-clock. (Docket No. 496 Exh. A.) These competing sworn statements are sufficient to raise a material question.

Lastly, Plaintiffs maintain it was their understanding that if they ate any food during a shift, management considered that a meal break. They point to their conclusory responses to interrogatories number 4 in support of their "understanding," and also to the

affirmations of six opt-in or putative plaintiffs. (Docket No. 477 ¶ 7.) Kaleida again offers Foster's declaration, in which she attests that simply having the chance to eat some food during a shift does not constitute the 30-minute meal period provided in the Timekeeping Standards Policy, and she is unaware of any Kaleida manager who interprets Kaleida's meal period policy in this way. (Docket No. 496-3 ¶ 5.) A number of the manager declarations discussed above also expressly confirm that simply eating some food does not constitute an adequate meal period under Kaleida policy, and also that they do not count such an event as a meal break in their respective departments. (Docket No. 496, Exh. A.) In sum, Kaleida has succeeded in raising material questions that must be resolved by a trier of fact.

e.    *Manager Observations*

According to Plaintiffs, "[e]mployees performed work during meal periods, and the work was performed on [Kaleida's] premises and in plain sight." (Docket No. 475 at 21.) They refer to paragraphs 2 and 3 of their Statement of Material Facts not in Dispute in support of their argument that Kaleida had actual knowledge of uncompensated work performed during meal periods:

2. [E]mployees often perform work during their unpaid meal periods.

3. For example, plaintiffs and putative class members are expected to complete paperwork, such as charting and admissions, and respond to pages, call lights and requests from co-workers and management in order to fulfill their job duties. As a result, interrupted and missed meal breaks are a common occurrence.

(Docket No. 477 ¶¶ 2-3 .)

Even if these statements were undisputed—which they are not—they would not be sufficient to demonstrate liability. Neither paragraph addresses an essential element of

FLSA liability—i.e., that a manager who observed an employee performing work at any particular time knew, or should have known, that the employee had been interrupted during a meal period, had not yet had a meal period, or would not be able to take a meal period at any time during his or her shift. In any event, Kaleida's managers consistently deny actual knowledge of unreported, uncompensated work during meal periods. (Docket No. 496, Exh. A.) They also affirmatively dispute other aspects of Plaintiffs statements. For example, several attest that meal breaks in their departments are scheduled or coordinated to ensure coverage. Others state that an employee with an assigned phone may, and in some cases must, hand the phone over to the employee who will be providing coverage for them. (Id., e.g. Holtz ¶ 7, Huffer ¶¶ 7-8, Pompeo ¶ 7, Taylor ¶¶ 7-8 .)

In reply, Plaintiffs contend that Kaleida relies "largely on speculative and conclusory statements in declarations created solely to oppose plaintiffs' motion or summarily contest the credibility of plaintiffs' testimony" and so fail to raise any disputed issues of genuine fact. (Docket No. 505 at 8.) This Court admits to being a bit perplexed as to the level of particularity the name Plaintiffs believe is required here. Their own ten-paragraph affirmations, all virtually identical, are devoid of any specifics beyond the fact that Kaleida's timekeeping system includes a 30-minute meal break deduction.

The Court already has concluded that Plaintiffs have not presented evidence of actual knowledge sufficient to support a finding of liability.[18] Even were that not the case,

---

[18] Plaintiffs appear to concede as much later on in their reply brief where they contend that most of Kaleida's "claimed lack of knowledge relates to actual knowledge and completely ignores constructive knowledge," Plaintiffs need not demonstrate actual knowledge, and constructive knowledge exists because Kaleida was "obligated to assess whether employee reporting accurately captured all time worked." (Id. at 13, fn.9.) The asserted legal basis for imputing liability has been considered and rejected and requires no further discussion.

Kaleida's declarations are expressly directed to Plaintiff's Statement of Facts not in Dispute and are sufficiently factual to raise material questions relative to its knowledge that employees were performing work and not being compensated for that time. In light of the credibility issues raised, it will be left to the trier of fact to determine, perhaps on a department- or employee-specific basis, whether Kaleida knew or should have known of unpaid work performed for its benefit.

Because material questions of fact exist, Plaintiffs' request for a finding of FLSA liability with regard to Kaleida's meal break policy is denied. Plaintiffs urge that their NYLL claims are to be considered under the same standard as their FLSA claims. Thus, for the reasons already stated, the Court denies summary judgment on liability as to the NYLL meal break claims, as well.

**B.      Plaintiffs' Rule 23 Class Certification Motion**

Plaintiffs have proposed Rule 23 classes consisting of all Kaleida hourly employees employed during the period May 22, 2002 to the present, who were subjected to Kaleida's allegedly unlawful meal break and rounding policies. The proposed classes would include approximately 18,700 individuals. (Docket Nos. 409 at 5, fn. 3; 426-3 ¶ 38.)

1.      Standard of Review

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 442 U.S. 682, 700-01, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2009, cert. denied, 132 S. Ct. 368, 181 L. Ed. 2d 234 (2011). The Supreme Court has advised that a

class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). "A district judge must assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 42 (2d Cir. 2006). It is understood that this Rule 23 inquiry may overlap with the merits of the underlying claims. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). When this occurs, courts are to consider the merits questions only to the extent "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[19] Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1195, 185 L. Ed. 2d 308 (2013).

Rule 23(a) sets out four threshold requirements for certification:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
   (1) the class is so numerous that joinder of all members is impracticable;
   (2) there are questions of law or fact common to the class;
   (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
  (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Here, Plaintiffs contend that Kaleida relies on its "hourly workforce to provide urgent and around-the-clock services at their locations, including hospitals and long-term care

---

[19] Findings of fact for purposes of Rule 23 are not binding on the trier of facts on the merits. In re Initial Pub. Offering Sec. Litig., 471 F.3d at 41.

facilities, but maintain uniform, corporate policies that deprive these hourly employees of compensation for time Kaleida suffers or permits them to work." (Docket No. 409 at 1.) Kaleida apparently concedes that the proposed classes Plaintiffs describe would meet Rule 23(a)'s numerosity and adequacy of representation requirements. Thus, if Plaintiffs can demonstrate that the proposed classes also meet the commonality and typicality requirements, the Court must go on to determine whether this action is one of three types specified in Rule 23(b). Plaintiffs contend their claims satisfy Rule 23(b)(3), which permits the maintenance of a class action if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Rule 23(b)(3). The analytical principles that apply to Rule 23(a) also apply to 23(b), so Plaintiffs must show, through evidentiary proof, that the provision they rely on is satisfied. The predominance requirement is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

> If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a). Rule 23(b)(3), as an adventuresome innovation, is designed for situations in which class-action treatment is not as clearly called for.

Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (citations and quotation marks omitted).

Kaleida maintains that Plaintiffs have failed to establish Rule 23(a)'s commonality

and typicality requirements for either proposed class,[20] and furthermore, have not demonstrated that Rule 23(b) is satisfied.

> a. *Analysis*

Under Rule 23(a)(2), Plaintiffs must show that "there are questions of law or fact common to the class." The Supreme Court has observed this language is easy to misread since:

> [a]ny competently crafted class complaint literally raises common "questions." . . . What matters to class certification . . . is not the raising of common "questions"—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

Dukes, 131 S. Ct. at 2551 (quoting, Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. REV. 97, 131-32).

Rule 23(a)(3) requires a showing that claims or defenses of the named plaintiffs are typical of those of the class as a whole. The requirement "is satisfied when each class member's claim arises from the same course of events, and each class member will make similar arguments to prove a defendant's liability." Eldred, 2010 U.S. Dist. LEXIS 18260, at *44 (citation omitted).

> The commonality and typicality requirements of Rule 23(a) tend to merge: Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

Dukes, 131 S. Ct. at 2551 n.5 (quoting General Telephone Co. of Southwest v. Falcon, 457

---

[20] Kaleida also has moved to strike Plaintiffs' Rule 23 motion to the extent it seeks certification of a rounding class.

U.S. 147, 157-58, n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). Consistent with that tendency, Plaintiffs' Rule 23(a) discussion merges the two requirements.

        i.     *Meal Breaks*

Plaintiffs maintain that they and all putative class members will be making the same argument—to wit, Kaleida's "policy of automatically deducting time without ensuring that uninterrupted breaks were actually taken or compensated if not reported by employees violated the law thus entitling them to unpaid wages and overtime for all missed and interrupted meal breaks that went uncompensated." (Docket No. 409 at 25-26.)The result, according to Plaintiffs, is that they "often worked during their meal breaks but were not paid . . . unless they specifically reported that time." (Id. at 25.) The identify the following common questions of law:

•    does Kaleida's failure to ensure that uninterrupted meal breaks are taken when the time is already deducted from the employees' pay constitute a violation of the NYLL;

•    does Kaleida ensure that compensation is provided for missed and interrupted meal breaks that it knows or should know about through due diligence and reasonable inquiry;

•    does Kaleida's policy of only paying for work performed during meal breaks if it is reported by employees comply with the law; and

•    does Kaleida's policy of delegating to its supervisors the task of devising a method for capturing missed and interrupted meal breaks comply with the law.

(Docket No. 357 at 25.)

The first three questions are based on the presumption that Kaleida has a duty to ensure its employees comply with its meal break and reporting policies. Plaintiffs advanced this same argument in their summary judgment motion, and rely on essentially the same case law here. This Court already has determined the regulation referred to in those

decisions, 29 C.F.R. § 785.13—requiring employers that promulgate "no overtime" policies to make every effort to ensure its employees do not work overtime hours—is not triggered by policies that: (1) encourage employees to take the meal breaks they are legally entitled to, and (2) require that employees advise management when they are unable to take their full break so the employer can properly compensate them for the additional time worked. As the Supreme Court made clear in <u>Dukes</u>, the test for establishing commonality is whether a class action can "generate common answers apt to drive the resolution of the litigation." 131 S. Ct. at 2551. Questions of law that already have been posed and resolved on summary judgment do not serve that purpose.

In their final question, Plaintiffs suggest that, even assuming Kaleida's official meal break policy is lawful, there is a common question as to whether it is implemented unlawfully. Both here and in their summary judgment motion, Plaintiffs urge that Kaleida failed to "set clear (or any) uniform guidelines for employee reporting but instead [left] it up to managers and supervisors to use whatever hodgepodge methods they come up with to attempt to capture this time, [causing] not only wholly inaccurate time records but also discouraged and suppressed employee reporting." (Docket No. 409 at 16; <u>see</u> <u>also</u>, Docket No. 475 at 21.) In short, they argue that Kaleida's decision to delegate to department managers the task of implementing a method for employee reporting resulted in wage and hour violations. Although this Court concluded there are questions of fact relative to policy implementation that preclude summary judgment on FLSA liability, such a holding is not determinative of Plaintiffs' claim of commonality for purposes of Rule 23.

Kaleida, relying on <u>Dukes</u> and its progeny, maintains that affording individual supervisors discretion is "just the opposite of a uniform employment practice that would

40

provide commonality needed for class action." 131 S. Ct. at 2554. The plaintiffs in Dukes, former and current female Wal-Mart employees, alleged that, despite an official corporate policy prohibiting discrimination, Wal-Mart allowed its managers discretion in pay and promotion decisions with results that disproportionately favored male employees. The plaintiffs maintained that the class was bound by a common corporate culture of gender discrimination. Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 141, 145 (N.D. Cal. 2007.) The district court certified a nationwide class of female employees who had been or may be subject to Wal-Mart's pay and promotion practices. The certification was affirmed by a three-judge panel, Dukes v. Wal-Mart Stores, Inc., 474 F.3d 1214 (9th Cir. 2007), and on rehearing Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010) (en banc). The Supreme Court granted certiorari to consider, among other things, whether class certification was consistent with Rule 23(a) and, in particular, whether the commonality prerequisite was met.

The Court explained that a common contention is sufficient for purposes of Rule 23(a) if a determination of its truth or falsity will, "in one stroke," resolve an issue that is central to the validity of each putative plaintiff's claim. Dukes, 131 S. Ct. at 2545. Because Wal-Mart had an announced policy forbidding discrimination, the plaintiffs were required to offer "significant proof" that the company actually operated under a general policy to the contrary. The Court found that the only policy the plaintiffs convincingly established was the "policy" of giving local supervisors discretion in employment matters, and observed it was unlikely that all managers would exercise that discretion in a common way without some common corporate direction. It went on to conclude that the "[plaintiffs'] attempt to show such direction by means of statistical and anecdotal evidence falls well short" of the

41

showing required to establish commonality. Id.

Dukes was decided on June 20, 2011 and, since then, a number of courts have applied its reasoning to putative Rule 23 class actions alleging state wage and hour violations. For example, the plaintiffs in Fernandez v. Wells Fargo Bank, N.A. were employed at Wells Fargo and Wachovia bank branches located in New York State and held positions that primarily involved customer service and business generation. No. 12-CV-7193, 2013 U.S. Dist. LEXIS 124692, at *3-4 (S.D.N.Y. Aug. 27, 2013). They sought Rule 23 certification of NYLL claims alleging, among other things, that the banks' policies of limiting overtime while delegating responsibilities that could not be met in 40 hours meant they were required to perform uncompensated, off-the-clock work before and after their shifts and also during meal periods due to high volumes of customer traffic. Id. at 5-7. The district court examine the plaintiffs' evidence and found it insufficient to establish that the proposed class was subject to a common, New York-wide policy to limit their hours or require off-the-clock work. The evidence and testimony presented were limited to directives and employee experiences that were branch-specific. While recognizing that such evidence may be used to demonstrate unlawful conduct toward one or more individuals at that location, the district court found it insufficient to demonstrate a common state-wide policy concerning overtime. Moreover, the defendants' official policies were that employees should record all hours worked and that time worked during meal periods is considered paid time. Thus, the plaintiffs were required to offer "significant proof" of a de facto policy to deny payment for such work. Id. at 17-19. Because they had not, the district court held they failed to establish the commonality requirement. Id. at 19; see also, Romero v. H.G. Auto. Group, Inc., No. 11-CV-386, 2012 U.S. Dist. LEXIS 61151, at *50 (S.D.N.Y. May 1,

2012) (noting that "[a]fter Dukes, . . . the fact that Plaintiff came up with a list of common questions is no longer sufficient," and finding the plaintiff had failed to state a common contention central to the validity of proposed class claims).

Similarly, the plaintiff in Coleman v. Jenny Craig, Inc. brought claims under the FLSA and California labor law alleging, among other things, that employees often worked during meal and rest periods without being paid. No. 11-CV-1301, 2013 U.S. Dist. LEXIS 176294 (S.D. Cal. Nov. 27, 2013). Jenny Craig's official policy was to pay for all hours worked. It also called for employees to take meal breaks and rest periods, and to accurately report their work time. The district court found the plaintiff's anecdotal evidence and testimony actually confirmed "the lack of a uniformly applied . . . policy prohibiting employees from taking meal and rest breaks."[21] Id. at 27-28. In addition, the employer produced evidence that its managers ensured missed meal breaks were entered in its timekeeping system. Id. at 30-31. The district court concluded the plaintiff's evidence did not establish common wage and hour practices that resulted in the underpayment of wages for the described class of employees and that, absent commonality, certification was inappropriate. Id. at 32; see also, Gonzalez v. Millard Mall Servs., 281 F.R.D. 455, 461-64 (S.D. Cal. 2012) (where employer's meal and break policy conformed to applicable laws and wage orders and project manager at each location had discretion in scheduling hours of work and meal periods, employees' conflicting testimony not sufficient to show there was a uniform practice to require work during meal periods).

---

[21] In particular, "some days she took her complete lunch break, some days she did not; some days her centre was too busy for lunch, some days it was not; some days her supervisor would make her feel guilty about taking a lunch break, some days she did not." Id. at 28.

District courts applying <u>Dukes</u> also have declined to certify Rule 23 class actions brought by nurses against heath care facilities. <u>Roth v. CHA Hollywood Med. Ctr, L.P.</u> involved meal break claims brought by nonexempt registered nurses and licensed vocational nurses who worked 12-hour shifts in one of 22 departments. No. 12-CV-07559, 2013 U.S. Dist. LEXIS 152856 (C.D. Cal. Oct 25, 2013).The court examined the declarations from putative class members, noting that "they run the gamut on meal breaks," with some nurses testifying they frequently did not have adequate coverage to take breaks, and others asserting they were able to take breaks by using a buddy system or being relieved by a charge nurse. The court concluded such testimony did not demonstrate a uniform, classwide policy of rendering employees unable to take breaks. <u>Id</u>. at 16-18. "[A]djudication of these claims would require an individual determination of whether a particular nurse was too busy, had no coverage, or both for each rest and meal break to which she was entitled. When the impact of an employer's policies depends on each individual employee's circumstances, class certification is not appropriate." <u>Id</u>. at 18-19.

In <u>Camilotes v. Resurrection Health Care Corp.</u>, staff nurses employed at the defendant's hospitals alleged that they were regularly required to work through all or part of their meal periods and were not paid for all hours worked due to the employer's use of an automatic meal break deduction. 286 F.R.D. 339. The district court denied the nurses' Rule 23 motion, noting:

> Although Plaintiffs argue that Defendants' implementation of the automatic deduction policy caused [wage and hour] violations, Plaintiffs have not demonstrated that Defendants' implementation of the policy was uniform system-wide. Indeed, the evidence shows the opposite—specifically, that Defendants delegated authority to department managers within each hospital to determine how to implement Defendants' policies, including developing department-specific procedures related to the automatic deduction policy. In

particular, managers implemented policies and practices to address how to schedule meal periods, where employees may take their meal periods, how employees are relieved from duty for their meal periods, whether employees may take assigned cell phones or pagers with them on their meal periods, whether supervisory permission is required to take a meal period, and how employees record time worked.

Id. at 351, 354.

Although the district court ultimately denied certification under Rule 23(b)(3), it did so after expressly finding that the evidence did not support the existence of a uniform, system-wide policy.

Unlike the nurses in Roth and Camilotes, the name Plaintiffs here seek to certify a much broader class of all current and former nonexempt Kaleida employees working in any position at any Kaleida facility during the specified time period. Thus, they must show that some common policy extends not only to employees engaged in direct patient care, but to such diverse positions as housekeeping, billing, dietary, groundskeeping and any other of the 388 nonexempt job titles Kaleida maintains.

Plaintiffs have offered no meaningful evidence of a system-wide Kaleida policy that results in employees working through meal periods without pay. As previously noted, Kaleida's official policies are facially valid, and call for employees to be paid for all hours worked. Having fully considered the evidence presented,[22] this Court finds no basis to conclude that Kaleida maintains a uniform policy of paying only for work that is reported by employees, or that it uniformly implements its policies in a manner that violates the law. Plaintiffs do not cite to any system-wide Kaleida directive that employees were prohibited

---

[22]  Plaintiffs evidence, including the affirmations of opt-in and putative plaintiffs, as well as Kaleida's declarations and evidence, are cited and discussed above and need not be repeated here.

from work (or, alternatively, must work) during meal periods, that they would be paid for such work time only if they reported it, or that Kaleida had a no overtime policy.

The only Kaleida policies Plaintiffs have convincingly established here—indeed, they are undisputed—are the meal break deduction policy, and the "policy" of giving department or unit supervisors and managers discretion to develop a procedure for employees to record time worked during meal periods. As was the case in Dukes, Plaintiffs' anecdotal evidence "falls well short" of what is needed to demonstrate commonality with respect to these policies.

In support of their certification motion, Plaintiffs have refiled the same affirmations they prepared in 2008, at the outset of this case and prior to any discovery. Each attests that Kaleida automatically deducted a 30 minute meal period for each shift worked, and it was common to partially or fully miss a meal period to care for patient needs. Though Plaintiffs now concede that such a meal period deduction policy is not per se illegal, the affirmations do not contain facts suggesting either: (1) that Kaleida ultimately directed or controlled how managers would handle the recording of work during meal breaks, or (2) that managers across Kaleida's numerous facilities and functions exercised their discretion in a common, unlawful manner.

To the extent these early affirmations are now supplemented by interrogatory responses, they remain insufficient. The following interrogatories are among those addressing meal break claims:

4.      Did a supervisor ever prohibit or discourage you . . . from claiming pay for time worked through or during meal periods?

6.      Did you record your hours for the time you worked through or during

your meal period?[23]

In response to interrogatory 4, Plaintiffs all refer to Kaleida's "strict policy against overtime which prohibited and/or discouraged employees from requesting compensation for work performed during meal breaks." They have not provided any written policy or statement to that effect, and have not indicated how this newly-alleged common policy was otherwise communicated and applied to them. Moreover, the assertion of a "strict policy" is immediately contradicted by five of the six Plaintiffs, who acknowledge knowing they would be compensated for missed meal periods "on especially busy days" (interrogatory 4) and to being "permitted to request payment for work performed during meal breaks" at unspecified times (interrogatory 6).

Next, Plaintiffs state that management "frowned upon" employee requests to be paid for work performed during meal periods, "were suspicious" of employees who made such requests, and accused employees of "performance issues and stealing time." Such nebulous assertions are not sufficient to demonstrate the existence of a common unlawful policy or practice.

In response to interrogatory 6, Plaintiffs consistently state they were "never formally trained or given a written policy on how to . . . request payment for work performed during meal periods." Yet, five of the six go on to confirm there were times they were "permitted" to make such requests and that they did so.

In contrast to these conclusory assertions, Kaleida has offered testimony and evidence showing that in the year preceding commencement of this action, it paid

---

[23] The interrogatories and responses are found at Docket No. 410 Exh. J, Tabs 22, 24, 46, 53, 59, 67.

employees for 554,204 overtime hours and for 46,353 meal breaks.[24] Kaleida also points to tremendous variation in the amount of overtime hours among facilities, departments, and job titles, whether and how supervisors schedule breaks or provide coverage, and whether employees can or cannot take assigned phones with them on meal breaks. It contends these differences compel the conclusion that this case is not suitable for resolution through representative testimony, but will require a department-by-department or employee-by-employee inquiry.

Plaintiffs respond that the differing experiences and circumstances Kaleida seeks to highlight are of no moment. They urge the Court to follow a trio of cases issued by the District Court for the Northern District of New York on March 8, 2011, in which that court found, in similar circumstances, that the plaintiffs had established commonality. Meyers v. Crouse Health Sys., Inc., 274 F.R.D. 404; Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D. 385; and Colozzi v. St. Joseph's Hospital Health Center, 275 F.R.D. 75. In those cases, as here, the employers "delegate[d] to department supervisors the task of overseeing the cancellation of automatic deductions." See Colozzi, 275 F.R.D. at 85. The district court concluded in each case that there was a common question as to, among other things, the lawfulness of this delegation. This Court has reviewed the cited cases, issued more than three months prior to Dukes, and finds them unpersuasive.

Notwithstanding Plaintiffs attempt to distinguish or limit Dukes' applicability, numerous courts have since applied its reasoning in wage and hour cases, finding that

---

[24] Depending on an employees, schedule, collective bargaining agreement, or other terms and conditions of employment, compensation for work performed during a meal period may have been paid at a straight time rate or an overtime rate.

giving individual supervisors discretion to apply policies in a manner best suited to their department or unit is just the opposite of a system-wide practice that would provide the commonality needed for class action. Here, Plaintiffs have failed to demonstrate "the existence of a policy that systematically deprived employees of pay for time worked during meal periods." (Docket No. 441 at 16-17.)

Because Plaintiffs have not identified any question of law that remains unanswered or that can be resolved through representative testimony, Plaintiffs have not met the commonality prerequisite. There is an additional factor weighing against commonality here. This Court has granted summary judgment in favor of Kaleida with regard to most of the NYLL claims advanced by Plaintiffs Gordon, Mika, and Thomson on the ground these employees are exempt, or largely exempt, from the NYLL's wage and overtime requirements. Plaintiffs have not raised any question of law or fact that would be common to a mix of hourly exempt and nonexempt workers or, as discussed above, employees whose status may vary based on their earnings in a particular week.

ii.    *Rounding*

Plaintiffs also seek certification of a class consisting of all hourly Kaleida employees subject to Kaleida's uniform rounding policy.[25]

Federal regulation describes the circumstances in which rounding is permissible as follows::

> "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of

---

[25] While no New York statute or regulation addresses the permissibility of rounding policies, New York's Department of Labor generally follows the FLSA and related regulations in enforcing Articles 6 and 19 of the Labor Law. The parties do not address the issue, but apparently presume that New York follows federal law with respect to rounding.

> recording the employees' starting time and stopping time to the nearest 5
> minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this
> arrangement averages out so that the employees are fully compensated for
> all the time they actually work. For enforcement purposes this practice of
> computing working time will be accepted, provided that it is used in such a
> manner that it will not result, over a period of time, in failure to compensate
> the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b). Although no court in this Circuit has been asked to address this standard, other courts have found that rounding policies that "'on average, favor neither overpayment nor underpayment'" of wages are permissible, while those that "'systematically undercompensate employees'" are unlawful. Mendez v. H.J. Heinz Co., No. 12-CV-5652, 2012 U.S. Dist. LEXIS 170785, at *6 (C.D. Cal. Nov. 13, 2012) (quoting Alonzo v. Maximus, Inc., 832 F. Supp. 2d 1122, 1126-27 (C.D. Cal. 2011)). According to Plaintiffs, Kaleida's facially neutral rounding policy results in consistent rounding down of time because the related timekeeping policies subject employees to discipline for clocking in late, out early, or outside the seven minute rounding window. (Docket No. 409 at 18, Exh. E.)

Kaleida's first argument in opposition to certification is a procedural one. It notes that "[a]fter over four years of litigating this case, plaintiffs' instant motion is the first mention they have made of any claim arising from allegedly unlawful rounding." (Docket No. 426 at 46.) Kaleida goes on to argue, in a separately filed motion, that the Court should therefore strike Plaintiffs' Rule 23 motion to the extent it seeks certification of a rounding class.

As Kaleida correctly notes, neither the initial Complaint nor the Amended Complaint

refers to a rounding policy.[26] Similarly, no name, opt-in, or putative Plaintiff has mentioned Kaleida's rounding policy in an affirmation or interrogatory response.

In response, Plaintiffs maintain the proposed rounding class "is merely a narrowing of the preliminary and postliminary claims" asserted in the Amended Complaint, and "it is readily apparent" that time that was "rounded away[] is clearly encompassed by [those] claims." (Docket No. 434 at 4.)

This Court disagrees with Plaintiffs' suggestion that their bare allegations of unpaid preliminary and postliminary work were sufficient to put Kaleida on notice of a rounding claim. The terms "preliminary" and "postliminary" are given particular meaning in the wage and hour context—"'preliminary activity' mean[s] an activity engaged in by an employee before the commencement of his 'principal' activity . . . and 'postliminary activity' means an activity engaged in by an employee after the completion of his 'principal' activity." 29 C.F.R. § 790.7; see also, § 785.5. A rounding claim is something quite different; it arises, if at all, from rounding the clocked times at which employees start and stop their "principal" activities. See Lacy v. Reddy Elec. Co., No. 11-CV-52, 2013 U.S. Dist. LEXIS 97718, at *37 (S.D. Ohio, July 11, 2013) (to recover damages under rounding theory, employees must show they clocked in  and engaged in principal activities before their scheduled start

---

[26]  The entirety of Plaintiffs' pleading in this regard alleges:

Kaleida suffered or permitted to perform work before and/or after the end of their scheduled shift but were not paid for performing such work as a result of defendants' policies, practices and/or time recording system (the "Unpaid Preliminary and Postliminary Work Policy") (Docket No. 235 ¶ 72); and

Class members are also subject to the Unpaid Preliminary and Postliminary Work Policy and Unpaid Training Policy and are not fully compensated for all work performed pursuant to such policies. (Id. ¶ 89.)

time, but were not compensated); <u>see</u> <u>also</u>, <u>Gorman v. Consol. Edison Corp.</u>, 488 F.3d 586, 590 (2d Cir. 2007) (recognizing the substantial body of case law discussing distinction between preliminary and postliminary activities on the one hand, and principle activities of employment on the other). In short, a rounding claim cannot reasonably be read into a claim alleging unpaid preliminary and postliminary work.

Plaintiffs next cite <u>Lundquist v. Security Pac. Auto. Fin. Servs. Corp.</u>, 993 F.2d 11, 14 (2d Cir. 1993), and "advise that the Second Circuit has expressly recognized that [this Court is not bound by the class definition proposed in the complaint." (Docket No. 436 at 7.) This Court does not disagree; in fact, it declined to be bound by Plaintiffs' very broad class definition in conditionally certifying a much narrower group for collective action under the FLSA. What the Court is bound by is the <u>claims</u> that can be reasonably read into the complaint which, here, do not include an unlawful rounding claim. Plaintiffs cannot amend their pleadings by way of the instant Rule 23 motion. For the reasons stated, Kaleida's motion to strike is granted, and Plaintiffs motion for certification of a NYLL rounding class is denied.

* * * * * * *

Having concluded that Plaintiffs' motion for Rule 23 certification of a meal break class and rounding class will be denied, the Court need not address the parties further arguments with respect to Rules 23(a)(2), (a)(3), and (b).

b.     *Plaintiffs' Request for Denial Without Prejudice*

Plaintiffs assert that "discovery to date has revealed more than sufficient evidence to allow class certification of the meal break and rounding claims." (Docket No. 357 at 4.) They request, however, that if the Court intends to deny certification, they be permitted to amend their motion or file a new motion after further discovery. CHS, of course, asks that the motion be denied with prejudice.

Having reviewed the case history, this Court finds no reason to dismiss without prejudice. The Court initially set August 8, 2012 as the deadline for filing the Rule 23 class certification motion. (Docket 365.) On August 3, 2012, Plaintiffs sought to amend this schedule on the ground that certification-related discovery remained outstanding. They proposed a new filing deadline of December 17, 2012. (Docket No. 367.) Magistrate Judge Foschio considered Plaintiffs' request and extended the deadline only to November 9, 2012. In denying Plaintiffs all the time requested, Judge Foschio incorporated the reasons stated in Hinterberger v. Catholic Health Systems, Inc., 08-CV-380 (Docket No. 350), a case filed on the same date as the instant case, by Plaintiffs' counsel, against another affiliation of healthcare entities. Noting that "this case has been on the court's docket for well over four years," Judge Foschio concluded the certification motion should be filed without undue delay. He expressly provided that in the event defendants opposed the motion:

> Plaintiffs may request the court postpone consideration of the [Rule 23] motion until limited discovery reasonably necessary to enable Plaintiffs to meet [their] Rule 23 requirements is taken in response to Defendants' specific grounds for opposing Plaintiffs' motion. Assuming a proper basis for Plaintiffs' request is provided, the court will consider permitting such class precertification discovery to be completed within a limited period, in tandem with the on-going merit-based discovery . . . .

53

(08-CV-380, Docket No. 350 at 2.)

Kaleida filed its opposition to the Rule 23 motion on December 7, 2012, and Plaintiffs filed their reply on January 14, 2013. (Docket Nos. 426, 441.) On December 21, 2012, Plaintiffs moved for a stay of merits discovery. The motion does not mention certification-related discovery and, in any event, was later withdrawn. (Docket Nos. 433, 438.) In short, at no time prior to filing their Rule 23 reply did Plaintiffs take the opportunity to seek additional Rule 23 discovery pursuant to Judge Foschio's Order. Accordingly, Plaintiffs' request for the opportunity to do so now is denied.[27]

## IV.  CONCLUSION

For the reasons given above, Defendants' Motions are granted and Plaintiffs' motions are denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' motion to strike Plaintiffs' motion for certification of a "rounding' class (Docket No. 427) is GRANTED;

FURTHER, that Plaintiffs' motion for Rule 23 class certification (Docket No. 408), to the extent not stricken, is DENIED;

FURTHER, that Defendants' motion for summary judgment dismissing certain of the New York minimum wage order and labor law claims of Plaintiffs Gordon, Mika and

---

[27] This Court acknowledges that the procedural basis upon which it is denying certification of a rounding class might ordinarily result in a denial without prejudice to allow Plaintiffs to seek leave to replead. I have concluded such a result is unwarranted here. Plaintiffs did not move for leave to amend at any time after CHS challenged the sufficiency of the pleadings with regard to certification. And, although Plaintiffs have now requested a dismissal without prejudice, they do not base the request on an intent to seek leave to amend their Amended Complaint. Thus, dismissal with prejudice is warranted here.

Thomson (Docket No. 431) is GRANTED;

FURTHER, that Plaintiffs' motion for partial summary judgment (Docket No. 474) is DENIED.

SO ORDERED.

Dated:      March 24, 2014
            Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                           Chief Judge
                                        United States District Court